**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>Plaintiff,<br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States of America<br><br>Defendant,<br><br>EARL CUNNINGHAM, HARRY JONES, ALBERT JONES, ERNEST MONTGOMERY, ANTHONY VINES and WILLIAM WALKER,<br><br>Applicants for Intervention. | Civil Action No. 1:10-CV-651<br>( JDB) |

**MOTION OF EARL CUNNINGHAM, HARRY JONES, ALBERT JONES, ERNEST MONTGOMERY, ANTHONY VINES, AND WILLIAM WALKER TO INTERVENE AS DEFENDANTS**

Earl Cunningham, Harry Jones, Albert Jones, Ernest Montgomery, Anthony Vines and William Walker (collectively, "Proposed Intervenors"), by their undersigned counsel, hereby submit this motion, the accompanying statement of Points and Authorities, and Initial Responsive Pleading in accordance with Local Civil Rule 7(j), to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2). In the alternative, Proposed Intervenors seek permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1). Proposed Intervenors seek to intervene as Defendants in this action to defend the constitutionality of Sections 4(b) and (5) of the Voting Rights Act (VRA).

Proposed Intervenors aver that, if intervention is granted, they will (i) participate in the action on the schedule that will be established for the existing parties; (ii) avoid unnecessary delays or duplication of efforts in areas satisfactorily addressed and represented by the existing Defendant, to the extent possible; and (iii) coordinate all future proceedings with the existing Defendant to the extent possible.

Proposed Intervenors Harry Jones, Ernest Montgomery and Anthony Vines are African-American registered voters who reside in the City of Calera, located in Shelby County, Alabama. Proposed Intervenors Earl Cunningham, Albert Jones and William Walker are African-American registered voters who reside in other municipalities located in Shelby County, Alabama. All Proposed Intervenors regard the VRA to be an essential piece of federal civil rights legislation that has long provided important protections, and continues to safeguard their voting rights. All Proposed Intervenors deem the protections afforded by Section 5 to be necessary in Shelby County and, more broadly, in the State of Alabama.

The grounds for this motion, more fully described in the accompanying Statement of Points and Authorities, are set forth below:

1. Plaintiff brought this declaratory judgment action challenging the constitutionality of the Section 5 preclearance provision and Section 4(b) scope of coverage provision of the Voting Rights Act of 1965, as amended.

2. Proposed Intervenors are filing this motion to intervene in a timely manner. Plaintiff filed its Complaint on April 27, 2010, followed quickly by a Motion for Summary Judgment on June 8, 2010. This motion to intervene is made just three days after Plaintiff filed its Motion for Summary Judgment, and before the Defendant has filed an answer or responsive pleading. This motion is also made prior to the scheduling of any preliminary conference, and before the

scheduling of oral argument in connection with Plaintiff's pending motion. Proposed Intervenors seek to avoid any disruption or delay to the schedule that may be set by the Court in the litigation.

3. Intervention, at this early, yet critical, stage of the litigation, will not unduly delay or prejudice the adjudication of the rights of the original parties.

4. Proposed Intervenors have an interest in the subject matter of this litigation that supports their intervention. The relief that Plaintiff seeks would have the effect of invalidating a core provision of the VRA, reauthorized for 25 years in 2006 only after Congress considered its continuing need and voted for it by a vote of 390-33 in the House of Representatives and 98-0 in the Senate. Proposed Intervenors have an assurance that any voting changes that may be proposed and adopted by Plaintiff will be subject to, and must meet the requirements of, Section 5, as long as Plaintiff is subject to the Section 5 preclearance provision. Proposed Intervenors have an assurance, consistent with Section 5's requirements, that any voting changes adopted by Plaintiff must be reviewed by this Court or the Attorney General of the United States to ensure that such changes will not have a retrogressive effect upon their voting rights, and to ensure that such changes were not adopted with a discriminatory purpose. Moreover, so long as Plaintiff Shelby County is subject to the Section 5 preclearance provision, Proposed Intervenors may also obtain judicial relief from a federal district court in Alabama to prevent the implementation of any changes affecting voting that have not been precleared or approved either by the Attorney General of the United States or this Court. Indeed, Plaintiff has conceded its recent failure to comply with the submission requirements of Section 5. (Compl. ¶ 34.) Proposed Intervenors have an assurance that voting changes not submitted for preclearance are unenforceable.

5. However, if Plaintiff is not subject to the Section 5 preclearance provision, then Proposed Intervenors and others similarly situated within Shelby County, Alabama must bear the burden of bringing litigation on their own to protect themselves from discriminatory voting laws.

6. Proposed Intervenors also have a strong interest in ensuring that that the statutory provisions of the VRA that protect minority voting rights are vindicated following Congress's 2006 reauthorization of its temporary provisions. In particular, Proposed Intervenors have an interest in ensuring that Shelby County, and the State of Alabama generally, remains covered by Section 5.

7. Proposed Intervenors have direct and legally protectable interests in this action. Questions concerning the constitutionality of the Section 4(b) scope of coverage provision and Section 5 preclearance provision are questions of law and fact that would benefit from the perspective of African-American voters who are members of a class of citizens that the VRA is designed to protect. Moreover, Proposed Intervenors have a substantial interest in maintaining the Section 5 preclearance provision to safeguard against persisting voting discrimination faced by African American Alabamians. *See Riley v. Kennedy*, 553 U.S. 406, 128 S.Ct. 1970, 1987, 1991-93 (2008) (Stevens, J. dissenting) (describing over one hundred years of "obstacles to African-American voting" in Alabama, and noting that progress in voting rights in Alabama has been, "at least in part, the consequence of vigorous and sustained enforcement of the VRA").

8. Voting discrimination in Alabama has proven to be persistent, adaptive and present in the modern day. Evidence reveals that many jurisdictions, including Plaintiff Shelby County, continue to disregard the mandate of Section 5 of the VRA. (*See* Compl. ¶ 34.)

9. Plaintiff's constitutional claims would, if successful, cause harm to the federally-protected voting rights of Proposed Intervenors and to similarly-situated minority voters in Alabama and in other states that are covered, in whole or in part, by the VRA.

10. Just last term, a plurality of the United States Supreme Court observed: "[s]till, racial discrimination and racially polarized voting are not ancient history. Much remains to be done to ensure that citizens of all races have equal opportunity to share and participate in our democratic processes and traditions. . . ." *Bartlett v. Strickland*, 129 S. Ct. 1231, 1249 (2009) (Kennedy, J.). The Court also recognized that the VRA remains an effective tool in safeguarding the rights of minority voters. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2506 (2009) (noting that the "improvements are no doubt due in significant part to the Voting Rights Act itself, and stand as a monument to its success").

11. The disposition of this case could also impair Proposed Intervenors' interests in ensuring the appropriate interpretation and continued application of the VRA's Section 4(b) scope of coverage provision. Indeed, in its Motion for Summary Judgment, Plaintiff requests that this Court issue a permanent injunction that would bar the Defendant from continued enforcement of Sections 4(b) and 5 of the VRA. An adverse ruling on either of these questions could eviscerate the core protections afforded by Section 5.

12. The disposition of this case may also impair Proposed Intervenors' interests in ensuring that this Court uphold the Section 5 preclearance provision. Any adverse ruling would significantly compromise the guarantees of the 14th and 15th Amendments, which are protected by this core federal civil rights legislation.

13. This Court and others have recognized the significant impact of voting rights cases on the exercise of fundamental rights and routinely grant intervention to minority voters in such

cases, including declaratory judgment actions and enforcement suits, among other matters. *See, e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 573 F. Supp. 2d 221, 230 (D.D.C. 2008) (granting multiple motions to intervene presented by African-American, Latino and other minority voters in case seeking bailout under Section 4(a) of the VRA and challenging the constitutionality of Section 5 of VRA); *Georgia v. Ashcroft*, 539 U.S. 461 (2003) (upholding D.C. District Court's grant of private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties); *Louisiana House of Representatives v. Ashcroft*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting coalition of African-American and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan where constitutional claims were asserted); *Bossier Parish Sch. Bd. v. Reno*, 907 F. Supp 434 (D.D.C. 1995) (making extensive reference to arguments presented by Defendant Intervenors, African-American voters, in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (recognizing arguments presented by Intervenors, African-American voters, in Section 5 declaratory judgment action), *aff'd*, 459 U.S. 1166 (1983).

14. Proposed Intervenors' interests may not be adequately represented by Defendant Attorney General Holder in light of the nature of the Complaint and claims presented in the Plaintiff's Motion for Summary Judgment. Proposed Intervenors bring to the litigation a "[l]ocal perspective on the current and historical facts at issue" which are not likely to be presented by Defendant and which could benefit the court's understanding of Plaintiff's claims. *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983). *See also Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc.*

*v. Rubin*, 170 F.R.D. 93 (E.D.N.Y. 1996) (noting that intervenors would bring a different perspective to case that might assist court, and intervention came early in the action); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention). Moreover, Defendant Attorney General Holder is bound by institutional constraints that are likely to shape litigation strategy, including the type of evidence presented or arguments proffered. It is well-settled that government entities often cannot adequately represent the interests of private parties. *See, e.g., Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect its financial interest allowed to intervene despite presence of government which represented general public interest); *accord Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interests cannot always be expected to coincide, since the court recognized that the "EPA represents the public interest not solely that of the . . . industry").

15. Moreover, any position taken by the United States in this matter could potentially shift or be altered during the course of the litigation. In fact, there have been a number of circumstances in which the United States has shifted and/or reversed its position in cases that lie at the nexus between civil rights issues and constitutional law. *See United States v. N.Y. City Bd. of Educ.*, No. 96-CV-0374 (FB)(RML) (E.D.N.Y. Sept. 11, 2006), slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board had administered, as well as the recruiting practices it had used to publicize those exams, [as] violating Title VII," United States entered into a Settlement Agreement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of black, Hispanic and Asian men and

women, and non-minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (United States reversed course and took position opposing affirmative action program it had previously supported); *Bob Jones Univ. v. United States*, 461 U.S. 574, n.9 (1983) (after the Court granted certiorari, the Government filed a motion to dismiss, informing the Court that the Department of Treasury intended to revoke a number of pertinent rulings and to recognize § 501(c)(3) exemptions for petitioners. However, the District of Columbia Circuit enjoined the Government from granting § 501(c)(3) tax-exempt status to any school that discriminates on the basis of race in *Wright v. Regan*, No. 80-1124 (D.C. Cir. Feb. 18, 1982) (*per curiam*). The issues that may be litigated in this case implicate the legal validity of what is widely regarded as the nation's most effective civil rights statute, and its adjudication should be shielded from any potential vacillations that could undermine the thorough presentation of complex legal questions.

16. Accordingly, Defendant Attorney General Holder does not have the same stake in this matter as Proposed Intervenors or other minority voters who have experienced, and continue to experience, voting discrimination that has impaired their ability to participate fully and equally in Alabama's political processes.

17. Counsel for the Proposed Intervenors have substantial experience in VRA litigation including, but not limited to, constitutional challenges to the VRA (e.g. as counsel to Afican-American intervenors in *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2506 (2009)), Section 5 declaratory judgment actions before three-judge panels in this Court, and with the record that led both to the initial Congressional enactment and subsequent reauthorizations of the Act. Counsel's significant experience provides Proposed Intervenors with competent and

effective representation, and will also very likely benefit the Court in the adjudication of the issues presented in this case.

18. Intervention here is appropriate as of right, pursuant to Fed. R. Civ. P. 24(a)(2). In the alternative, intervention may also be granted permissively, pursuant to Fed. R. Civ. P. 24(b).

19. Counsel for the Proposed Intervenors have conferred with counsel for the parties in accordance with Local Civil Rule 7(m). As of the time of this filing, counsel for Defendant Attorney General Holder has indicated that he does not oppose permissive intervention. Plaintiff's counsel has advised that he has not taken a position on the motion.

WHEREFORE, Proposed Intervenors respectfully request that this Motion to Intervene as Defendants be granted.

Dated: June 11, 2010.

Respectfully submitted,

/s Kristen Clarke

John Payton
Director-Counsel
Debo P. Adegbile
Associate Director-Counsel
Ryan P. Haygood
Jenigh Garrett
Dale Ho
NAACP Legal Defense and
Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen Clarke (DC Bar No. 973885)
NAACP Legal Defense and
Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

*Attorneys for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2010, I caused to be served a copy of the foregoing Motion, Statement of Points and Authorities in Support of the Motion to Intervene, Initial Responsive Pleading, and Proposed Order through electronic mail to the following:

Bert W. Rein (D.C. Bar No. 067215)
William S. Consovoy (D.C. Bar No. 493423)
Thomas R. McCarthy (D.C. Bar No. 489651)
Brendan J. Morrissey (D.C. Bar No. 973809)
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

Frank C. Ellis, Jr.
Wallace, Ellis, Fowler & Head
113 North Main Street
Columbiana, AL 35051
Tel.: (205) 669-6783
Fax: (205) 669-4932

*Counsel for Plaintiff*

Attorney General Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Fax: (202) 307-3961

T. Christian Herren Jr.
Chief, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Fax: (202) 307-3961

U.S. Attorney for the District of Columbia
501 Third Street, NW
Washington, DC 20001

*Counsel for Defendant*

*/s/* Kristen M. Clarke