**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHELBY COUNTY, ALABAMA

　　　　　　　　*Plaintiff*,

　　　　v.

ERIC H. HOLDER, JR., in his official capacity
as Attorney General of the United States of
America

　　　　　　　　*Defendant*,

EARL CUNNINGHAM, HARRY JONES,
ALBERT JONES, ERNEST MONTGOMERY,
ANTHONY VINES and WILLIAM WALKER

　　　　　　　　*Applicants for Intervention*.

**Civil Action No. 1:10-CV-651
(JDB)**

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
INTERVENE AS DEFENDANTS ON BEHALF OF EARL CUNNINGHAM, ET AL.**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND .............................................................................2

ARGUMENT ....................................................................................................3

    A.  Proposed Intervenors Should be Permitted to Intervene as of Right
          Pursuant to Federal Rule of Civil Procedure 24(a).....................................3

    B.  Courts Recognize the Significance of Rule 24 Intervention,
          Particularly in Voting Rights Cases.............................................................4

    C.  Proposed Intervenors Satisfy the Requirements to Intervene
          as of Right Pursuant to Rule 24(a)(2) .........................................................6

          1.  Proposed Intervenors' Motion is Timely .........................................7

          2.  Intervenors Have Direct, Substantial, and
               Legally Protectable Interests............................................................8

          3.  Proposed Intervenors' Interests May Be Impaired by
               the Disposition of the Litigation ....................................................10

          4.  Intervenors' Interests May Not Be Adequately Represented
               by the Present Parties.....................................................................11

    D.  Proposed Intervenors Satisfy the Requirements of
          Article III Standing ....................................................................................18

    E.  In the Alternative, Permissive Intervention is Appropriate
          in this Case Pursuant to Rule 24(b) ...........................................................20

CONCLUSION.................................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Akiachak Native Cmty. v. Dep't of the Interior*,
  584 F. Supp. 2d 1 (D.D.C. 2008) ........................................................................11

*Allen v. State Bd. of Elections*,
  393 U.S. 544 (1969) ..........................................................................................11

*Am. Horse Prot. Ass'n., Inc. v. Veneman*,
  200 F.R.D. 153 (D.D.C. 2001)..............................................................................4

*Assoc. Gen. Contractors of Conn., Inc. v. City of New Haven*,
  130 F.R.D. 4 (D. Conn. 1990)..............................................................................14

*Beer v. United States*,
  374 F. Supp. 363 (D.D.C. 1974),
  *vacated and remanded on other grounds,* 425 U.S. 130 (1976)............................6

*Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*,
  331 U.S. 519 (1947)...........................................................................................20

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*,
  260 F.R.D. 1 (D.D.C. 2009)..................................................................................8

*Blanding v. Du Bose*,
  454 U.S. 393 (1982)...........................................................................................16

*Bob Jones Univ. v. United States*,
  461 U.S. 574 (1983)...........................................................................................15

*Bossier Parish Sch. Bd. v. Reno*,
  157 F.R.D. 133 (D.D.C. 1994)..............................................................................5

*Brooks v. Miller*,
  158 F.3d 1230 (11th Cir. 1998) ...........................................................................16

*Building & Constr. Trades Dep't v. Reich*,
  40 F.3d 1275 (D.C.Cir. 1994) .............................................................................18

*Busbee v. Smith*,
  549 F. Supp. 494 (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983)...............................5

*Chiles v. Thornburgh,*
   865 F.2d 1197 (11th Cir. 1989) ............................................................................9

*City of Cleveland v. Nuclear Regulatory Commission,*
   17 F.3d 1515 (D.C. Cir. 1994) ............................................................................18

*City of Lockhart v. United States,*
   460 U.S. 125 (1983)...........................................................................................5, 16

*City of Petersburg v. United States,*
   354 F. Supp. 1021 (D.D.C. 1972), aff'd, 410 U.S. 962 (1973) ..............................6

*City of Port Arthur v. United States,*
   517 F. Supp. 987 (D.D.C. 1981) ...........................................................................5

*City of Richmond v. United States,*
   376 F. Supp. 1344 (D.D.C. 1974),
   *vacated and remanded on other grounds,* 422 U.S. 358 (1975)............................5

*Commack Self-Service Kosher Meats, Inc. v. Rubin,*
   170 F.R.D. 93 (E.D.N.Y. 1996) ....................................................................17, 20

*Cook v. Boorstin,*
   763 F.2d 1462 (D.C. Cir. 1985) ............................................................................8

*County Council of Sumter County v. United States,*
   555 F. Supp. 694 (D.D.C. 1983) .....................................................................5, 16

*County of San Miguel v. MacDonald,*
   244 F.R.D. 36 (D.D.C.2007).................................................................................13

*Crow Tribe of Indians v. Norton,*
   No. 02-284, 2006 WL 908048 (D.D.C. April 7, 2006)...........................................8

*Dimond v. District of Columbia,*
   792 F. 2d 179 (D.C. Cir. 1986) .....................................................................11, 13

*Donaldson v. United States,*
   400 U.S. 517 (1971)..............................................................................................19

*Fiandaca v. Cunningham,*
   827 F.2d 825 (1st Cir. 1987).................................................................................17

*Friends of Animals v. Kempthorne,*

452 F. Supp. 2d 64 (D.D.C. 2006) ........................................................................12

*Fund for Animals v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ................................................................ *passim*

*Gen. Tel. Co. of the Nw. v. EEOC,*
    446 U.S. 318 (1980) ........................................................................................13

*Georgia v. Ashcroft,*
    195 F. Supp. 2d 25 (D.D.C. 2002) ....................................................................12

*Georgia v. Ashcroft,*
    539 U.S. 461 (2003) .........................................................................................5

*German v. Fed. Home Loan Mortgage Corp.,*
    899 F. Supp. 1155 (S.D.N.Y. 1995) ...................................................................4

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) .......................................................................................15

*Hardin v. Jackson,*
    600 F. Supp. 2d 13 (D.D.C. 2009) .....................................................................8

*Hirshon v. Republic of Bolivia,*
    979 F. Supp. 908 (D.D.C. 1997) .......................................................................7

*Huron Envt'l. Activist League v. U.S. Envtl. Protection Agency,*
    917 F. Supp. 34 (D.D.C. 1996) .......................................................................20

*In re Sierra Club,*
    945 F.2d 776 (4th Cir. 1991) ...........................................................................13

*Jones v. Prince George's County,*
    348 F.3d 1014 (D.C. Cir. 2003) .........................................................................7

*Meek v. Metro. Dade County,*
    985 F.2d 1471 (11th Cir. 1993) .........................................................................6

*Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,*
    246 F.R.D. 315 (D.D.C. 2007) ..........................................................................7

*Military Toxics Project v. EPA,*
    146 F.3d 948 (D.C.Cir.1998) ...........................................................................18

*Miller v. Blackwell,*

348 F. Supp. 2d 916 (S.D. Ohio 2004) ...................................................6

*Mova Pharm. Corp. v. Shalala,*
   140 F.3d 1060 (D.C. Cir. 1998) ...............................................7, 18

*Nash v. Blunt,*
   140 F.R.D. 400 (W.D.Mo. 1992), *summarily aff'd sub nom*
   *African Am. Voting Rights Legal Def. Fund v. Blunt,* 507 U.S. 1015 (1993)........17

*Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,*
   205 F.R.D. 1 (D.D.C. 2000)....................................................8

*Natural Res. Def. Council v. Costle,*
   561 F.2d 904 (D.C. Cir. 1977) ................................................11, 12, 13

*Natural Res. Def. Council v. U. S. Envtl. Prot. Agency,*
   99 F.R.D. 607 (D.D.C. 1983)..................................................13

*New York State v. United States,*
   65 F.R.D. 10 (D.D.C. 1974)....................................................5

*Nuesse v. Camp,*
   385 F.2d 694 (D.C. Cir. 1967) ...............................................3, 13, 17, 20

*Nw. Austin Mun. Util. Dist. No. One v. Mukasey,*
   573 F. Supp. 2d 221 (D.D.C. 2008) ........................................5

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
   129 S. Ct. 2504 (2009)........................................................5, 15

*N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the
State of N.Y.,* 516 F.2d 350 (2d Cir. 1975) ...........................................13

*People for the Ethical Treatment of Animals v. Babbitt,*
   151 F.R.D. 6 (D.D.C. 1993)....................................................13

*Riley v. Kennedy,*
   128 S.Ct. 1970 (2008) .........................................................9

*Rio Grande Pipeline Co. v. FERC,*
   178 F.3d 533 (D.C. Cir. 1999) ...............................................18

*Roeder v. Islamic Republic of Iran,*
   333 F.3d 228 (D.C. Cir. 2003) ...............................................7, 18

*S. Christian Leadership Conference v. Kelley,*

747 F.2d 777 (D.C. Cir. 1984) ...........................................................................18

*S. Utah Wilderness v. Norton,*
    No. 01-2518, 2002 WL 32617198 (D.D.C. June 28, 2002).................................8

*Sandusky County Democratic Party v. Blackwell,*
    387 F.3d 565 (6th Cir. 2004) ..............................................................................17

*Smith v. Cobb County Bd. of Elections & Registrations,*
    314 F. Supp. 2d 1274 (N.D. Georgia 2002).........................................................6

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) .............................................................................7

*Smuck v. Hobson,*
    408 F.2d 175 (D.C. Cir.1969) ............................................................................12

*Tachiona v. Mugabe,*
    186 F. Supp. 2d 383 (S.D.N.Y. 2002).................................................................4

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972)..............................................................................11, 14, 19

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,*
    164 F.3d 1080 (8th Cir. 1999) .............................................................................4

*United States v. Philip Morris USA,*
    566 F.3d 1095 (D.C. Cir. 2009) .........................................................................19

*Wash. Mut., Inc. v. F.D.I.C.,*
    59 F. Supp. 2d 152 (D.D.C. 2009) .....................................................................13

*Wilderness Soc'y v. Babbitt,*
    104 F. Supp. 2d 10 (D.D.C. 2000) .......................................................................4

*Wright v. Regan,*
    656 F.2d 820 (D.C. Cir. 1981) ...........................................................................15

*Young v. Fordice,*
    520 U.S. 273 (1997)............................................................................................16

## DOCKETED CASES

*La. House of Representatives v. Ashcroft,*
    Civ. No. 02-62 (D.D.C. June 6, 2002) ...........................................................5, 15

*United States v. New York City Bd. of Educ.*,
   No. 96-CV-0374 (E.D.N.Y. Sept. 11, 2006)..........................................................14


## OTHER AUTHORITIES


24 U.S.C. § 483................................................................................................19

42 U.S.C. § 1973.....................................................................................1, 3, 11

Voting Rights Act Amendments of 1975, Pub. L. No. 94-73, 89 Stat. 400 ...............11

152 Cong. Rec. H5207 (daily ed. July 13, 2006)............................................1

152 Cong. Rec. S8012 (daily ed. July 20, 2006) ...........................................1

30 Fed. Reg. 9897 (Aug. 7, 1965)..................................................................2

Fed. R. Civ. P. 24(a) ............................................................................. *passim*

Fed. R. Civ. P. 24(b) ...................................................................... 1, 2, 20

7C Charles Alan Wright, Arthur Miller and Mary Kay Kane,
   *Federal Practice and Procedure* § 1908 (2d ed. 1986)...................................9, 12

Proposed Intervenors Earl Cunningham, Harry Jones, Albert Jones, Ernest Montgomery, Anthony Vines and William Walker (collectively, "Proposed Intervenors"), by their undersigned counsel, respectfully submit this Statement of Points and Authorities in support of their Motion to Intervene ("Motion").  This Motion seeks intervention as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.   In the alternative, Proposed Intervenors seek permissive intervention pursuant to Rule 24(b)(1).

## PRELIMINARY STATEMENT

Plaintiff Shelby County ("Plaintiff") filed this action on April 27, 2010, seeking to challenge both the constitutionality of the Section 5 preclearance provision and Section 4(b) scope of coverage provision of the Voting Rights Act of 1965, as amended (VRA).  42 U.S.C. §1973.  On June 8, 2010, Plaintiff filed a Motion for Summary Judgment seeking a permanent injunction to enjoin Defendant's enforcement of these key provisions of the VRA.  The relief that Plaintiff seeks would have the effect of invalidating a core provision of the VRA, reauthorized for 25 years in 2006 only after Congress considered its continuing need and voted for it by a vote of 390-33 in the House of Representatives and 98-0 in the Senate. 152 Cong. Rec. H5207 (daily ed. July 13, 2006); 152 Cong. Rec. S8012 (daily ed. July 20, 2006). This Motion is filed on behalf of African-American residents and registered voters in Shelby County, Alabama.  Proposed Intervenors are aggrieved individuals within the meaning of the statute who have a direct and substantial interest in the outcome of this action as members of a class that the VRA was designed to protect.  Proposed Intervenors seek to have the VRA's Section 4(b) and Section 5 provisions enforced in accordance with Congressional intent, and their constitutionality upheld.

1

This Motion is made with the Proposed Intervenors' understanding of this Court's interest in the efficient disposition of the proceedings in this matter.   To that end, Intervenors are committed to (i) participate in the action on the same schedule to be established for the existing parties; (ii) avoid delays or the unnecessary duplication of effort in those areas satisfactorily addressed and represented by the existing Defendant to the extent possible; and (iii) coordinate any pretrial and trial proceedings with the Defendant to the extent possible.

Proposed Intervenors have interests and perspectives that are not represented by the Plaintiff even though Plaintiff is a governmental subunit.   Proposed Intervenors also possess legally direct, substantial and protectable interests in the subject matter of this litigation that will not be adequately represented by Defendant Attorney General Holder.   Because the Proposed Intervenors meet all requirements for intervention as of right under Rule 24(a)(2), this Motion should be granted.   In the alternative, the facts and circumstances of the case warrant permissive intervention pursuant to Rule 24(b)(1).

## FACTUAL BACKGROUND

Shelby County is a political subdivision of the State of Alabama, and is therefore subject to Section 5 of the Voting Rights Act.  Compl. ¶ 29; 30 Fed. Reg. 9897 (Aug. 7, 1965).  As a result, the County is required to submit all voting changes for administrative or judicial preclearance in order to determine whether those voting changes place minority voters in a worse position or were adopted with a discriminatory purpose.  Compl. ¶ 11(c).  Plaintiff alleges that it has "expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5."  Compl. ¶ 32.  Plaintiff also alleges that it "supports the vigorous enforcement of the Fifteenth Amendment."  Compl. ¶ 35. Plaintiff nevertheless contains at least one political subunit which has failed to comply with the

2

statutory requirements of the VRA during the past ten years and is therefore ineligible for bailout because (i) in 2002, it held a referendum election pursuant to an Alabama state law that had not been precleared, in contravention of 42 U.S.C. § 1973b(a)(1)(D); and (ii) in 2008, the Attorney General interposed an objection to 177 proposed annexations submitted by the City of Calera, in contravention of 42 U.S.C. §1973b(a)(1)(E).  Compl. ¶¶ 34(a)(i), 34(b)(ii).  Indeed, in its August 25, 2008 objection letter, the U.S. Department of Justice observed that it had "not received an annexation submission from the city since 1993, and the city admits that it is at fault for not submitting the 177 annexations."  Letter of Acting Assistant Attorney General Grace Chung Becker to Dale Head, Counsel for Shelby County, Alabama (Aug. 25, 2008), *available at* http://www.justice.gov/crt/voting/sec_5/pdfs/l_082508.pdf (last visited June 11, 2010).

## ARGUMENT

### A.     Proposed Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a), concerning intervention as a matter of right, states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Proposed Intervenors satisfy the requirements to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) .  Federal courts, including those in the D.C. Circuit, have emphasized that Rule 24's intervention requirements should be construed flexibly and liberally in favor of intervention.  *See, e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need

for liberal application of the rules permitting intervention as of right); *Am. Horse Prot. Ass'n., Inc. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of the intervention as of right test); *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10 (D.D.C. 2000) (recognizing D.C. Circuit's liberal approach to intervention). *See also Tachiona v. Mugabe,* 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (describing Rule 24 intervention standard as "a flexible and discretionary one"); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *German v. Fed. Home Loan Mortgage Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995) (recognizing the "liberal construction" of intervention requirements).

Proposed Intervenors' Motion comfortably satisfies Rule 24(a)'s requirements for intervention as of right, as it is timely and because Proposed Intervenors have direct and significant interests in this action that cannot be adequately protected by the current parties to the litigation. *See Am. Horse Prot. Ass'n.,* 200 F.R.D. at 157. Taken together, these considerations strongly counsel in favor of granting the Proposed Intervenors' Motion as of right pursuant to Rule 24(a)(2).

**B.      Courts Recognize the Significance of Rule 24 Intervention,
          Particularly in Voting Rights Cases**

This Court routinely grants intervention in voting rights cases to African-American and other minority voters, recognizing that the intended beneficiaries of the VRA share important interests and can offer important perspectives that bear on questions concerning the proper interpretation of and necessity for the VRA's voter protection provisions. This Court has also recognized that the interests of minority voters may diverge from the positions of institutional parties, such as the United States. Intervention has been permitted in a broad range of voting rights matters, including declaratory judgment actions and matters challenging the constitutionality of Section 5, 42 U.S.C. §

1973c.  *See*, *e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Mukasey,* 573 F. Supp. 2d 221, 230 (D.D.C. 2008) (granting multiple motions to intervene presented by African-American, Latino and other minority voters in case seeking bailout under Section 4(a) of the VRA and challenging the constitutionality of Section 5 of the VRA); *see also  Nw. Austin Mun. Util. Dist. No. One v. Holder,* 129 S. Ct. 2504 (2009) (No. 08-322) (The United States divides Supreme Court oral argument with counsel for African-American intervenors); *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding D.C. District Court's grant to private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties and finding that, as general matter, private parties may intervene in Section 5 declaratory judgment actions where they meet the requirements of Rule 24); *La. House of Representatives v. Ashcroft*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting coalition of African-American and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan where constitutional claims were asserted); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (granting intervention to African-American voters from Texas in declaratory judgment action concerning Section 5 of the Act); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (noting intervention of Hispanic voters); *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983) (granting intervention to African-American voters in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (acknowledging intervention of African-American voters in Section 5 declaratory judgment action), *aff'd,* 459 U.S. 1166 (1983); *accord City of Port Arthur v. United States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981); *New York State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974); *City of Richmond v. United States*, 376 F. Supp. 1344, 1349 n.23 (D.D.C. 1974), *vacated and remanded on other grounds*, 422 U.S. 358

(1975); *Beer v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974), *vacated and remanded on other grounds*, 425 U.S. 130, 133 n.3 (1976); *City of Petersburg v. United States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972), *aff'd*, 410 U.S. 962 (1973).[1] *See also Smith v. Cobb County Bd. of Elections & Registrations*, 314 F. Supp. 2d 1274, 1311 (N.D. Georgia 2002) (African-American voters were entitled to intervene in suit concerning reapportionment of districts since they asserted a legitimate interest that was not adequately represented by any of the parties); *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993) (ruling that voters are entitled to intervene in voting rights suit concerning at-large system).

Accordingly, the practice in this district, and others, is to recognize the vital interests of intervening minority voters in VRA challenges.

## C.   Proposed Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Rule 24(a)(2)

Under Rule 24(a)(2), qualification for intervention as of right depends on the following four factors: (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) whether "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  *See Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *see also Jones v. Prince George's County,* 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  In addition to establishing its qualification for

---

[1]   District courts have also regularly permitted intervention in other voting rights cases, including those in which the United States has been a party.  For example, in *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), the court permitted intervention in a suit arising under the National Voter Registration Act after determining that claimants' interest in avoiding dilution of their votes was different from the interests of state election officials, thus, reducing likelihood that those officials could adequately represent interests of the intervenors.

intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution.

### 1. Proposed Intervenors' Motion is Timely

Plaintiff here filed its Complaint on April 27, 2010, and its Motion for Summary Judgment on June 8, 2010, before the Defendant filed an answer or responsive pleading.  Plaintiff also requested oral argument on its Motion for Summary Judgment.

Proposed Intervenors' Motion, filed just days after Plaintiffs' filed its Motion for Summary Judgment, plainly satisfies the timeliness standard, which is measured from when the prospective intervenor "knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (internal citation and quotation marks omitted).  Courts generally assess timeliness by considering factors including: the applicant's interest in the case, the need for intervention to preserve the applicant's rights, the extent of prejudice to the existing parties, the extent of prejudice to the proposed intervenor if the application is denied, and any unusual circumstances in favor of or opposed to intervention.  *See Smoke v. Norton,* 252 F.3d 468, 470-71 (D.C. Cir. 2001) (setting forth timeliness factors); *Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997).

Proposed Intervenors submitted their Motion well before any responsive brief has been submitted by Defendant and in advance of the scheduling of oral argument on Plaintiff's Motion for Summary Judgment.  Proposed Intervenors also filed their Motion in advance of the Court's preliminary hearing, and before commencement of discovery or any other action in the case.

Under these circumstances, this Motion is timely and granting intervention pursuant to Rule 24(a)(2) would not prejudice the existing parties, or alter any oral argument date or other scheduled

hearing that may be set by the court. *See, e.g.*, *Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009) (memorandum opinion) (intervening motion filed fifteen months after commencement of litigation is timely); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (intervening motion filed prior to discovery is timely); *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (memorandum opinion) (intervening motion filed less than three months after commencement of litigation is timely); *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,* 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely). *But cf. Crow Tribe of Indians v. Norton,* No. 02-284, 2006 WL 908048 (D.D.C. April 7, 2006) (rejecting motion to intervene filed 4 years after filing of Complaint and 2 months after execution of settlement agreement).

## 2.  Intervenors Have Direct, Substantial, and Legally Protectable Interests

The test for determining the sufficiency of an intervenors' interest is not stringent, and it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations and quotation marks omitted). *See also S. Utah Wilderness v. Norton*, No. 01-2518, 2002 WL 32617198, *5 (D.D.C. June 28, 2002) (applying a "liberal approach" to the Rule 24(a) analysis).

Here, Proposed Intervenors have direct, substantial, and legally protectable interests in this action, as they seek to ensure that this Court retain the protections against discriminatory voting changes afforded by the Section 5 preclearance process in Shelby County. Proposed Intervenors also have a direct interest in ensuring that the Section 5 preclearance provision is both interpreted in

a way that does not undermine the constitutional guarantees of the right to vote and upheld against Plaintiff's constitutional challenge.  The statute protects against threats to constitutional guarantees that Congress carefully examined and considered between 2005 and 2006, and helps block and deter the type of discriminatory voting changes that are still in evidence in Alabama.  *See Riley v. Kennedy*, 128 S.Ct. 1970, 1987, 1991-93 (2008)  (Stevens, J. dissenting) (describing over one hundred years of "obstacles to African-American voting" in Alabama, and noting that progress in voting rights in Alabama has been, "at least in part, the consequence of vigorous and sustained enforcement of the VRA").

Proposed Intervenors seek to ensure that this Court's analysis of Plaintiff's claims takes into account the relevant history and modern day impact of voting discrimination against African-American and other minority voters, including Section 5 violations that have affected proposed Intervenors within Shelby County, and the evidence of discrimination that was compiled by Congress during the hearings conducted during the 2006 reauthorization of Section 5.  The experience and perspective of Proposed Intervenors is relevant to this Court's assessment and analysis of Plaintiff's claims.

Courts have held that in those cases involving constitutional challenges to a particular statutory scheme, "'the interests of those who are governed by those schemes are sufficient to support intervention.'" *Chiles v. Thornburgh,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1908, at 285 (2d ed. 1986)).  For all of the reasons identified above, Proposed Intervenors have a cognizable interest in this action as the issues presented bear directly on their federally protected voting rights.

**3.  Proposed Intervenors' Interests May Be Impaired by the Disposition of the Litigation**

9

The disposition of this action will depend upon whether this Court finds Plaintiff's claims regarding the coverage determinations reflected in Section 4(b) and claims regarding the harms associated with Section 5 to be meritorious.  Moreover, the relief that Plaintiff seeks could have the effect of invalidating core provisions of the VRA.  African-American voters, whose voting rights are tied to continued enforcement of the VRA's provisions, should be permitted to intervene so that they will not be subject to the uncertainties associated with whether, and how, the United States and its agencies will present arguments interpreting the VRA's 4(b) scope provision and how vigorously the United States will defend the constitutionality of Section 5.

Indeed, Proposed Intervenors submit this Motion at a critical stage of the litigation.  Any judgment concerning Plaintiff's allegations, now also the subject of Plaintiff's Motion for Summary Judgment, would have permanent and likely irreversible implications for Proposed Intervenors' voting rights.  An adverse ruling on either question presented would result in the disruption or termination of important protections provided by the VRA. Indeed, in an analogous context, where a jurisdiction seeks to bailout or terminate its Section 5 covered status pursuant to Section 4(a)(4), minority voters have an unconditional right to intervene.  Congress has thus recognized that the continued application of Section 5 has direct bearing on minority voters in covered jurisdictions.  While that statutory right is not directly applicable here, the reasoning and logic underlying the rule applies *a fortiori* where a jurisdiction seeks to terminate the operation of Section 5.[2]

---

[2]  Specifically, Plaintiff's Complaint and Motion for Summary Judgment seek to overturn the Section 5 preclearance provision of the VRA, a result akin to but much broader than that which could be sought under the VRA's Section 4(a)(4) bailout provision.  The VRA's Section 4(a)(4) bailout provision confers an unconditional right to intervene at any stage, pursuant to Fed. R. Civ. P. 24(a)(1).  statutorily conferred right of intervention is informed by the Court's holding in *Allen v. State Bd. of Elections*, 393 U.S. 544, 557 (1969), which found an implied cause of action for private citizens to bring suits to enforce provisions of the Voting Rights Act that "might [otherwise] prove an empty

Finally, given that courts routinely permit intervention even where an interested party retains the capacity to bring subsequent litigation to vindicate its interests, *see, e.g.*, *Akiachak Native Cmty. v. Dep't of the Interior*, 584 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (*citing Fund For Animals*, 322 F.3d at 735), the permanent impairment to Proposed Intervenors' voting rights that would result from any adverse ruling justifies intervention here.

### 4.   Intervenors' Interests May Not Be Adequately Represented by the Present Parties

Proposed Intervenors, who have significant interests that may be impaired by the disposition of this litigation, have the right to intervene "unless existing parties adequately represent [their] interest[s]." Fed. R. Civ. P. 24(a)(2).  Proposed Intervenors's burden on this point is "not onerous," and is satisfied by a showing that the representation of their interests by the present parties "*may* be inadequate, not that representation will in fact be inadequate."  *See Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (emphasis added, internal quotation marks omitted); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (showing burden should be treated as minimal); *accord Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977); *Georgia v. Ashcroft*, 195 F. Supp. 2d 25 (D.D.C. 2002) (where three-judge panel in state redistricting declaratory judgment action granted intervention pursuant to African-American voters pursuant to Fed. R. Civ. Proc. 26(a)(2)); Wright, et al., *supra*, § 1909 (An applicant ordinarily should be permitted to intervene as of right "unless it is *clear* that the party will provide adequate

---

promise." Congress responded by amending the VRA in several places to expressly confer standing upon "aggrieved persons" to enforce their rights. 42 U.S.C. 1973a.  *See Voting Rights Act Amendments of 1975,* Pub. L. No. 94-73, sec. 401, 89 Stat. 400, (substituting "Attorney General" with "Attorney General or an aggrieved person" in several sections of the statute).  The legislative history underlying the resulting 1975 amendments to the VRA makes clear that both the Attorney General and private persons were to be vested with the responsibility to ensure enforcement of the Act's provisions.  This reasoning further underscores the appropriateness of Proposed Intervenors' Motion to Intervene.

11

representation for the absentee" (emphasis added)).  Even "a partial congruence of interests" is insufficient to "guarantee the adequacy of representation."  *Fund for Animals*, 322 F.3d at 737.

Proposed Intervenors meet that burden here.  The interests of Proposed Intervenors may not be adequately protected by the existing Defendant Attorney General Holder, as Defendant simply does not have the same stake as do Proposed Intervenors, the intended beneficiaries of the VRA, whose voting rights could be adversely impacted by a negative ruling in this matter.  Further, courts—recognizing that the government must necessarily address the needs of diverse, and sometimes conflicting, groups of citizens—have frequently found that the United States and other governmental entities cannot, within the meaning of Rule 24(a)(2), adequately represent the interests of a particular subset of the general public.  In particular, the District of Columbia Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."  *Fund for Animals*, 322 F.3d at 736.  Government entities are charged with "represent[ing] the interests of the American people," whereas aspiring intervenors, as here, are dedicated to representing their personal interests.  *Id*.; *see also Natural Res. Def. Council*, 561 F.2d at 912-13; *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir.1969); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006).

Even an overlap in interests or a general agreement in principles between Proposed Intervenors and the Government is insufficient, because even "a shared general agreement does not necessarily ensure agreement in all particular respects." *Fund for Animals*, 322 F.3d at 737 (quoting *Natural Res. Def. Council*, 561 F.2d at 912) (internal quotation marks omitted).  *See also Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of

the EEOC); *accord Dimond*, 792 F.2d at 192 (private party seeking to protect its financial interest allowed to intervene despite presence of government which represented general public interest); *Nuesse*, 385 F.2d at 702-04; *Wash. Mut., Inc. v. F.D.I.C.*, 659 F. Supp. 2d 152, 155 (D.D.C. 2009) (although government's and movant bank's positions were similar, permitting intervention because government did not adequately represent bank's interests); *County of San Miguel v. MacDonald*, 244 F.R.D. 36 (D.D.C.2007) (cattleman's association aligned in interest with Department of Interior permitted to intervene because its interests were not adequately represented by U.S. government); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government tasked with enforcing regulatory scheme cannot adequately represent private party's interest); *Natural Res. Def. Council v. U. S. Envtl. Prot. Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interest cannot always be expected to coincide, since the court recognized that the "EPA represents the public interest not solely that of the . . . industry").  *See also In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (state "cannot be an adequate representative of environmental groups"); *N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (pharmacists allowed to intervene in challenge by consumer group to enjoin the Regents' enforcement of statewide regulation because "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the Regents"); *Assoc. Gen. Contractors of Conn., Inc. v. City of New Haven*, 130 F.R.D. 4, 11 (D. Conn. 1990) (minority contractors allowed to intervene in challenge to minority set-aside program because it was "sufficiently shown that as a minority contractor, its interest in the

13

set-aside is compelling economically and thus distinct from that of the City" also defending the program).

In *Trbovich*, the Supreme Court allowed intervention by a union member in an action brought by the Secretary of Labor even though the Secretary was broadly charged with protecting the public interest.  The Court reasoned that the Secretary of Labor protects not only the rights of individual union members but also the public interest, two functions which "may not always dictate precisely the same approach to the conduct of the litigation." 404 U.S. at 539.  Therefore, under the prevailing standard set forth by the Court in *Trbovich*, the adequacy of representation requirement of Rule 24 is satisfied by a mere showing that representation of one's interest  "may be" inadequate; and the burden of making that showing should be treated as minimal. *Id.* at 538 n.10.

Moreover, federal agencies can adopt mid-course revisions it its litigation strategy or theory of the case, or abandon a prior institutional position altogether in matters that implicate the nexus between civil rights and constitutional guarantees.  *See, e.g.*, *United States v. New York City Bd. of Educ.*, No. 96-CV-0374 (E.D.N.Y. Sept. 11, 2006), slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board had administered, as well as the recruiting practices it had used to publicize those exams, [as] violating Title VII," United States entered into a Settlement Agreement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of black, Hispanic and Asian men and women, and non-minority females"; however,  "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of  the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (United States reversed course and took position opposing affirmative action program); *Bob Jones Univ. v. United States*, 461 U.S. 574,

n.9 (1983) (after the Court granted certiorari, the Government filed a motion to dismiss, informing the Court that the Department of Treasury intended to revoke a number of pertinent rulings and to recognize § 501(c)(3) exemptions for petitioners.  The Court of Appeals for the D.C. Circuit, however, enjoined the Government from granting § 501(c)(3) tax-exempt status to any school that discriminates on the basis of race in *Wright v. Regan*, 656 F.2d 820 (D.C. Cir. 1981) (*per curiam*)). This risk makes it difficult for the VRA's intended beneficiaries to rely exclusively on Defendant Attorney General Holder to both consistently and adequately defend their cognizable interests.

Proposed Intervenors easily meet the minimal burden, set forth in *Trbovich*, of showing inadequacy of representation.  The United States and private minority voters have often disagreed on the proper application of various provisions of the Voting Rights Act and have diverged on the appropriate strategies for ensuring the protection of voting rights.  The following examples involve cases where NAACP LDF represented African-American intervenors.  In *Nw. Austin Mun. Util. Dist. No.* One, 129 S. Ct. 2504 (2009) (No. 08-322)*,* Defendant Intervenors emphasized different aspects of the Congressional record and presented arguments and evidence that supplemented that provided by the Attorney General in its defense of Section 5.  The brief filed by those Defendant Intervenors in the Supreme Court was repeatedly referenced at oral argument in the Supreme Court. Transcript of Oral Argument at 55, 57, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504 (2009) (No. 08-322).  In *La. House of Representatives v. Ashcroft et. al*, Civ. No. 02-62 (D.D.C. June 6, 2002), Attorney General John Ashcroft opposed a declaratory judgment on grounds far more narrow than those advanced by Defendant Intervenors.  In particular, intervenors there argued that the redistricting plan at issue evidenced retrogression in four distinct areas of the state

15

going well beyond the single district deemed to evidence retrogression within the meaning of Section 5 by Defendant Ashcroft.

Other examples exist as well.  In *City of Lockhart*, 460 U.S. at 130, the minority intervenors presented the sole argument in the Supreme Court on behalf of the appellees while the United States stood in support of the appellants.  In *Blanding v. Du Bose*, 454 U.S. 393, 398 (1982), the minority Plaintiff, but not the United States, appealed and prevailed in a voting rights suit in the Supreme Court.  In *County Council of Sumter County,* 555 F. Supp. at 696, the United States and African-American intervenors took conflicting positions regarding the application of Section 2 in the Section 5 preclearance process.  In *Brooks v. Miller*, 158 F.3d 1230, 1233 (11th Cir. 1998), both minority Plaintiff and the United States filed similar actions challenging Georgia's adoption of a statewide majority-vote requirement.  Although the cases were consolidated, the United States unilaterally dismissed its action prior to trial.  In *Young v. Fordice*, 520 U.S. 273, 281 (1997), the United States opted not to appeal a lower court's adverse ruling, leaving only the private Plaintiff to appeal to the U.S. Supreme Court and win reversal.  When this experience is viewed through the lens of the statutory intervention requirement that such motions be made in timely fashion, a denial of intervention now would prevent intended beneficiaries of the VRA from defending this seminal civil rights legislation at a critical stage of the litigation, given the pendency of Plaintiff's Motion for Summary Judgment.

While Defendant Attorney General Holder's obligation is to represent the broad interests of the United States, Proposed Intervenors are concerned specifically with the interests of African-American voters in Shelby County and of those residing in other Section-5 covered jurisdictions that are the target of Plaintiff's Complaint and Motion for Summary Judgment.  Indeed, minority voters

16

who reside within the area that lies at the heart of Plaintiff's Complaint inevitably bring to the litigation a "[l]ocal perspective on the current and historical facts at issue" which could not otherwise be presented and which could benefit the this Court's disposition of Plaintiff's claims. *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (noting that intervenors would bring a different perspective to case that might assist court, and intervention came early in the action); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention). The cases cited above make clear that the interests of intended beneficiaries of federal statutes and the interests of agencies responsible for the administration and enforcement of those statutes are often not coextensive, and this divergence often affects the course of litigation in critical ways.

As Proposed Intervenors have demonstrated above, even if Defendant Attorney General Holder appropriately interprets and defends the Section 4(b) scope of coverage provision and, similarly, defends the constitutionality of Section 5, the effort to represent Proposed Intervenors' distinct interests may nevertheless ultimately prove inadequate.  Indeed, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703.  *Nash v. Blunt,* 140 F.R.D. 400, 402 (W.D.Mo. 1992) ("it is normal practice in reapportionment controversies to allow intervention of voters ... supporting a position that could theoretically be adequately represented by public officials"), *summarily aff'd sub nom African Am. Voting Rights Legal Def. Fund v. Blunt,* 507 U.S. 1015 (1993).  For all of the reasons stated above, the Proposed Intervenors have made a sufficient showing that the existing Defendant may not be an adequate representative of their interests.

**D.**     **Proposed Intervenors Satisfy the Requirements of Article III Standing**

Because Proposed Intervenors seek to participate on "an equal footing with the original parties to the suit" they must satisfy the standing requirements imposed on all parties.  *City of Cleveland v. Nuclear Regulatory Commission,* 17 F.3d 1515, 1517 (D.C. Cir. 1994).  As set forth above, Proposed Intervenors indeed have a concrete and cognizable interest in this litigation that, under circuit precedent, satisfies Article III's demands.  *See, e.g.*, *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C. Cir. 2003)  ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement.");  *Fund for Animals,* 322 F.3d at 733 (D.C.Cir. 2003) (finding intervenors satisfied standing requirements because they "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]") (internal citations and quotation marks omitted).  *Cf. S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (stating that Article III's "gloss" on Rule 24 requires an intervenor to have a "legally protectable" interest).  *See also Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C.Cir.1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282 (D.C.Cir. 1994); *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 539-40 (D.C. Cir. 1999) (*quoting City of Cleveland v. NRC,* 17 F.3d at 1517).  Proposed Intervenors clearly suffer from an imminent threat to their federally protected voting rights that is the direct and proximate result of the form of Plaintiff's Complaint and its June 8, 2010, Motion for Summary Judgment.  Plaintiff's pending Motion for Summary Judgment seeks to have this Court find Sections 4(b) and 5 of the VRA unconstitutional and enjoin the Defendant from continued enforcement of its Section 5 responsibilities.  A favorable ruling from this court denying Plaintiffs' Motion for Summary Judgment and ultimately denying their requested relief

would remedy this injury.  Proposed Intervenors thus have standing to participate in this suit to help inform and shape the Court's disposition of Plaintiff's claims.

As the Rule's plain text indicates, intervenors of right need only an "interest" in the litigation—not a "cause of action" or "permission to sue."  *See* Fed. R. Civ.P. 24(a)(2).  *See also Trbovich*, 404 U.S. 528 (Court permitted a union member to intervene in a suit brought by the Secretary of Labor even though the applicable federal statute expressly prohibited union members from initiating such actions on their own).  *Id.* at 531-32 (*citing* 29 U.S.C. § 483); *United States v. Philip Morris USA*, 566 F.3d 1095, 1145 (D.C. Cir. 2009) (party need not have a "cause of action" in order to satisfy the requirements of Rule 24(a)).

Here, Proposed Intervenors satisfy the requirements to intervene as of right pursuant to Rule 24(a)(2).  Proposed Intervenors have a legally protectable interest in the outcome of the action.  In particular, Proposed Intervenors have a vested interest in retaining the protections against discriminatory voting changes that they enjoy through the prophylactic Section 5 preclearance process, as well as in ensuring that this Court upholds the constitutionality of both the Section 4(b) scope of coverage provision and Section 5 preclearance provision.  Proposed Intervenors risk injury to their federally protected voting rights and potential harm to their status as minority voters if an adequate defense is not mounted against Plaintiff's claims in this case, which represents one of two pending challenges to the recently reauthorized provisions of the VRA.  Moreover, Proposed Intervenors have a "significantly protectable interest" in the outcome of this matter given their status as minority voters who reside in the covered jurisdiction at issue in this case.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971).

As Proposed Intervenors would suffer impairment of rights that clearly fall within the zone of rights protected under the VRA, their status as "aggrieved parties" is evident.  Like the private parties in *Allen*, these aggrieved individuals now seek to intervene in this declaratory judgment suit to defend the status of their federally protected voting rights.  *See, e.g.*, *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529, 531 (1947) (Where Congress has provided an "unmistakable" and "unconditional" right to intervene, "there is no room for the operation of a court's discretion.")

**E.**     **In the Alternative, Permissive Intervention is Appropriate in this Case Pursuant to Rule 24(b)**

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for the Proposed Intervenors' intervention in this action.  Rule 24(b) provides that permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b).  When assessing a motion for permissive intervention, the primary consideration is "whether the intervention will unduly delay or prejudice the rights of the existing parties."  *Commack Self-Service Kosher Meats,* 170 F.R.D. at 106.  Courts do not interpret this provision strictly.  *Nuesse*, 385 F.2d at 704 (D.C. Cir. 1967).  The decision to allow permissive intervention is fully within the discretion of the court, and the court is to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.  Fed. R. Civ. P. 24(b).  *Huron Envt'l. Activist League v. U.S. Envtl. Protection Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was granted where Plaintiff's claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Here, given the unique perspective of Proposed Intervenors with respect to the experience of minority voters in Shelby County, their intervention in this matter would very likely aid or enhance the Court's understanding of the underlying legal and factual issues and, thereby, assist in the efficient resolution of this action.  As a result, there will be commonality between the questions of law and fact presented in the Complaint and pending Motion for Summary Judgment, and the claims and defenses presented by the Proposed Intervenors.  In addition, intervention will not delay the litigation, as the action has just commenced, no scheduling or discovery conferences have been set, and Plaintiff's Motion for Summary Judgment was filed only three days earlier.  Proposed Intervenors aver that they will participate on the same schedule that will be established for the existing parties.

Taken together, these considerations plainly demonstrate the propriety of the Proposed Intervenors' permissive intervention request.   This Court should, therefore, grant the Proposed Intervenors' alternative request for permissive intervention in the event that the Court declines to grant intervention as of right.

**CONCLUSION**

For the reasons set forth above, the motion to intervene should be granted.

Dated:  June 11, 2010

Respectfully submitted

/s/ Kristen M. Clarke
John Payton
     Director-Counsel
Debo P. Adegbile
Ryan P. Haygood
Jenigh Garrett
Dale E. Ho
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 965-2200

Kristen M. Clarke (D.C. Bar No. 973885)
NAACP Legal Defense and
  Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

*Attorneys for Proposed Intervenors*

22