IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:10-0651 |
| | ) (JDB) |
| ERIC H. HOLDER, JR., | ) |
| in his official capacity as ATTORNEY | ) |
| GENERAL OF THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF THE ATTORNEY GENERAL'S OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the Attorney General of the United States ("Attorney General") respectfully submits his Opposition to the Motion for Summary Judgment filed by Plaintiff, Shelby County, Alabama ("Shelby County" or the "County"). Plaintiff seeks summary judgment on its claim that Sections 4(b) and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973b(b) and 1973c, are unconstitutional and a permanent injunction barring continued enforcement of these provisions. Because the Plaintiff's Complaint and Motion papers assert facts material to its claims, and because the Attorney General has had no opportunity to discover the basis for the facts asserted or to discover other material facts, the Attorney General is unable to present by affidavit facts essential to justify its opposition. Accordingly, the Motion should be denied as premature pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Alternately, the Attorney General respectfully requests that this Court permit the Attorney General adequate opportunity for discovery to ascertain facts essential to oppose the Plaintiff's Summary Judgment Motion.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed this action on April 27, 2010, alleging that Sections 4(b) and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973b(b) and 1973c, are unconstitutional.  Compl. ¶ 1.  The Attorney General has yet to file his first responsive pleading; the deadline for doing so is June 28, 2010.  On June 8, 2010, however, before the United States has filed its responsive pleading and long before the exchange of any information whatsoever by the parties, Plaintiff moved for summary judgment, asserting several facts about Section 5's application in Shelby County and simultaneously asserting without support that such facts are both material and undisputed.

### B.   Section 5

Congress enacted the Voting Rights Act in 1965 to "rid the country of racial discrimination in voting."  *South Carolina* v. *Katzenbach*, 383 U.S. 301, 315 (1966).  The Act contained several special provisions that were limited both in time and in geographic coverage.  The best known temporary provision, Section 5, requires covered jurisdictions to receive a "preclearance" determination, from either the Attorney General of the United States or the United States District Court for the District of Columbia, that proposed changes in voting practices and procedures are not discriminatory before those changes can be implemented.  42 U.S.C. § 1973c.  The preclearance mechanism is designed "to shift the advantage of time and inertia from the perpetrators of the evil to its victim, by freezing election procedures in the covered areas unless the changes can be shown to be nondiscriminatory."  *Reno* v. *Bossier Parish Sch. Bd.*, 520 U.S. 471, 477 (1997) (internal quotations and citations omitted).  Originally enacted as part of the 1965 Act, Congress extended Section 5 and certain other of the Act's temporary provisions in 1970, 1975, 1982 and, most recently, on July 27, 2006.  *See* Fannie Lou

Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006, Pub. L. No. 109-246, § 5, 120 Stat. 577, 580-81.

"Section 5 was enacted in large part because of the acknowledged and anticipated inability of the Justice Department – given limited resources – to investigate independently all changes with respect to voting enacted by States and subdivisions covered by the Act." *Perkins* v. *Matthews*, 400 U.S. 379, 392 n.10 (1971).  "For that reason, § 5 places the burden on the affected polities to submit all changes for prior approval." *Id.*  Section 5 also places the burden on the covered jurisdictions of "demonstrating that the changes are not motivated by a discriminatory purpose and will not have an adverse impact on minority voters." *McCain* v. *Lybrand*, 465 U.S. 236, 247 (1984).

**C.    Section 4(b)**

Section 4(b) of the Act provides the threshold formula for identifying which jurisdictions are subject to the preclearance requirement of Section 5 of the Act.  42 U.S.C. § 1973b(b).  The Section 4(b) coverage determinations by the Attorney General and the Director of the Census are not judicially reviewable.  *See Briscoe v. Bell*, 432 U.S. 404, 412 (1977).

In enacting the Voting Rights Act in 1965, Congress sought to apply the most "stringent remedies," such as Section 5, to those "areas where voting discrimination has been most flagrant." *South Carolina*, 383 U.S. at 315.  Congress "began work with reliable evidence of actual voting discrimination" in certain jurisdictions and then "evolved" a coverage formula in Section 4(b) of the Act "to describe these areas" that were the worst offenders, *i.e.*, whether the jurisdiction had employed "tests and devices for voter registration" and had a particularly low voting rate.  *South Carolina*, 383 U.S. at 329-31.  The Supreme Court has recognized that the coverage formula of Section 4(b) was essentially reverse-engineered to cover "those regions of

the country where voting discrimination had been most flagrant" and that the preclearance requirements of Section 5 were "placed only on jurisdictions with a history of intentional racial discrimination in voting." *City of Boerne v. Flores*, 521 U.S. 507, 533 (1997).

Alabama was one of those states with a long history of official intentional discrimination against minority voters, and as a result it was one of the states covered under Section 4(b) and made subject to Section 5, pursuant to the original 1965 coverage determinations by the Attorney General and Director of the Census. *South Carolina*, 383 U.S. at 309; 30 Fed. Reg. 9897 (Aug. 7, 1965). Shelby County became subject to Section 5 by virtue of being a subjurisdiction of the State of Alabama. *United States v. Sheffield*, 435 U.S. 110 (1978).[1]

**D.     Past Cases**

Over the last forty-five years, courts have repeatedly held Section 5 to be constitutional. *Lopez v. Monterey County*, 525 U.S. 266, 282-85 (1999); *City of Rome v. United States*, 446 U.S. 156, 173-83 (1980); *Georgia v. United States*, 411 U.S. 526, 535 (1973); *South Carolina v. Katzenbach*, 383 U.S. 301, 334-37 (1966). Just two years ago, after an exhaustive examination of the vast legislative record, a three-judge panel of this Court affirmed the constitutionality of Section 5; on direct appeal, the Supreme Court declined to address the constitutional issue, and instead resolved the case on a statutory ground. *Nw. Austin Mun. Utility Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221, 278-79 (D.D.C. 2008) (three-judge court), *rev'd on other grounds,* 129 S. Ct. 2504 (2009).

---

[1] Congress never intended the original coverage formula to serve as an ongoing "measure of an adequate level of political enfranchisement" of minority voters, such that when the criteria no longer applied, it would establish that "the discriminatory efforts had been sufficiently eradicated to warrant removing the safeguards which made the improvement possible." Joint View of 10 Members of the Judiciary Committee Relating to Extension of the Voting Rights Act of 1965, 115 Cong. Rec. 5521 (1970). For that reason, Congress amended Section 4(b) in 1982, to provide an opportunity starting in 1984 for jurisdictions to bailout by establishing that for the most recent decade conditions within the jurisdiction have changed to the extent that coverage is no longer warranted.

## II.     LEGAL STANDARD

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson* v. *Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine material fact issues. Fed. R. Civ. P. 56; *see Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986); *Adickes* v. *S.H. Kress & Co*., 398 U.S. 144, 157-61 (1970). The relevant substantive law determines the facts material to the litigation's outcome. *See Anderson*, 477 U.S. at 250. Material facts must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Summary judgment, however, is proper only after the non-moving party has been given "adequate time for discovery." *1443 Chapin St., LP v. PNC Bank, Nat'l Ass'n*, 258 F.R.D. 186, 187 (D.D.C. 2009) (internal quotation marks omitted); s*ee also Celotex Corp*., 477 U.S. at 322 (summary judgment can be entered only "after adequate time for discovery"); *Anderson*, 477 U.S. at 257 (summary judgment is proper only "as long as the plaintiff has had a full opportunity to conduct discovery"). Thus, under Rule 56(f) of the Federal Rules of Civil Procedure, "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny the motion . . . [or] order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f).

Rule 56(f) affirms the importance of discovery in defending a summary judgment motion, and "is intended to prevent railroading a non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery."

5

*Milligan v. Clinton*, 266 F.R.D. 17, 18 (D.D.C. 2010) (citations and internal quotations omitted). Under Rule 56(f), the party seeking discovery must identify the facts to be discovered that would create genuine material fact issues and the reasons why the party cannot acquire those facts without discovery. *Graham v. Mukasey*, 608 F. Supp.2d 50, 52-53 (D.D.C. 2009).

### III.   ARGUMENT

The Plaintiff's Summary Judgment Motion is premature. Its Complaint and motion papers, including a supporting declaration, assert facts that go to the heart of the Plaintiff's case. Those assertions relate to the alleged burdens of Section 5 compliance and to the current conditions that, in the Plaintiff's view, make Section 5 no longer appropriate. Indeed, the Plaintiff seeks drastic relief, striking down core provisions of the Voting Rights Act as unconstitutional. Yet long before the exchange of any information – including discovery, Rule 26 disclosures, or indeed even before the Attorney General has filed a responsive pleading to help crystallize the issues in this case—the Plaintiff seeks summary judgment. Because the Attorney General cannot at this inchoate stage of litigation respond appropriately to the fact issues raised by the Plaintiff, summary judgment should be denied or, alternatively, the matter should be stayed until the Attorney General has had an adequate time to obtain discovery essential to its defense of the constitutionality of Sections 4(b) and 5 of the Voting Rights Act. Moreover, judging the constitutionality of an Act of Congress is a grave duty. Having itself raised material fact questions, it is especially inappropriate for the Plaintiff to seek nullification of Sections 4(b) and 5 without a full record on all relevant issues.

**A.    The Attorney General Cannot Present Facts Essential To Justify Its Opposition to Plaintiff's Motion for Summary Judgment.**

Ordinarily, summary judgment is appropriate only "after adequate time for discovery."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Thus, as long as the non-moving party has not been dilatory, courts grant Rule 56(f) requests "almost as a matter of course."  *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (quoting *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992)).  Indeed, this Court has noted the D.C. Circuit's emphasis that courts "should follow a generous approach toward granting Rule 56(f) motions."  *Loughlin v. United States*, 230 F. Supp. 2d 26, 51 (D.D.C. 2002) (citing *Berkeley*, *supra*).  Granting a Rule 56(f) request is especially important where, as here, the moving party asserts material facts without providing the opposing party a fair opportunity to conduct discovery.

1. **The Legal Issues Raised by the Plaintiff**

Plaintiff alleges that to determine whether the reauthorization of Sections 4(b) and 5 was an appropriate exercise of congressional power, this Court may consider whether "[t]here [is] a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  *City of Boerne*, 521 U.S. at 520.  Indeed, the Plaintiff's motion papers assert, as undisputed, facts that seek to establish that Section 5 compliance imposes substantial burdens on Shelby County that are not justified by current conditions.  Its memorandum in support of its Summary Judgment Motion repeats no less than four times that Section 5's "current burdens . . . must be justified by current needs."  Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5, 16, 20, 24 (quoting *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2513 (2009)); *see* Declaration of Richard Dellheim ("Dellheim Decl.") ¶¶ 6, 9 (Ex. 1).

2. **Plaintiff Asserts Facts Directly Relevant to the Legal Issues Before the Court.**

To support its Motion, Plaintiff proffers conclusory, unsupported, and untested facts seeking to establish that, as applied to Shelby County, Section 5 imposes substantial burdens that

7

are not justified by current conditions. Without discovering the basis for those facts, and without the ability to test them and develop additional relevant evidence through the discovery process, the Attorney General simply is unable at this time to present facts essential to justify his opposition here. Dellheim Decl. ¶¶ 4, 6, 8-10, 12, 14, 16 (Ex. 1).

For instance, Plaintiff's motion papers seek to establish that complying with Section 5's preclearance requirements imposes substantial burdens on Shelby County. Regarding the alleged costs of Section 5, Plaintiff states: "In the last 10 years, Shelby County has filed for preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5." Compl. ¶ 32; *see* Pl.'s Statement of Mat'l Facts ¶ 7; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1; Ellis Decl. ¶ 7. By Plaintiff's own admission, these facts, if true, are material to the Plaintiff's claim; indeed, Plaintiff specifically included them in its Statement of Material Facts. Pl.'s Statement of Mat'l Facts ¶ 7.

Plaintiff's material factual assertions, however, are vague, conclusory, and wholly unsupported by competent evidence. Plaintiff offers no data or citations to support the facts material to its claim. The sole support offered by the County is the Declaration of Frank C. Ellis, Jr. Mr. Ellis's declaration, however, offers no evidence to support the facts alleged. Mr. Ellis states, without any evidentiary basis, that "[i]n the last 10 years, Shelby County has filed for preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5 of the VRA . . . ." Declaration of Frank C. Ellis, Jr. ("Ellis Decl.") ¶ 7. There is simply no way the Attorney General can determine the accuracy of Mr. Ellis's statements nor divine what the County or Mr. Ellis means by adjectives such as "numerous" and "significant" or indistinct concepts such as "time" and "energy." Nor does Plaintiff offer any other evidence to establish the basis for the material factual claims relevant to the issue of

"current burdens" and upon which it asks this Court to rely.  Most importantly for Rule 56(f) purposes, the Attorney General has simply had no opportunity to discover the basis for the Plaintiff's assertions or to discover other facts relevant to the inquiry the Plaintiff raises. Without knowing the basis for the Plaintiff's assertions, the data or methodologies underlying them, or other facts related to the Plaintiff's assertions, the Attorney General cannot adequately respond to them.  Any information as to the costs, burdens, time, and energy expended by Shelby County to comply with Section 5 would solely be in Shelby County's possession.  Absent discovery, the Attorney General will be deprived of the opportunity to test the validity of the Plaintiff's assertion of facts related to the purported burdens Section 5 allegedly imposes on Shelby County. Dellheim Decl. ¶¶ 4, 8-10, 12, 14, 16 (Ex. 1).

Likewise, intrinsic to the Plaintiff's claim that current conditions in Shelby County demonstrate that Section 5's application is no longer appropriate is evidence of the history of official discrimination, past and current, in the County.  Plaintiff asserts minimal facts about the outlawing of tests and devices nationwide and the rates of persons registering and voting in Shelby County and Alabama in certain elections.  Pl.'s Statement of Mat'l Facts ¶ 3-5.  Yet, having raised the question of "current conditions," the Plaintiff's papers are basically silent on this vital issue.  The history in Shelby County of voting discrimination and compliance with federal voting rights laws, past and current, relates directly to the Plaintiff's claim that Section 5 is no longer appropriate based on current needs.  Discovery is essential for the Attorney General to determine whether the history of Shelby County supports or undermines the Plaintiff's claim that Section 5 coverage is no longer warranted.  The great bulk of the information on the history of elections and voting in Shelby County and its subjurisdictions, as well as current conditions regarding elections and voting in the County, is within the exclusive control of the County and its

subjurisdictions.  Discovery is necessary to access that vital information.  Dellheim Decl.  ¶ 9 (Ex. 1).

Also, Plaintiff asserts it is not eligible to "bailout" under Section 4(a) of the Act from compliance with Section 5's preclearance requirement.   Pl.'s Statement of Mat'l Facts ¶¶ 9-10; Ellis Decl. ¶¶ 9-10; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 41 n.8.  The underlying premise of Plaintiff's constitutional claim is that but for a single objection in a subjurisdiction and a single instance by the County of failure to comply with Section 5's procedural requirements, it would be eligible to "bailout" under Section 4(a) of the Act from compliance with Section 5's preclearance requirement.  Ellis Decl. ¶¶ 9-10, Compl. ¶ 34.[2]  The Plaintiff does not assert, and the Attorney General does not presently know, the degree to which Shelby County could meet or not meet each of the statutory bailout criteria under Section 4(a) of the Act.   Whether or not one or two bailout criteria might defeat bailout, as the Plaintiff claims, Ellis Decl. ¶ 9-10, it is relevant for the Attorney General to be allowed to discover the circumstances surrounding those bailout criteria and whether those are the only criteria that might keep Shelby County from bailing out, or whether there are other areas of potential non-compliance.  Fact discovery may well yield relevant information, such as the degree of compliance with applicable bailout standards.  Dellheim Decl.  ¶¶ 10, 11, 17 (Ex. 1).

In addition, as a jurisdictional matter, Shelby County must show that it has suffered injury from the enforcement of Sections 4(b) and 5.  Constitutional standing requires that a party have

---

[2]  The Attorney General asserts that, even if true, at least one of the asserted bases on which the Plaintiff asserts it could not bailout, would not necessarily preclude bailout by the County under Section 4(a).  Ellis Decl. ¶ 9.  The Attorney General has consented to, and this Court has approved, consent decrees that have allowed jurisdictions to "bailout" where there have been instances of isolated non-compliance with Section 5.  The Attorney General, after investigation, has ultimately consented to, and this Court has approved, every bailout application brought in this Court by political subdivisions since the amended bailout standard adopted by Congress in 1982 went into effect in 1984, including in the *Nw. Austin* case.  Aside from the Supreme Court's decision in *Nw. Austin*  on the threshold question of the kinds of jurisdictions eligible to seek bailout, there are no court decisions after 1984 interpreting the amended bailout standard in Section 4(a).

suffered an actual or threatened injury, which may be fairly traced to the challenged action and which is "likely to be redressed by a favorable decision" of the court.  *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).  These requirements – injury, causation, and redressability – are an "irreducible constitutional minimum," and the absence of any one of these elements defeats standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  It is Plaintiff's burden to establish each of the required elements.  *See id.* at 561.

   Without discovery, the Attorney General is unable to determine whether Plaintiff has, in fact, suffered injury in complying with Sections 4(b) and 5.  The Attorney General cannot rely on Plaintiff's vague, conclusory statement that it "expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5[.]"  Compl. ¶ 32; see Pl.'s Statement of Mat'l Facts ¶ 7; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1; Ellis Decl. ¶ 7.  For the Attorney General to know whether Plaintiff even has standing to bring this action, the Attorney General needs the opportunity to discover the facts alleged by Plaintiff in its papers.  Dellheim Decl. ¶¶ 15-17 (Ex. 1).

   Having raised material fact questions in its Complaint and summary judgment papers relating to the current burdens of Section 5 compliance as well as the current conditions in Shelby County, the Attorney General should be permitted a fair opportunity to discover information relevant to those questions.  As the Supreme Court has cautioned, judging the constitutionality of an Act of Congress is "the gravest and most delicate duty that this Court is called on to perform."  *Nw. Austin Mun. Utility Dist. No.*, 129 S. Ct. at 2513.  Accordingly, it is therefore inappropriate for the Plaintiff to ask this Court to strike down as unconstitutional a

11

bedrock civil rights law without first providing the Court the benefit of a complete record on all relevant issues.

B.  **The Attorney General Seeks Limited, Targeted Discovery Directly Relevant to the Issues Raised by the Plaintiff.**

If permitted to take discovery, the Attorney General would seek information directly related to the issues and facts raised by the Plaintiff in its Complaint and summary judgment papers. Specifically, the Attorney General seeks to discover information related to the Plaintiff's contention that Section 5 imposes burdens on Shelby County that are no longer justified by current conditions. He would seek to know the basis for the County's assertion that Section 5 imposes substantial burdens on the County, in terms of money, time, and energy, as well as other information directly related to that issue. He would also seek information related to the current conditions in Shelby County, including facts related to voting practices and procedures, election history and participation, voting litigation, and official discrimination by the County and its subjurisdictions. The Attorney General would also seek information as to compliance with the Voting Rights Act, including the preclearance provisions of Section 5 by the County and its subjurisdictions. Dellheim Decl. ¶¶ 8-12, 16, 17 (Ex.1). As the Supreme Court has stated, "[t]he constitutional propriety of the Voting Rights Act of 1965 must be judged with reference to the historical experience which it reflects." *Katzenbach*, 383 U.S. at 308-309. Shelby County and its subjurisdictions have the great bulk of this information relating to its history and current conditions in the County within their exclusive control, and they should not be able to shield it from the Attorney General or this Court, by virtue of this premature Summary Judgment Motion.

The Attorney General notes that, under similar circumstances, this Court has permitted the parties the full benefit of discovery. In *Nw. Austin Mun. Utility Dist. No. One*, 573 F. Supp. 2d at 278-79, the plaintiff jurisdiction – a small municipal utility district in Texas – sought to

have Section 5 declared unconstitutional or, alternatively, to bailout under Section 4(a). This Court afforded the parties discovery directed towards facts underlying all of the claims there, including those solely related to the constitutional claims. In that case, the Court approved a schedule for discovery and summary judgment briefing that ultimately provided just under seven months to complete discovery and briefing on dispositive cross-motions. *See* Scheduling Orders dated December 1, 2006 and March 16, 2007 (attached as Exhibits 2 and 3, respectively). Shelby County, however, is a much larger jurisdiction than the municipal utility district in *Nw. Austin,* with a significantly more complex history relevant to the claims at issue here. For example, the municipal utility district in *Nw. Austin* had a population of just under 3,600 persons, covered only 707 acres, had only been in existence for 20 years, and had no subjurisdictions, while Shelby County is one of the largest counties in Alabama, with a current estimated population of some 192,000 persons, covers some 800 square miles, has been in existence for nearly two centuries, and has dozens of subjurisdictions located in whole or in part within the County. Dellheim Decl. ¶¶ 18, 19 (Ex. 1). Shelby County's history with regard to the Voting Rights Act is more extensive than the utility district in *Nw. Austin* as well. The utility district in *Nw. Austin* had no objections under Section 5, nor any voting-related litigation. Shelby County notes the existence of one objection interposed under Section 5 of the Voting Rights Act only two years ago to voting changes implemented by a subjurisdiction within the County, as well as a subsequent enforcement action by the Attorney General to remedy that violation. Ellis Decl. ¶ 10. The Attorney General's investigation thus far indicates there have been additional objections interposed under Section 5 in Shelby County as well as additional voting rights litigation there. Dellheim Decl. ¶ 20 (Ex. 1).

Accordingly, if the Attorney General's Rule 56(f) request is granted, the Attorney General anticipates seeking a discovery period lasting at least as long as that provided in *Nw. Austin*, and perhaps longer. Moreover, if this Court grants the Attorney General's Rule 56(f) request, the Attorney General would respectfully propose that the parties be given 10 days from the date of the Court's order to confer and propose a reasonable discovery and briefing schedule designed to present the issues to the Court with appropriate dispatch but with a complete record as to all issues raised. If this Court declines to grant the Attorney General's Rule 56(f) request, the Attorney General respectfully requests that the parties be given 10 days from the date of the Court's order to confer and propose a reasonable briefing schedule.

## IV.   CONCLUSION

For the foregoing reasons, the Attorney General respectfully requests that this Court deny the Plaintiff's Motion for Summary Judgment as premature. Alternatively, this Court should stay its consideration of the Plaintiff's motion and permit the Attorney General to take discovery and ascertain facts essential to oppose the Plaintiff's Summary Judgment Motion.

Date: June 22, 2010

                                      Respectfully submitted,

RONALD C. MACHEN, JR.          THOMAS E. PEREZ
United States Attorney             Assistant Attorney General
District of Columbia               Civil Rights Division

                                      */s/ Richard Dellheim*
                                 _____

                                  T. CHRISTIAN HERREN, JR.
                                  RICHARD DELLHEIM (lead counsel)
                                  ERNEST A. MCFARLAND
                                  JARED M. SLADE
                                  JUSTIN WEINSTEIN-TULL
                                  Civil Rights Division
                                  U.S. Department of Justice
                                  950 Pennsylvania Avenue, N.W.
                                  NWB- Room 7264
                                  Washington, D.C. 20530
                                  Telephone:    (202) 305-1734
                                  Facsimile:    (202) 307-3961