# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC H. HOLDER, JR., in his official capacity as )<br>ATTORNEY GENERAL OF THE UNITED )<br>STATES, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO. 1:10-0651<br>(JDB) |

## DECLARATION OF RICHARD DELLHEIM

I, Richard Dellheim, declare pursuant to 28 U.S.C. § 1746 that:

1. I am an attorney representing the Defendant, Attorney General of the United States of America ("Attorney General"), and have personal knowledge of the facts stated herein.

2. I submit this declaration in support of the Attorney General's opposition to the Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(f) as to why the Attorney General cannot at this time present by affidavit facts essential to justify the Attorney General's opposition to that Motion.

3. On April 27, 2010, the Plaintiff, Shelby County, Alabama ("Shelby County" or the "County"), filed a Complaint in this Court seeking a declaratory judgment that Sections 4(b) and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973b(b) and 1973c, violate the United States Constitution.

4. In its Complaint, the Plaintiff alleges facts to support its apparent claim that Section 5 compliance imposes substantial burdens on Shelby County. For instance, paragraph 32

1

of the Complaint alleges that "[i]n the last 10 years, Shelby County has filed for preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5[.]" Pl.'s Compl. ¶ 32. The Plaintiff offered no evidentiary basis to support those factual claims.

5. On June 8, 2010, before the Attorney General has filed a response to Plaintiff's Complaint, before the exchange of Rule 26 disclosures, and before the conduct of any discovery, the Plaintiff filed a Motion for Summary Judgment in this case. In its motion papers, the Plaintiff asserts numerous factual allegations relevant to the legal issues before this Court.

6. The Plaintiff's motion papers make clear that the Plaintiff seeks to establish that Section 5 compliance imposes substantial burdens on Shelby County that are not justified by current conditions. Indeed, the Plaintiff's memorandum states no less than four times that Section 5's "current burdens … must be justified by current needs." Pl.'s Mem. in Supp. of Mot. for Summ. J. at 5, 16, 20, 24 (quoting *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2513 (2009)).

7. In apparent support of its claim that Section 5 imposes substantial burdens on Shelby County, the Plaintiff's summary judgment papers reiterate the claim made in its Complaint that "in the last 10 years, Shelby County has filed for preclearance numerous times, expending significant taxpayer dollars, time, and energy to meet its obligations under Section 5." Pl.'s Statement of Mat'l Facts ¶ 7; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1.

8. The sole support for those factual contentions is the Declaration of Frank C. Ellis, Jr. Mr. Ellis's Declaration states, "[i]n the last 10 years, Shelby County has filed for preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its

obligations under Section 5 of the VRA[.]"  Declaration of Frank C. Ellis, Jr. ("Ellis Decl.") ¶ 7.  Mr. Ellis offers no evidence to support his factual assertions as to the alleged burdens of Section 5 compliance on Shelby County.  Nor does the Plaintiff offer any other evidence to establish the basis for the factual claims relevant to the issue of "current burdens."  The Attorney General has had no opportunity to discover the basis for the Plaintiff's and/or Mr. Ellis's assertions.  Thus, there is no way the Attorney General can determine the accuracy of Mr. Ellis's statements or determine what the County or Mr. Ellis means by adjectives such as "numerous" and "significant" or indistinct concepts such as "time" and "energy."  Nor does Plaintiff offer any other evidence to establish the basis for the material factual claims relevant to the issue of "current burdens" upon which it asks this Court to rely.  Without knowing the basis for the Plaintiff's assertions, the data or methodologies underlying them, or other facts related to the Plaintiff's assertions, the Attorney General cannot adequately respond to them.  Any information as to the costs, burdens, time, and energy expended by Shelby County to comply with Section 5 would be in Shelby County's sole possession.  Absent discovery, the Attorney General simply cannot challenge the Plaintiff's assertion of material facts related to the alleged burdens Section 5 imposes on Shelby County.

    9. Intrinsic to the Plaintiff's claim that current conditions in Shelby County demonstrate that Section 5's application is no longer appropriate is evidence of the County's history of official discrimination, past and current.  Plaintiff asserts minimal facts about the outlawing of tests and devices nationwide and the rates of persons registering and voting in Shelby County and Alabama in certain elections.  Pl.'s Statement of Mat'l Facts ¶ 3-5.  Yet, having raised the question of "current conditions," the Plaintiff's papers are basically silent on

this vital issue.  The history in Shelby County of voting discrimination and compliance with federal voting rights laws, past and current, relates directly to the Plaintiff's claim that Section 5 is no longer appropriate based on current needs.  Discovery is essential for the Attorney General to determine whether the history of Shelby County supports or undermines the Plaintiff's claim that Section 5 coverage is no longer warranted.  The great bulk of the information on the history of elections and voting in Shelby County and its subjurisdictions, as well as current conditions regarding elections and voting in the County, is within the exclusive control of the County and its subjurisdictions.  Discovery is necessary to gain access to that vital information.

10. Plaintiff asserts it is not eligible to bailout from Section 5 coverage.  Pl.'s Statement of Mat'l Facts ¶¶ 9-10; Ellis Decl. ¶¶ 9-10; Pl.'s Mem. in Supp. of Mot. for Summ. J. at 41 n.8.  The underlying premise of Plaintiff's constitutional claim is that but for a single objection in a subjurisdiction and a single instance by the County of failure to comply with Section 5's procedural requirements, it would be eligible to "bailout" under Section 4(a) of the Act from compliance with Section 5's preclearance requirement.  Ellis Decl. ¶¶ 9-10; Compl. ¶ 34.  The Plaintiff does not assert, and the Attorney General does not presently know, the degree to which Shelby County could meet or not meet each of the statutory bailout criteria under Section 4(a) of the Act.  Whether or not one or two bailout criteria might defeat bailout, as the Plaintiff claims, Ellis Decl. ¶ 9-10, it is relevant for the Attorney General to be allowed to discover the circumstances surrounding those bailout criteria and whether those are the only criteria that might keep Shelby County from bailing out or whether there are other areas of potential non-compliance.  Fact discovery may yield relevant information as to the degree of compliance with applicable bailout standards.

11. The Attorney General asserts that, even if true, at least one of the bases on which the Plaintiff claims it could not bailout would not necessarily preclude bailout by the County under Section 4(a). Ellis Decl. ¶ 9. The Attorney General has agreed to, and this Court has approved, consent decrees that have allowed jurisdictions to "bailout" where there have been instances of isolated non-compliance with Section 5. The Attorney General, after investigation, has ultimately consented to, and this Court has approved, every bailout application brought in this Court by political subdivisions since the amended bailout standard adopted by Congress in 1982 went into effect in 1984, including in the *Nw. Austin* case. Aside from the Supreme Court's decision in the *Nw. Austin* case on the threshold question of the kinds of jurisdictions eligible to seek bailout, there are no court decisions after 1984 interpreting the amended bailout standard in Section 4(a).

12. The Attorney General is unable to respond fully to the legal arguments and factual assertions made by the Plaintiff in its Complaint and motion papers because it has had no opportunity to discover the basis for the facts asserted by the Plaintiff and the declarant upon whom it relies for relief. The Attorney General does not have access to the information underlying critical facts asserted by Plaintiff. Without the ability to conduct discovery and determine the basis for the material facts asserted by the Plaintiff, the Attorney General cannot adequately respond to them.

13. The facts cited above are material to the claims made in the Plaintiff's Complaint and in the Motion for Summary Judgment because they relate in particular to the current conditions in Shelby County and the need for continued coverage of Shelby County by the special provisions of the Voting Rights Act, including Section 4(b) and Section 5.

14.     Moreover, without the ability to conduct discovery, the Attorney General cannot determine any other facts that have not been asserted by the Plaintiff but are nonetheless relevant to the alleged burdens on Shelby County of Section 5 compliance.  The discovery of such facts relates directly to the claims asserted and, more immediately, where genuine issues of material fact may exist.

15.     As a jurisdictional matter, Shelby County must show that it has suffered injury from the enforcement of Sections 4(b) and 5.  Constitutional standing requires that a party have suffered an actual or threatened injury, which may be fairly traced to the challenged action and which is "likely to be redressed by a favorable decision" of the court.  *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)) (internal quotation omitted).  These requirements – injury, causation, and redressability – are an "irreducible constitutional minimum," and the absence of any one of these elements defeats standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  It is Plaintiff's burden to establish each of the required elements.  *See id.* at 561.

16.     Without discovery, the Attorney General is unable to determine whether Plaintiff has, in fact, suffered injury in complying with Sections 4(b) and 5.  The Attorney General cannot rely on Plaintiff's vague, conclusory statement that it "expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5." Compl. ¶ 32.  To ensure that Plaintiff has standing to bring this action, and thus whether this Court has subject matter jurisdiction over the Plaintiff's claims, the Attorney General needs the opportunity to discover information relevant to this Court's jurisdiction.

17. If permitted to take discovery, the Attorney General would seek information directly related to the issues and facts raised by the Plaintiff in its Complaint and summary judgment papers. Specifically, the Attorney General would seek to discover the basis for the County's assertion that Section 5 imposes substantial costs on the County, in terms of money, time, and energy, as well as other information directly related to that issue. The Attorney General would also seek to discover information related to current conditions in Shelby County, including facts related to the voting practices and procedures, election history and participation, voting litigation, and official discrimination by the County and its subjurisdictions. The Attorney General would also seek information as to compliance with the Voting Rights Act, including the preclearance provisions of Section 5, by the County and its subjurisdictions. In addition, the Attorney General would also seek to discover information relating to Shelby County's assertion that it is not eligible for bailout under Section 4(a). Finally, the Attorney General would seek information relating to the basis for Shelby County's standing to bring suit.

18. The plaintiff in *Nw. Austin Mun. Utility Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221 (D.D.C. 2008) (three-judge court), the Northwest Austin Municipal Utility District, is no longer extant. However, while active, it had a population of just under 3,600 persons, covered 707 acres, had been in existence for 20 years at the time of the lawsuit, and had no subjurisdictions. The Attorney General had never interposed any objection to a voting change submitted by the district nor, prior to the district's suit, had there been any voting-related litigation with it.

19. Upon information and belief, according to data published by the United States Census Bureau, Shelby County, and other sources, Shelby County is one of the largest counties

in Alabama, with a current estimated population of approximately 192,000 persons, covers some 800 square miles, has been in existence for nearly two centuries, and has dozens of subjurisdictions located in whole or in part within the county.

20. The Attorney General's investigation thus far indicates objections interposed under Section 5 in Shelby County beyond the one acknowledged by the County in its summary judgment papers; that investigation also indicates additional voting rights litigation in the County.

I declare under penalty of perjury that the above is true and correct.

Dated: June 22, 2010
Washington, DC

*/s/ Richard Dellheim*
_____
Richard Dellheim

8