**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>　　　　　　　Plaintiff,<br><br><br>v.<br><br>ERIC H. HOLDER, JR.,<br>in his official capacity as<br>ATTORNEY GENERAL OF THE<br>UNITED STATES,<br><br>　　　　　　　Defendant. | Civil Action No. 1:10-cv-00651-JDB |

**PLAINTIFF'S REPLY IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shelby County ("Shelby County") respectfully submits this Reply in support of its Motion for Summary Judgment.  Shelby County respectfully requests that this Court deny the request for Rule 56(f) discovery submitted by Defendant Attorney General ("Attorney General") and require the Attorney General to submit his substantive opposition to Shelby County's Motion for Summary Judgment no more than thirty days after entry of an Order denying this discovery request.

**I.      PRELIMINARY STATEMENT**

When Congress reauthorized the Voting Rights Act ("VRA") in 2006, it reauthorized the preclearance obligation that requires so-called "covered" State and political jurisdictions to seek federal permission before implementing any voting changes.  In this lawsuit, Shelby County seeks a "declaratory judgment" that Sections 5 and 4(b) of the VRA, "which render Plaintiff

Shelby County a 'covered' jurisdiction and require Shelby County to obtain 'preclearance' for all voting changes, are *facially unconstitutional*."  Compl. ¶ 1 (emphasis added).  Shelby County has not sought "bailout" from coverage pursuant to Section 4(a) of the VRA, nor has it sought to have the application of the VRA to Shelby County declared unconstitutional because of facts relating to Shelby County alone.  Rather, Shelby County contends that the legislative record contains insufficient justification to require preclearance by any covered jurisdiction.  In Shelby County's view, "it is no longer constitutionally justifiable for Congress to arbitrarily impose on Shelby County *and other covered jurisdictions* disfavored treatment by forcing them to justify all voting changes to federal officials in Washington, DC for another twenty-five years without a legislative record showing that these covered jurisdictions are still engaged in the type of 'unremitting and ingenious defiance of the Constitution' that justified enactment of the VRA in 1965."  *Id.* ¶ 35 (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966)) (emphasis added).

On June 8, 2010, Shelby County moved for summary judgment on its facial challenge in a timely manner and in accordance with the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 56(c)(1)(A) ("[A] party may move for summary judgment *at any time*.") (emphasis added). Instead of addressing Shelby County's facial challenge on the merits, the Attorney General has sought to derail and delay resolution of this important constitutional question through discovery not directed at genuine issues of material fact.  *First*, no discovery is needed to establish Shelby County's standing to bring this facial challenge; the fact of coverage under Section 4(b) and the obligation to seek preclearance under Section 5, both of which the Attorney General concedes, alone are sufficient to establish Shelby County's constitutional injury.  *Second*, discovery as to Shelby County's history of elections and voting would not produce evidence material to whether

Sections 5 and 4(b) are facially constitutional.  That question turns exclusively on whether the legislative record on which Congress acted in 2006 adequately supports reauthorization of these statutory provisions.  *Third*, discovery as to whether there are reasons, additional to the undisputed reasons pleaded by Shelby County, why Shelby County is ineligible for bailout would likewise not be material.  Shelby County has not pursued bailout, it is not eligible for bailout, and this Court is not empowered to grant bailout.  Indeed, the Attorney General has not contested that Shelby County is statutorily ineligible for bailout.

In sum, the Attorney General has conceded that undisputed facts exist which establish Shelby County's standing and a "facial challenge . . . does not [otherwise] depend on the facts of a particular case."  *Gen. Elec. Co. v. U.S. Dep't. of Commerce*, 128 F.3d 767, 773 (D.C. Cir. 1997).  The only question before this Court on summary judgment is whether Sections 5 and 4(b) are facially unconstitutional based on the legislative record amassed by Congress in 2006.  The requested discovery will not affect resolution of this question.

## II.    STANDARD OF REVIEW

Shelby County is entitled to prompt adjudication of its summary judgment motion "as a matter of law" unless there is a "genuine issue of material fact" in dispute.  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is material only if it "might affect the outcome of the suit under the governing law."  *Id*.  Materiality "is only a criterion for categorizing factual disputes . . . not a criterion for evaluating the evidentiary underpinnings of those disputes."  *Id.*  "Unlike the issue of genuineness, materiality therefore does not consider the sufficiency of evidence supporting a fact but only a fact's legal relevance[.]"  *Winfield v. Bass*,  106 F.3d 525, 538 (4th Cir. 1997).  Accordingly, Rule 56(f) does not allow the Attorney General to use a discovery request to "block a motion for summary

judgment" for any reason; rather, he "must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998) (quotation marks omitted); *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52-53 (D.D.C. 2009) ("The party seeking discovery bears the burden of identifying the facts to be discovered that would create genuine issues of material fact and the reasons why the party cannot acquire those facts without additional discovery.").

In addition, "[a] Rule 56(f) motion for additional discovery is not designed to allow 'fishing expeditions.'" *Graham*, 608 F. Supp. 2d at 54. Thus, "if the discovery sought appears irrelevant to the issues to be adjudicated or if it is merely cumulative," the request for discovery should be denied. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2741 (3d ed. 1998). As at any stage of the proceeding, therefore, the scope of discovery is strictly limited to that which "is *relevant* to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). This Court, accordingly, has denied Rule 56(f) requests where the discovery sought would be immaterial. *See Williams v. Dodaro*, 576 F. Supp. 2d 72, 87 n.11 (D.D.C. 2008); *see also Citizens for Responsibility and Ethics in Wash. v. Leavitt*, 577 F. Supp. 2d 427, 434 (D.D.C. 2008); *Hunt v. D.C. Dep't. of Corrections*, 41 F. Supp. 2d 31, 38 (D.D.C. 1999).

## III.  ARGUMENT

This litigation is not in some "inchoate stage" at which a motion for summary judgment is somehow improper. *See* Mem. in Supp. of the Attorney General's Opp. to Pl.'s Mot. for Summ. J. at 6 ("AG Opp."). "[A] party may move for summary judgment *at any time*." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Nor is Shelby County's motion for summary judgment "premature," *see* AG Opp. at 1, for "there is no genuine issue as to any material fact" and Shelby County is "entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)(2). As explained

below, no additional information is material to Shelby County's facial challenge to the constitutionality of Sections 5 and 4(b) of the VRA. The Attorney General's request for discovery under Rule 56(f), accordingly, should be denied.

### A.  Discovery Into Shelby County's Standing Would Be Cumulative And Irrelevant.

The Attorney General seeks discovery to determine "whether Plaintiff even has standing to bring this action." AG Opp. at 11. But the Attorney General does not dispute that Shelby County is a covered jurisdiction that is subject to the preclearance obligations of the VRA. Ans. ¶ 29. The undisputed facts, as a result, establish that Shelby County has standing to seek relief from these obligations. The Attorney General's request for additional information about just how "substantial" the burden has been on Shelby County "in terms of money, time, and energy," *see* Dellheim Decl. ¶¶ 15-17, will lead to, at best, cumulative information. The Attorney General's request, accordingly, should be denied.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, No. 09-475, 2010 WL 2471057, at *8 (U.S. June 21, 2010). Shelby County easily meets this standard. It has filed this lawsuit to seek relief from the preclearance obligations imposed by Section 5 upon jurisdictions covered by Section 4(b) the VRA. Because a party has standing "to object to orders specifically directing it to take or refrain from taking action," *Horne v. Flores*, 129 S. Ct. 2579, 2592 (2009) (citation and quotation marks omitted), Shelby County has standing to challenge the constitutionality of provisions of the VRA which require it to either take action by seeking federal permission before changing any aspect of its voting process or to refrain from implementing any voting changes. The requirement that Shelby County ask federal authorities for permission to implement "*all*

changes to state election law—however innocuous"—is no small matter.  *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504, 2511 (2009) ("*Nw. Austin*"); *Giles v. Ashcroft*, 193 F. Supp. 2d 258, 260 (D.D.C. 2002) ("Section 5 is a severe process.").  Indeed, "[n]o function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county and municipal offices and the nature of their own machinery for filling local public offices."  *Oregon v. Mitchell*, 400 U.S. 112, 125 (1970) (Opinion of Black, J.); *see also United States v. Sheffield Bd. of Comm'rs*, 435 U.S. 110, 141 (1978) (Stevens, J., dissenting).

For good reason then, standing has not been a contested issue in *any* previous cases brought by covered jurisdictions to challenge the facial constitutionality of the VRA under the Fifteenth Amendment.  *See, e.g., Nw. Austin*, 129 S. Ct. 2504; *City of Rome v. United States*, 446 U.S. 156 (1980); *Katzenbach*, 383 U.S. 301.  In fact, in *Katzenbach*, standing was necessarily premised on the injury inflicted by VRA coverage, as the case was litigated before South Carolina was required to comply with the VRA's provisions.  *Katzenbach*, 383 U.S. at 307.  Yet, the Supreme Court—which took the extraordinary step of accepting discretionary original jurisdiction over the issue—never questioned that South Carolina had standing to challenge the VRA as "exceed[ing] the powers of Congress and encroach[ing] on an area reserved to the States by the Constitution."  *Id.* at 323; *see also Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").

Nor did the Attorney General indicate that the standing of a covered jurisdiction was in any way questionable in a memorandum that he recently filed in *Laroque v. Holder*.  *See* Motion to Dismiss, No. 10-0561 (D.D.C. June 14, 2010) ("AG *Laroque* MTD").  There, in arguing that

"voters, prospective candidates, and proponents of citizen referenda in the [covered jurisdiction]" do not have standing to challenge Section 5's constitutionality, the Attorney General argued that the covered jurisdiction was "the real party in interest here." *Id.* at 7, 16.  The Attorney General further represented that there would be "no hindrance to [the covered jurisdiction]'s own assertion of its legal rights" and, specifically, that there would be no "hindrance to [the covered jurisdiction]'s assertion of any proper constitutional claim concerning the application of Section 5." *Id.* at 21-22.  The Attorney General further wrote that "[the covered jurisdiction] could have asserted such [constitutional] claims in a declaratory judgment action to this Court." *Id.* at 22.

Remarkably, the Attorney General now asks for Rule 56(f) standing discovery in a case that presents the precise situation where he has conceded standing would lie on the undisputed facts, *i.e.*, where a covered jurisdiction has questioned the constitutionality of Section 5 in a declaratory judgment action in this Court.  The Attorney General should not be granted the opportunity to search for information that, even he has acknowledged, is immaterial to disputing standing.

The Attorney General's request for discovery into standing is even more indefensible given his concession that Shelby County, in the last 10 years, has borne actual costs from compliance with Section 5.  In particular, the Attorney General concedes that DOJ has interposed an objection to at least one voting change submitted for preclearance by a governmental unit within Shelby County, *see* Dellheim Decl. ¶ 20, and that Shelby County has sought preclearance of voting changes in the last ten years, *see* Ans. ¶ 32.  Moreover, Shelby County has had "at least one election delayed in order to ensure compliance with the preclearance obligations of Section 5 of the VRA," Declaration of Frank C. Ellis, Jr. ¶ 7 ("Ellis Decl."), a fact the Attorney General ignores in his request for discovery, *see* AG Opp. at 8.  Nor does the Attorney General dispute

Shelby County's reasonable expectation "that it will have to seek preclearance in the near future," especially because of "districting changes [that will be] triggered by the decennial census." Ellis Decl. ¶ 8. These undisputed facts establish that Shelby County is imminently likely to bear additional costs. How the Attorney General could question Shelby County's standing in this situation is unclear.

At bottom, Shelby County, which the Attorney General concedes is a covered jurisdiction, has indisputable standing to pursue this facial challenge. The Attorney General's desire to learn precisely just how much time, money, and effort have been expended by Shelby County in complying with Section 5 will not produce evidence that relates to genuine issues of material fact. Shelby County's coverage by and required compliance with the VRA is plainly sufficient to inflict a constitutional injury that gives Shelby County standing to pursue this challenge. The Attorney General is not entitled to sidetrack this litigation with discovery into matters that can only bolster Shelby County's standing.

**B.**      **Discovery About "Current Conditions" In Shelby County Is Immaterial To This Facial Challenge.**

Shelby County has chosen to bring a facial challenge to Sections 5 and 4(b) of the VRA. The difference "between 'as-applied' and 'facial' challenges is that the former ask only that the reviewing court declare the challenged statute or regulation unconstitutional on the facts of the particular case; the latter, in contrast, request that the court go beyond the facts before it to consider whether, given all of the challenged provision's potential applications, the legislation [is] constitutionally unacceptable 'on its face.'" *Sanjour v. EPA*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995). Thus, where the "plaintiffs' claim and the relief that would follow . . . reach[es] beyond the particular circumstances of these plaintiffs," *Doe v. Reed*, No. 09-559, 2010 WL 2518466, at *3 (U.S. June 24, 2010), the court need only rule on the facial challenge—it need not "rul[e] on

the validity of the statute as applied to [the plaintiff]," *United States v. Stevens*, 130 S. Ct. 1577, 1587 n.3 (2010) (quotation omitted).  Accordingly, "a facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself." *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 337 (D.D.C. 2005).

There is no genuine dispute as to whether this is a facial challenge.  In the very first paragraph of the Complaint, Shelby County asks for a declaratory judgment that Sections 5 and 4(b) of the VRA "are facially unconstitutional."  Compl. ¶ 1.  Nowhere in the Complaint does Shelby County even use the words "as applied."  Instead, Shelby County unambiguously crafted its Complaint to seek facial relief based on its assertion that "it is no longer constitutionally justifiable for Congress to arbitrarily impose on Shelby County *and other covered jurisdictions* disfavored treatment by forcing them to justify all voting changes to federal officials in Washington, DC for another twenty-five years without a legislative record showing that these covered jurisdictions are still engaged in the type of 'unremitting and ingenious defiance of the Constitution' that justified enactment of the VRA in 1965."  *Id.* ¶ 35 (quoting *Katzenbach*, 383 U.S. at 309).  Shelby County also made explicit in its memorandum in support of its summary judgment motion that it is bringing a "facial challenge."  Mem. of Points & Authorities in Supp. of Pl.'s Mot. for Summ. J. at 17 n.2 ("MSJ Br.").  Accordingly, the Attorney General's repeated claim that Shelby County "seek[s] to establish that, *as applied to Shelby County*, Section 5 imposes substantial burdens that are not justified by current conditions" is misleading.  Shelby County's legal position derives from the overall unconstitutionality of VRA coverage and preclearance rather than particularized reasons why coverage and preclearance, if otherwise constitutional, cannot constitutionally reach Shelby County.  AG Opp. at 7-8 (emphasis added).

In any event, it seems that the Attorney General has abandoned this claim, as he admits in his Answer that this challenge is a facial one. *See* Ans. ¶ 1.

Importantly, because this is a facial challenge, discovery would not produce material evidence; the Court's analysis must turn on "the Act, measured by its text" and the legislative record, rather than on the facts to be discovered relating to Shelby County. *See Gonzales v. Carhart*, 550 U.S. 124, 156 (2007); *Daskalea v. Wash. Humane Soc'y*, 577 F. Supp. 2d 82, 86 n.3 (D.D.C. 2008) ("[B]y definition, evaluating [a facial challenge] only requires consideration of the text of the Act."). Indeed, the Attorney General agrees. *See* Def.'s Memorandum in Opp. to Pl.'s Mot. for Summ. J. at 49-50*, Nw. Austin*, No. 06-cv-1384 (D.D.C. June 15, 2007) ("Def.'s *Nw. Austin*. Opp. Br.") ("Plaintiff's attack on Congress's authority under the Fourteenth and Fifteenth Amendments to enact Section 5 is a facial challenge to the statute, not an as-applied challenge. Where the subject of a federal statute asserts that Congress acted outside of its enumerated powers in enacting the statute, a court must determine whether the statute is valid on its face.").

To be sure, determining the facial constitutionality of Sections 5 and 4(b) of the VRA does require analyzing the significance of certain facts—but these are the facts contained within the legislative record amassed by Congress. In other words, a facial challenge to these provisions of the VRA turns on whether they are an "appropriate" exercise of Congress' enforcement authority under the Fifteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507, 517 (1997). And that question, in turn, depends on "whether *Congress* identified a history and pattern of unconstitutional" government action, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) (emphasis added), and whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted [by

*Congress*] to that end," *City of Boerne*, 521 U.S. at 520.   The focus of the entire Fifteenth Amendment analysis is on whether Congress developed a sufficient "legislative record" to support the constitutionality of the statutory provisions.   *See, e.g., Garrett*, 531 U.S. at 368; *City of Boerne*, 521 U.S. at 532.   "Only in cases where Congress can point to evidence in the legislative record that establishes a pattern of unconstitutional discrimination involving the particular practices proscribed by the remedial scheme at issue has the Supreme Court upheld legislation as within Congress's enforcement power under the Reconstruction Amendments." *Hayden v. Pataki*, 449 F.3d 305, 331 (2d Cir. 2006) (Walker, J., concurring).

Last Term, the Supreme Court described this standard by writing that "the [VRA] imposes current burdens and must be justified by current needs." *Nw. Austin*, 129 S. Ct. at 2512. In other words, the Supreme Court followed its long line of precedent in again recognizing that Congress had a responsibility in 2006, when it reauthorized Sections 5 and 4(b) of the VRA, to amass a legislative record that supported reauthorizing the continuing burdens of the VRA on covered jurisdictions.   The Supreme Court specified that Congress could not base the constitutionality of the 2006 Act on the "[p]ast success" of the Act or on the "conditions that [the Court] relied upon in upholding this statutory scheme in *Katzenbach* and *City of Rome*." *Id.* at 2511.  Rather, Congress was required to assemble a record of then-current practices to justify the acknowledged burdens of its legislative scheme.

The three-judge panel in *Northwest Austin* recognized this standard.   It framed the question, with respect to the facial challenge before it, as whether "the 2006 legislative record contain[s] sufficient evidence of contemporary discrimination in voting to justify Congress's decision to subject covered jurisdictions to section 5 preclearance for another twenty-five years." *Nw. Austin Mun. Util. Dist. No. One v. Mukasey,* 573 F. Supp. 2d 221, 265 (D.D.C. 2008).  And

11

it explicitly limited its review to "the actual evidence Congress considered." *Id.* at 247. At that time, the Attorney General agreed with this standard. He specifically asked the three-judge panel to "assess the continuing validity of Section 5's preclearance mechanism in light of the record of voting rights violations Congress amassed in support of the 2006 reauthorization." *See* Memorandum in Support of Def.'s Mot. for Summ. J. at 12, *Nw. Austin*, No. 06-cv-1384 (D.D.C. May 15, 2007) ("Def.'s *Nw. Austin* Summ. J. Br."). As the Attorney General explained in that case, "[i]n keeping with the Supreme Court's approach in *City of Rome*, this Court must determine whether the ongoing record of voting discrimination Congress amassed in 2006 was sufficient to justify Congress's decision to extend the life of Section 5." Def.'s *Nw. Austin*. Opp. Br. at 14.

In seeking case-specific discovery in a facial challenge, the Attorney General misreads the Supreme Court's statement in *Northwest Austin* that "current burdens . . . must be justified by current needs." *See* Dellheim Decl. ¶¶ 6-9 (quoting *Nw. Austin*, 129 S. Ct. at 2513). The Supreme Court did not, with one sentence, alter the entirety of its facial challenge jurisprudence. The legislative record developed by Congress during enactment of the 2006 reauthorization must be the source of the "current needs." Under *Katzenbach*, *City of Rome*, and, most recently, *Northwest Austin*, unless the 2006 legislative record establishes that the burdens of Section 5 are justified by current needs, the 2006 extension is facially unconstitutional.

The Attorney General's reliance on *Northwest Austin* as support for "the full benefit of discovery" from this Court is also equally flawed. *See* AG Opp. at 12-13. This case does not present "similar circumstances" to those in *Northwest Austin* because the three-judge panel in that litigation considered a request for bailout, a facial challenge, and "two arguments . . . that could be construed as reflecting an as-applied challenge." *See Nw. Austin*, 573 F. Supp. 2d at

235. Here, there is solely a facial challenge. Thus, nothing has changed the inquiry from that pressed by the Attorney General in *Northwest Austin* for considering the facial challenge claim in that suit. This Court must "determine whether the ongoing record of voting discrimination Congress amassed in 2006 was sufficient to justify Congress's decision to extend the life of Section 5." Def.'s *Nw. Austin*. Opp. Br. at 14. The Attorney General cannot bolster the legislative record with information garnered in discovery. Nor can he rely on *Northwest Austin*, which included claims specific to that jurisdiction, in order to open the record to vast discovery in this case, which is limited to a facial challenge. Such evidence was immaterial to the facial challenge in *Northwest Austin*. It remains immaterial here.[1] The legislative record on which the Court must rely to adjudicate this challenge is closed.[2] The Attorney General's request for discovery into evidence extrinsic to the legislative record therefore should be denied.

In sum, the Attorney General's avowed interest in litigating the factual history and record of Shelby County in this case is simply not material to the Court's disposition of the facial

---

[1]    The Attorney General's repeated assertion that Shelby County has admitted that facts about the voting conditions within Shelby County and the burdens borne by Shelby County in complying with the VRA are "material to [its] claim" because it "specifically included them in its Statement of Material Facts" likewise misses the mark. *See* AG Opp. at 8. As explained above, Shelby County raised this point merely to buttress its already strong claim for standing. Shelby County has a responsibility to establish its standing at every stage of litigation. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Abigail Alliance for Better Access v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006). Shelby County's mere pleading of party-specific facts to support its claim of standing neither transforms its facial challenge into an as-applied challenge nor opens the door to widespread and irrelevant discovery into every facet of Shelby County's voting history.

[2]    The Attorney General's request for information "related to the current conditions in Shelby County, including facts related to voting practices and procedures, election history and participation, voting litigation, and official discrimination by the County and its subjurisdictions," Dellheim Decl. ¶ 17, is additionally improper because nothing specific to Shelby County could shed light on whether the VRA is constitutional nationwide. Indeed, if discovery is warranted with respect to Shelby County, then it would not only be warranted with respect to every other covered jurisdiction, but it also would be warranted for all non-covered jurisdictions in order to determine whether Section 4(b) is underinclusive.

constitutional challenge.  Thus, the Attorney General's accusation that Shelby County has sought "nullification of Sections 4(b) and 5 without a full record on all relevant issues" is baseless.  AG Opp. at 6.  The "full record" required to determine their constitutionality was created and finalized by Congress prior to the VRA's enactment in 2006.  The Attorney General's request to seek discovery irrelevant to the sole question before the Court should be denied.

C.   **Discovery Into Shelby County's Eligibility For Bailout Is Unwarranted Because This Issue Is Neither Material Nor Disputed.**

The Attorney General argues that Rule 56(f) discovery is necessary to determine "the degree of [Shelby County's] compliance with applicable bailout standards."  AG Opp. at 10. The Attorney General seeks to discover irrelevant information.  Shelby County is not seeking bailout, and indisputably cannot seek bailout, as this Court lacks the authority to adjudicate a bailout claim.  *See* 42 U.S.C. § 1973b(a)(5); *Laroque v. Holder*, No. 10-cv-561, at 2 n.2 (May 12, 2010) (order denying application for three-judge panel) ("Section 4 of the Voting Rights Act . . . requires a three-judge panel to hear actions by covered jurisdictions seeking to bail out from Section 5's preclearance requirement.").

Even assuming the issue of Shelby County's eligibility for bailout were relevant to the merits of Shelby County's facial constitutional claims, which it is not, the issue is not in dispute. As noted in its Complaint, Shelby County does not satisfy the statutory criteria for bailout outlined in Section 4(a)(1)(D) and (E).  *See* Compl. ¶ 34.  The Attorney General does not contest Shelby County's noncompliance with these bailout criteria.  To the contrary, the Attorney General affirmatively states that there are additional reasons why Shelby County is ineligible for bailout.  *See* AG Opp. at 13 ("The Attorney General's investigation thus far indicates there have been additional objections interposed under Section 5 in Shelby County as well as additional voting rights litigation there." (citing Dellheim Decl. ¶ 20)).  Yet, the Attorney General seeks to

obtain information he concedes would be cumulative, requesting discovery of information about "the circumstances surrounding those bailout criteria and whether those are the only criteria that might keep Shelby County from bailing out, or whether there are other areas of potential non-compliance."  AG Opp. at 10.  Such piling on is not an appropriate use of Rule 56(f).  10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2741 ("[I]f the discovery sought . . . is merely cumulative, summary judgment will not be delayed.").  Accordingly, the Attorney General's request for 56(f) discovery regarding Shelby County's eligibility for bailout relates to an issue that is neither material nor in dispute.

## IV.   CONCLUSION

For the foregoing reasons, Shelby County respectfully requests that this Court deny the Attorney General's request for discovery pursuant to Federal Rule of Civil Procedure 56(f) and require the Attorney General to submit a substantive opposition to Shelby County's Motion for Summary Judgment no more than thirty (30) days after entry of an Order denying the Rule 56(f) request for discovery.

Dated:  July 1, 2010                    Respectfully submitted,


                                        /s/ William S. Consovoy
                                        _____
                                        Bert W. Rein (D.C. Bar No. 067215)
                                        William S. Consovoy* (D.C. Bar No. 493423)
                                        Thomas R. McCarthy (D.C. Bar No. 489651)
                                        Brendan J. Morrissey (D.C. Bar No. 973809)
                                        WILEY REIN LLP
                                        1776 K Street, NW
                                        Washington, DC  20006
                                        Tel.: (202) 719-7000
                                        Fax: (202) 719-7049

                                        Frank C. Ellis, Jr.
                                        WALLACE, ELLIS, FOWLER & HEAD
                                        113 North Main Street
                                        Columbiana, AL  35051
                                        Tel.: (205) 669-6783
                                        Fax: (205) 669-4932

                                        * *Counsel of Record*