**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>*Plaintiff*,<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States of America<br><br>*Defendant*,<br><br>EARL CUNNINGHAM, HARRY JONES, ALBERT JONES, EARNEST MONTGOMERY, ANTHONY VINES and WILLIAM WALKER,<br><br>*Defendant-Intervenors*,<br><br>BOBBY PIERSON, WILLIE GOLDSMITH SR., KENNETH DUKES, MARY PAXTON-LEE, and ALABAMA STATE CONFERENCE OF THE NAACP,<br><br>*Defendant-Intervenors*,<br><br>and<br><br>BOBBY LEE HARRIS,<br><br>*Defendant-Intervenor.* | Civil Action No. 1:10-CV-651 (JDB) |

**CONSOLIDATED MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the Attorney General of the United States, submitted his Opposition to Plaintiff's Motion for Summary Judgment filed by Plaintiff Shelby County on June 22, 2010. Defendant-Intervenors Earl Cunningham, Harry Jones, Albert Jones, Earnest Montgomery, Anthony Vines and William Walker (the "Cunningham Intervenors"); Bobby Pierson, Willie Goldsmith Sr., Kenneth Dukes, Mary Paxton-Lee, and Alabama State Conference of the NAACP (the "Pierson Intervenors"); and Defendant-Intervenor Bobby Lee Harris (collectively, "Defendant-Intervenors"), by their undersigned counsel, adopt the arguments set forth by the Defendant in his brief and respectfully submit this separate statement of points and authorities in opposition to Plaintiff's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Plaintiff Shelby County, Alabama ("Plaintiff" or "Shelby County"), a political subdivision of the State of Alabama, filed this action on April 27, 2010, seeking to challenge the constitutionality of both the Section 5 preclearance provision and the Section 4(b) scope provision of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 ("VRA"). Defendant's Answer was due on June 28, 2010, and was filed on that date. Nearly three weeks beforehand, however, on June 8, 2010, Plaintiff filed a Motion for Summary Judgment seeking a permanent injunction that would enjoin Defendant's continued enforcement of these key provisions of the VRA.

Plaintiff's pre-discovery, pre-answer motion for summary judgment should be denied as premature. Passing on the constitutionality of any federal statute – let alone a key provision of a cornerstone law such as the VRA – is among the gravest duties of a court. This court should not grant summary judgment before affording Defendant-Intervenors a fair opportunity for discovery on questions of fact that are, by Plaintiff's own admission, *material* to its claim. Indeed, merely by

2

including several factual assertions about the purported burdens imposed by Section 5 in its statement of material facts, *see* Pl.'s Statement of Mat. Facts ¶ 7, Plaintiff asserts that the veracity of these assertions "might affect the outcome of the suit under the governing law."  Pl.'s Reply Br. in Supp. of Mot. for Summ. J. at 3 ("Pl.'s Reply") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

## ARGUMENT

### I.     Plaintiff's Motion for Summary Judgment Should Be Denied as Premature, as Discovery Is Frequently Permitted in Litigation Involving "Facial" Challenges

#### A.     Summary Judgment is Only Appropriate After Adequate Time for Discovery

"Summary judgment is appropriate if 'there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"  *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)).  "'[T]he party moving for summary judgment . . . bears the initial burden of identifying evidence that demonstrates the absence of any genuine issue of material fact.'"  *Miller v. Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010) (quoting *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir.1999)).  In adjudicating a motion for summary judgment, "all inferences must be viewed in a light most favorable to the non-moving party." *Chambers v. U.S. Dep't. of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

Because a party moving for summary judgment must demonstrate the absence of *any* issue of material fact, a court should only grant summary judgment after the parties have been given an adequate opportunity for discovery.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (observing that summary judgment is appropriate only "after adequate time for discovery"); *Anderson*, 477 U.S. at 250 n.5, 257 (noting that summary judgment should be refused "where the nonmoving party has not had the opportunity to discover information that is essential to his

opposition," and that the nonmoving party should have "a full opportunity to conduct discovery");

*Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir.1997) (summary judgment

"ordinarily 'is proper only after the plaintiff has been given adequate time for discovery'") (*quoting*

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir.1988)); *Martin v. Malhoyt*,

830 F.2d 237, 256 (D.C. Cir. 1987) ("a reasonable opportunity to complete discovery before

grappling with a summary judgment motion is the norm").

Under Federal Rule of Civil Procedure 56(f), a court "may deny a motion for summary

judgment or order a continuance to permit discovery if the party opposing the motion adequately

explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."

*Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir.1989);

*see also Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1278

n.6 (D.C. Cir. 1983); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1175 (D.C.

Cir.1981); *Hudert v. Alion Sci. & Tech. Corp.*, 429 F. Supp. 2d 99 (D.D.C. 2006); Fed. R. Civ. P.

56(f).  *But cf. First Chicago Int'l*, 836 F.2d at 1380 (holding that filing an affidavit is not essential to

preserve Rule 56(f) contention as long as the district court was alerted to the need for further

discovery).[1] Thus, under Rule 56(f), the party opposing summary judgment "need not even present

---

[1] Courts in this district have held that a party seeking the protection of Rule 56(f) need not itself
submit an affidavit.  Multiple cases have entertained motions under Rule 56(f) based on a statement
from counsel alone.  *See, e.g.*, *McCready v. Nicholson*, 465 F.3d 1, 6 (D.C. Cir. 2006) (ordering
discovery where "Plaintiffs' counsel filed an affidavit identifying several issues needing
discovery"); *Khan v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) ("the Khans
filed two Rule 56(f) declarations by their counsel"); *Klayman v. Judicial Watch, Inc.*, No. 06-670,
2007 WL 1034937, at *6 (D.D.C. April 3, 2007) (mem.) ("In support of his Opposition, Klayman
proffers the affidavit of his counsel pursuant to Rule 56(f)"); *Barry v. U.S. Capitol Guide Bd.*, No.
04-0168, 2005 WL 1026703, at *3 ("In support of his motion, the plaintiff included the affidavit of
[counsel] R. Scott Oswald, Esq.").  In any event, the technical requirements of Rule 56(f) are not
stringently enforced.  *See Jackson v. Culinary Sch. of Wash.*, 788 F. Supp. 1233, 1264 n.32 (D.D.C.

4

the proof creating the minimal doubt on the issue of fact which entitles him to a full trial; it is enough if he shows the circumstances which hamstring him in presenting the proof by affidavit in opposition to the motion."  47 A.L.R. Fed. 206 § 2[b].

### B.   Courts Routinely Provide Time for Discovery in Cases Challenging the Constitutionality of Federal Statutes

That this case involves a purported "facial" challenge to Sections 4(b) and 5 of the VRA, *see* Pl.'s Reply at 9, does not obviate the need for discovery.  As an initial matter, Defendant-Intervenors do not concede that this action should be construed as a facial challenge.  Merely characterizing a challenge as "facial" does not make it so.  *See, e.g.*, *Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010) ("[t]he label is not what matters"); *cf. Citizens United v. Fed. Elections Comm'n*, 130 S. Ct. 876, 893 (2010) ("the distinction between facial and as-applied challenges is not so well-defined that it has some automatic affect or that it must always control the pleadings and disposition in every case involving a constitutional challenge").  Indeed, in the last case involving a constitutional challenge to Section 5, a three-judge court of this district determined that, even while "treat[ing] the [the plaintiff's] challenge as facial," consideration of as-applied arguments was also appropriate.  *Nw. Austin Mun. Util. Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221, 235 (D.D.C. 2008).  Any decision by this court prohibiting discovery would prejudice Defendant-Intervenors in the event that Plaintiff's claims are subsequently construed as an as-applied challenge.

Moreover, contrary to Plaintiff's apparent underlying assumption, that a constitutional challenge is facial does not mean that discovery about concrete facts concerning the statute's application is irrelevant.  Rather, the statute's valid application to a particular set of circumstances

---

1992) ("[T]he Court has wide flexibility in determining the appropriate course of action in the event a party does not adhere to the technical requirements of Fed. R. Civ. P. 56(f).").

may be sufficient for a court to reject a facial challenge. *See, e.g.*, *Tennessee v. Lane*, 540 U.S. 509, 531 & n.19 (2004) (citing *United States v. Raines*, 362 U.S. 17, 26 (1960)); *see generally Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (noting that, while members of the Supreme Court have disagreed about the precise test for analyzing facial challenges, "all agree that a facial challenge must fail where the statute has a plainly legitimate sweep") (citation and internal quotations omitted).

In any event, the very cases relied on by Plaintiff support the need for discovery. Plaintiff relies upon the congruence and proportionality analysis set forth in *City of Boerne v. Flores*, 521 U.S. 507 (1997), *see, e.g.*, Compl. ¶ 38d, in which the Supreme Court considered a facial challenge to the Religious Freedom Restoration Act. Plaintiff fails to note, however, that in *Boerne* itself and in a series of its progeny later reviewed by the Supreme Court, the district courts provided time for extensive discovery. *See, e.g.*, *City of Boerne v. Flores*, No. 94-0421 (W.D. Tex) (Dkt. No. 10 ordering a 3-month period for discovery; 6 months elapsed between filing of the complaint and filing of a motion for summary judgment); *Kimel v. Fla. Bd. of Regents*, No. 95-40194-MP (N.D. Fla.) (Dkt. No.10 ordering a discovery period of 4 months; Dkt. No. 22 extending discovery period for approximately 3 months and setting number of interrogatories and requests for admission at 250; Dkt. Nos. 36 and 41 ordering depositions; Dkt. No. 111 resetting discovery deadline for 5 weeks); *Garrett v. Bd. of Trustees of the Univ. of Ala.*, Nos. 97-0092, 97-2179 (N.D. Ala.) (Dkt. No. 13 ordering a 9-month period for discovery; Dkt. No. 43 ordering defendants to produce documents); *Tennessee v. Lane*, No. 9800731 (M.D. Tenn.) (Dkt. Nos. 111 and 124 ordering a 6-month period for discovery); *Goodman v. Ray* (*United States v. Georgia*), No. 99-00001 (S.D. Ga.) (Dkt. No. 242 ordering a 6-month period for discovery). In none of those cases did the Supreme Court find or even

6

suggest that the district court had erred by permitting discovery.[2]

Courts have similarly ordered discovery in facial challenges to other voting- and elections-related laws. *See, e.g., Crawford v. Marion County Election Bd.*, 553 U.S. 181, 187-88 (2008) (describing district court's summary judgment decision, after discovery, rejecting facial challenge to state voter identification requirement); *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 176, 206-07 (D.D.C 2003) (agreeing that, "even in the context of a facial challenge" to campaign finance laws, "wide ranging" discovery was necessary (citing *Turner Broad. Sys. v. FCC,* 512 U.S. 622, 664-68 (1994) (remanding to "permit the parties to develop a more thorough factual record"))), *aff'd in part, rev'd in part*, 540 U.S. 93 (2003).

Recently, in *Georgia v. Holder*, No. 10-cv-01602-ESH-HHK (D.D.C.), a three-judge panel of this Court set a *separate* discovery period for the constitutional claim in an action bringing both a preclearance claim and, in the alternative, a constitutional challenge to Section 5. *See* Dkt. No. 10. Moreover, in two previous cases involving constitutional challenges to Section 5, which Plaintiff cites to oppose discovery (*see* Pl.'s Reply at 11-12), courts in this district *permitted* discovery.[3] *See Nw. Austin Mun. Util. Dist. No. One*, 573 F. Supp. 2d at 230, 235 ("treat[ing] the District's challenge as facial" in a mixed bailout / constitutional challenge, but allowing "extensive discovery" prior to cross-motions for summary judgment), *rev'd in part*, 129 S. Ct. 1695 (2009); *City of Rome v. United States*, 450 F. Supp. 378, 384 (D.D.C. 1978) (observing, in an action seeking preclearance or, in the alternative, a judgment declaring Section 5 unconstitutional, that "summary judgment motions would be premature until all discovery has been completed").

_____

[2] *See City of Boerne*, 521 U.S. 507; *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2003); *Lane*, 541 U.S. 519; *United States v. Georgia*, 546 U.S. 151 (2006).
[3] Indeed, these cases involved both statutory and constitutional claims, and this Court did not impose

Nothing about this action makes discovery any less appropriate than it was in any of the cases cited above.  Indeed, where, as here, a constitutional challenge occurs not simply post-enforcement, but involves the reauthorization of a highly successful prophylactic statute, the Court should be particularly sensitive to the need for discovery to test the veracity of Plaintiff's allegations.  Plaintiff does not contend that Section 5 is beyond Congress' power in an absolute sense, and Plaintiff concedes that Section 5 was in fact justified in the past.  Rather, Plaintiff argues that conditions have changed so dramatically that this Court must substitute its judgment for that of Congress and find that Congress now lacks power under the Fourteenth and Fifteenth Amendments to reauthorize Section 5.  Accordingly, the Court should be open to–and should not foreclose the development of–evidence concerning conditions in Shelby County, the alleged burdens associated with compliance with Section 5, as well as evidence that is reasonably calculated to show the prospect of future discrimination in Shelby County, if not in other jurisdictions as well.

## C.   Pre-Discovery Summary Judgment Is Inappropriate in this Constitutional Challenge

Courts routinely reject motions for summary judgment where, as here, there has been no opportunity for discovery.  *See Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 29 (D.D.C. 2007) (observing that, "as a general rule, summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery.") (internal citations and quotation marks omitted); *Loughlin v. United States*, 230 F. Supp. 2d 26, 51 (D.D.C. 2002) (denying summary judgment where non-moving party had no opportunity for discovery).  "Courts have noted that pre-discovery summary judgment motions are premature and should only be used for exceptional circumstances."  *Barry* , 2005 WL 1026703 at *4. Only when the pleadings raise no issues of

---

any subject-matter restrictions on the scope of discovery.

material fact or when the opposing party has unduly delayed discovery will such "exceptional circumstances" exist.  *See Brill v. Lante Corp.*, 119 F.3d 1266, 1275 (7th Cir. 1997); *Patton v. Gen. Signal Corp.*, 984 F. Supp. 666, 669 (W.D.N.Y 1997).

No such "exceptional circumstances" are present here.  Clearly, this case is in its infancy, and the pleadings already raise a host of factual issues.  The Complaint was filed on April 27, 2010.  The Government's Answer was due by June 28, 2010, and was filed on that date.  But nearly three weeks before the Answer was due, and before the Court had ruled on motions to intervene, Plaintiff filed its motion for summary judgment, in which it introduced several factual assertions that are material to its claims.  It is unusual to file a motion for summary judgment before discovery has been completed, let alone even *commenced*, to say nothing of filing a motion before a defendant has even lodged an answer.  For these reasons, the court should reject this motion as premature.  *See First American Bank, N. A. v. United Equity Corp.*, 89 F.R.D. 81, 87 (D.D.C. 1981) ("In view of the fact that defendants have yet to file answers to the complaint or oppositions of a substantive nature to the motion for summary judgment, a decision at this time could overlook material issues of fact which might have been raised.").

Moreover, "[i]t is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States."  *Nicol v. Ames*, 173 U.S. 509, 514 (1899).  The Voting Rights Act is one of the most significant pieces of legislation of the past half-century.  *See, e.g.*, *Nw Austin Mun. Utility Dist. No. One v. Holder*, 129 S. Ct. 2504, 2511 (2009) ("The historic accomplishments of the Voting Rights Act are undeniable."); *see id.* at 2513 ("The Fifteenth Amendment empowers 'Congress,' not the Court, to determine in the first instance what legislation is needed to enforce it.  Congress amassed a sizable record in support of its decision to extend the preclearance requirements, a record the District Court determined 'document[ed]

contemporary racial discrimination in covered states.'")(quoting *Nw. Austin Mun. Utility Dist. No. One*, 573 F. Supp. 2d at 265).  Ensuring adequate development of the evidentiary record is all the more important given the Supreme Court's recent admonitions that courts should exercise caution in entertaining facial challenges on the basis of an incomplete record.  *See, e.g., Wash. State Grange*, 552 U.S. at 450 (*"*Facial challenges are disfavored for several reasons." ); *id* at 449-50 ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."); *Sabri v. United States,* 541 U.S. 600, 608-09 (2004) ("Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular . . . . Facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually bare-bones records.") (quoting *Raines,* 362 U.S. at 22); *cf. Crawford*, 553 U.S. at 200, 202 (rejecting facial challenge "on the basis of the record that has been made in this litigation," and observing that, where plaintiffs "have advanced a broad attack on the constitutionality of [a statute] seeking relief that would invalidate the statute in all its applications, they bear a heavy burden of persuasion.")

        In any litigation, especially a case involving the constitutionality of a federal statute, "summary judgment is a drastic remedy."  *Greenberg v. Food and Drug Admin*., 803 F.2d 1213, 1216 (D.C. Cir. 1986).  There are no exceptional circumstances in this case warranting summary judgment prior to discovery, and the fact that Plaintiff characterizes its challenge as "facial" does not relieve the parties of the duty to develop the record.  This is particularly so where Plaintiff's allegations blur the line between a facial and an as-applied challenge.  *See Nw. Austin*, 573 F. Supp. 2d at 235.  Plaintiff has not set forth any justification that would warrant a departure from the long and consistent practice of granting 56(f) motions following the filing of a pre-discovery motion for

summary judgment, and this court should therefore deny the motion as a matter of course.

## II.   Defendant-Intervenors Cannot Adequately Oppose Plaintiff's Motion for Summary Judgment Without an Adequate Opportunity for Discovery on Issues that Are Material to Plaintiff's Claim

Defendant-Intervenors' ability to oppose Plaintiff's motion for summary judgment on the merits could be compromised unless they are given an adequate opportunity for discovery.  Plaintiff, in its complaint and in its motion, conclusorily asserts numerous facts that are, *by its own admission*, material to its claim, and therefore "might affect the outcome of the suit," which merits discovery under Rule 56(f).  Pl.'s Reply at 3 (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted).  Defendant-Intervenors must be granted a fair opportunity to test the veracity of these allegations through discovery.  If permitted, Defendant-Intervenors intend to seek discovery on matters including, but not limited to, the extent of the purported "burdens" imposed by Section 5, and "conditions" with respect to racial discrimination and voting.

The nature of these alleged "burdens" is directly relevant to the substance of Plaintiff's constitutional claim.  In support of its position that Section 5 exceeds Congressional enforcement authority, Plaintiff repeatedly invokes the Supreme Court's recent statement in *Nw Mun. Util. Dist. No. One*, 129 S. Ct. at 2512, that Section 5's "burdens . . . must be justified by current needs."  *See* Pl.'s Mem. in Supp. of Summ. J. at 5, 16, 20, 24.  Plaintiff alleges that, as a result of being subject to Section 5, it has endured the following "burdens": it has "filed for preclearance numerous times," "expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5," and "had at least one election delayed in order to ensure compliance with the preclearance obligation of Section 5."  Pl.'s Statement of Mat. Facts ¶ 7; Compl. ¶ 32.

Plaintiff, however, offers only generalized and conclusory characterizations and fails to set

forth any specific description of the alleged "burdens" imposed.[4]  Plaintiff does not specify the number of times it or its subdivisions have filed for preclearance, or even attempt to quantify the amount of "dollars," "time," or "energy" it has expended in seeking preclearance, much less describe the nature of those "effort[s]" made to achieve Section 5 compliance.  Nor does Plaintiff even specify the precise number, nature, and circumstances of elections that have allegedly been "delayed" as a result of compliance with its Section 5 obligations.  Without discovery, Defendant-Intervenors would be unable to test the veracity of Plaintiff's claims or adequately defend against the claims set forth in the Complaint.  *See* Compl. ¶¶ 31-39.

Plaintiff further states that it "reasonably anticipates that it will have to regularly seek preclearance in the near future," but it does explain when in the "future" it expects to seek preclearance, does not state what it means by "regularly," and does not attempt to quantify the "burdens" that such "regular[]" attempts to seek preclearance will entail.  This information is within Plaintiff's exclusive custody, rendering discovery the only opportunity for Defendant-Intervenors to test Plaintiff's assertions.  Without an opportunity for discovery to understand the precise nature of these assertions and Plaintiff's basis for making them, Defendant-Intervenors cannot adequately oppose this motion for summary judgment.

It is equally unclear at this nascent stage of litigation what the "conditions" are that, according to Plaintiff, no longer justify the application of Section 5.  Plaintiff's claim is largely contingent upon the general notion that "[t]hings have changed in the South." Pl.'s Mem. in Support of Summ. J. at 4 (quoting *Nw Austin*, 129 S. Ct. at 2511).  But Plaintiff's filings in this case –

---

[4] Indeed, some portion of the expenses Plaintiff has allegedly incurred appear to have resulted from Plaintiff's own noncompliance with the Section 5 preclearance requirement by failing, for example, to obtain preclearance before implementing new voting changes.  Any alleged expense or burden incurred as result of Plaintiff's noncompliance should be separately and specifically identified for

including its Complaint, its Statement of Material Facts, and its Memorandum in Support of its Motion for Summary Judgment – do not address what the "conditions" actually are "in the South." Indeed, Plaintiff's Complaint is largely devoted only to "*Shelby County's* Experience Under the Voting Rights Act," *see* Compl. ¶¶ 28-36 (emphasis added), but Plaintiff seeks to invalidate Sections 4(b) and 5 of the VRA, which currently apply to 16 different states in whole or in part. The material facts in this case arise from a range of jurisdictions that is necessarily coextensive in scope with the coverage of Sections 4(b) and 5. Indeed, Plaintiff has admitted as much. *See* Pl.'s Reply at 13 n.2. But the Complaint is largely silent about the experience of other jurisdictions covered by the challenged provisions, a stunning omission given the broad scope of relief that Plaintiff seeks.

And yet, despite the fact that Plaintiff's Complaint devotes over a dozen paragraphs to its own "Experience Under the Voting Rights Act," the Complaint fails to offer specific details or information regarding the "conditions" in Shelby County itself – such as the County's record of voting discrimination, its history of election-related litigation, any evidence concerning voting patterns and racial polarization in the County, and participation rates (such as registration and turnout rates) – which Plaintiff alleges could demonstrate that Section 5 is no longer necessary. Much of this information is under the exclusive control of Plaintiff, and cannot be obtained without discovery. Although Plaintiff alleges that it attempted to have "unambiguously crafted its complaint to seek facial relief," Pl.'s Reply at 9, Plaintiff's craftiness cannot circumvent the complaint's reliance on untested factual assertions to support its claim.[5]

─────────────────────────────

this Court's consideration. Such information can only be obtained through discovery.

[5] Although Plaintiff asserts that the dispute in this case should be resolved on the basis of the "legislative record" alone, Pl.'s Mem. in Support of Summ. J. at 5; Pl.'s Reply Br. at 10-14, and relies on the Supreme Court's decision in *City of Rome*, Plaintiff subsequently contradicts itself by asserting that Supreme Court's decision to uphold the 1975 reauthorization of Section 5 in *City of Rome* "did not turn" solely on evidence of discrimination from the legislative record, Pl.'s Mem. in

And, indeed, even in the Supreme Court's decisions in the *Boerne* line of cases, the Court has not always limited itself to the legislative record alone for evidence of discrimination.  *See, e.g.*, *Lane*, 541 U.S. at 525 (upholding Title II of the ADA, and examining evidence of discrimination against the disabled from outside the legislative record, including the need for state anti-discrimination statutes as well as evidence referenced in judicial decisions); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 729 (2003) (upholding Family and Medical Leave Act, and examining prior Supreme Court decisions for evidence of employment discrimination against women).

---

Support of Summ. J. at 28 (citing, *inter alia*, H. Rep. 94-196, H. Rep. 109-478, S. Rep. No. 94-295).

## CONCLUSION

For the reasons set forth above, the Plaintiff's motion for summary judgment should be denied as premature.  In the alternative, the motion should be continued so as to permit discovery pursuant to Rule 56(f).

September 8, 2010

                                          Respectfully submitted,

                                          /s/ Kristen M. Clarke
                                          John Payton
                                            Director-Counsel
                                          Debo P. Adegbile
                                            Associate Director-Counsel
                                          Ryan P. Haygood
                                          Dale E. Ho
                                          NAACP Legal Defense and
                                            Educational Fund, Inc.
                                          99 Hudson Street, Suite 1600
                                          New York, New York 10013
                                          (212) 965-2200

                                          Kristen M. Clarke (D.C. Bar No. 973885)
                                          NAACP Legal Defense and
                                          Educational Fund, Inc.
                                          1444 Eye Street, N.W., 10th Floor
                                          Washington, D.C. 20005
                                          (202) 682-1300

                                          *Attorneys for Cunningham Defendant-Intervenors*

                                        /s/ Meredith Bell-Platts
                                        Laughlin McDonald
                                        Meredith Bell-Platts (DDC Bar No. MI0049)
                                        American Civil Liberties Union Foundation, Inc.
                                        230 Peachtree Street, NW
                                        Suite 1440
                                        Atlanta, GA  30303-1227
                                        (404) 523-2721
                                        (404) 653-0331 (fax)
                                        lmcdonald@aclu.org
                                        mbell@aclu.org

15

/s/ Arthur B. Spitzer
Arthur B. Spitzer (D.C. Bar. No. 235960)
American Civil Liberties Union
   of the Nation's Capital
1400 20th Street, N.W., Suite 119
Washington, DC 20036
Tel. (202) 457-0800
Fax (202) 452-1868
artspitzer@aol.com

Allison E. Neal
American Civil Liberties Union of Alabama
207 Montgomery Street, Suite 910
Montgomery, AL  36104
(334) 265-2754
(334) 269-5666 (fax)
anaclual@bellsouth.net

Of counsel

*Attorneys for Pierson Defendant-Intervenors*

Laura D. Blackburne
Interim General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
(410) 580-5791
(410)358-9350 (fax)
lblackburne@naacpnet.org

Victor L. Goode
Assistant General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
(410) 580-5120
(410) 358-9350 (fax)
vgoode@naacpnet.org

*Attorneys for Defendant-Intervenor Alabama State
Conference of the NAACP*

/s/ Mark A. Posner

16

Jon Greenbaum (D.C. Bar No. 489887)
Marcia Johnson-Blanco
Robert A. Kengle
Mark A. Posner (D.C. Bar No. 457833)
David Cooper
jgreenbaum@lawyerscommittee.org
mblanco@lawyerscommittee.org
bkengle@lawyerscommittee.org
mposner@lawyerscommittee.org
dcooper@lawyerscommittee.org
Lawyer's Committee for Civil Rights
  Under Law
1401 New York Avenue, NW
Suite 400
Washington, D.C. 20005
(202) 662-8389 (phone)
(202) 628-2858 (fax)
Washington, D.C. 20006
Tel. (202) 663-6000
Fax (202) 663-6363

John Nonna
Autumn Katz
Daniel Stabile
Wendy Walker
jnonna@deweyleboeuf.com
akatz@deweyleboeuf.com
dstabile@deweyleboeuf.com
wwalker@deweyleboeuf.com
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Tel. (212) 259-8311
Fax (212) 649-9461

*Attorneys for Defendant-Intervenor
Bobby Lee Harris*

17