## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>*Plaintiff*,<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States of America<br><br>*Defendant*,<br><br>EARL CUNNINGHAM, HARRY JONES, ALBERT JONES, EARNEST MONTGOMERY, ANTHONY VINES and WILLIAM WALKER,<br><br>*Defendant-Intervenors*,<br><br>BOBBY PIERSON, WILLIE GOLDSMITH SR., KENNETH DUKES, MARY PAXTON-LEE, and ALABAMA STATE CONFERENCE OF THE NAACP,<br><br>*Defendant-Intervenors*,<br><br>and<br><br>BOBBY LEE HARRIS,<br><br>*Defendant-Intervenor*. | Civil Action No. 1:10-CV-651<br>(JDB) |

### DECLARATION OF KRISTEN M. CLARKE

I, Kristen M. Clarke, declare pursuant to 28 U.S.C. § 1746 that:

1. I am an attorney representing Defendant-Intervenors Earl Cunningham, Harry Jones, Albert Jones, Earnest Montgomery, Anthony Vines and William Walker (the "Cunningham Intervenors"), and have personal knowledge of the facts stated herein.

2. I submit this declaration in support of the consolidated opposition to Plaintiffs'

Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(f), filed by the Cunningham Intervenors; Bobby Pierson, Willie Goldsmith Sr., Kenneth Dukes, Mary Paxton-Lee, and Alabama State Conference of the NAACP (the "Pierson Intervenors"); and Bobby Lee Harris (collectively, "Defendant-Intervenors"); as to why Defendant-Intervenors cannot at this time present by affidavit facts essential to justify their opposition to Plaintiff's Motion.

3. Plaintiff Shelby County, Alabama ("Plaintiff" or "Shelby County"), a political subdivision of the State of Alabama, filed this action on April 27, 2010, seeking to challenge the constitutionality of both the Section 5 preclearance provision and the Section 4(b) scope provision of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 ("VRA").

4. Defendant's Answer was due on June 28, 2010, and was filed on that date.

5. Nearly three weeks beforehand, and before the commencement of discovery, Plaintiff filed a Motion for Summary Judgment on June 8, 2010, seeking a permanent injunction that would enjoin Defendant's continued enforcement of these key provisions of the VRA.

6. Defendant-Intervenors cannot oppose Plaintiff's motion for summary judgment on the merits unless they are given an adequate opportunity for discovery. Plaintiff, in its complaint and in its motion, conclusorily asserts numerous facts that are, *by its own admission*, material to its claim – assertions that Defendant-Intervenors must be granted a fair opportunity to test through discovery.

7. Discovery was permitted in the most recent litigation to reach the Supreme Court involving a "facial" challenge to Section 5. *See Nw. Austin Mun. Util. Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221, 230, 235 (D.D.C. 2008) ("treat[ing] the District's challenge as facial" in a

mixed bailout / constitutional challenge, but allowing "extensive discovery" prior to cross-motions for summary judgment), *rev'd in part*, 129 S. Ct. 1695 (2009).

8.      Plaintiff's submissions repeatedly refer to *City of Boerne v. Flores*, 521 U.S. 507 (1997) *see, e.g.*, Compl. ¶ 38d, in which the Supreme Court considered a facial challenge to the Religious Freedom Restoration Act. However, in *Boerne* itself and in subsequent cases citing *Boerne*, courts provided time for extensive discovery. *See, e.g.*, *City of Boerne v. Flores*, No. 94-0421 (W.D. Tex) (docket entry no. 10 ordering a 3-month period for discovery; 6 months elapsed between filing of the complaint and filing of a motion for summary judgment); *Kimel v. Fla. Bd. of Regents*, No. 95-40194-MP (N.D. Fla.) (docket entry no. 10 ordering a discovery period of 4 months; entry no. 22 extending discovery period and setting number of interrogatories and requests for admission at 250; entry nos. 36 and 41 ordering depositions; entry no. 111 extending discovery period); *Bd. of Trustees of the Univ. of Ala. v. Garrett*, Nos. 97-0092, 97-2179 (N.D. Ala.) (docket entry no. 13 ordering a 9-month period for discovery; entry no. 43 ordering defendants to produce documents); *Tennessee v. Lane*, No. 9800731 (M.D. Tenn.) (docket entry nos. 111, 124 ordering a 6-month period for discovery); *Goodman v. Ray* (*United States v. Georgia*), No. 99-00001 (S.D. Ga.) (docket entry no. 242 ordering a 6-month period for discovery).

9.      If permitted, Defendant-Intervenors intend to seek discovery on a range of matters including, but not limited to, the extent of the purported "burdens" imposed by Section 5, and "current conditions" with respect to racial discrimination and voting which justify the challenged provisions.

10.     The nature of these alleged "burdens" is directly relevant to the substance of Plaintiff's constitutional claim.  In support of its position that Section 5 exceeds Congressional

enforcement authority, Plaintiff repeatedly invokes the Supreme Court's recent statement in *Nw. Austin Mun. Util. Dist. No. One*, 129 S.Ct. at 2512 that Section 5's "burdens . . . must be justified by current needs." *See* Pl.'s Mem. in Supp. of Summ. J. at 5, 16, 20, 24. Plaintiff alleges that, as a result of being subject to Section 5, it has endured the following "burdens": it has "filed for preclearance numerous times," "expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5," and "had at least one election delayed in order to ensure compliance with the preclearance obligation of Section 5." Pl.'s Statement of Mat. Facts ¶ 7; Compl. ¶ 32.

11. Plaintiff, however, offers only generalized and conclusory characterizations and fails to set forth any specific description of the alleged "burdens" imposed. *See, e.g.*, Compl. ¶ 32. Plaintiff does not specify the number of times it or its subdivisions have filed for preclearance, or even attempt to quantify the amount of "dollars," "time," or "energy" it has expended in seeking preclearance, much less describe the nature of its "effort[s]" at Section 5 compliance. *Id.* Nor does Plaintiff even specify the precise number of elections that have allegedly been "delayed" as a result of compliance with its Section 5 obligations. *Id.* Without discovery, Defendant-Intervenors would be unable to ascertain the veracity of Plaintiff's claims or adequately defend against the claims set forth in the Complaint. *See* Compl. ¶¶ 31-39.

12. Plaintiff further states that it "reasonably anticipates that it will have to regularly seek preclearance in the near future," but it does not explain when in the "future" it expects to seek preclearance, does not state what it means by "regularly," and does not attempt to quantify the "burdens" that such "regular[]" attempts to seek preclearance will entail. This information is within Plaintiff's exclusive custody, rendering discovery the only opportunity for Defendant-Intervenors to test Plaintiff's assertions. Without an opportunity for discovery to understand the precise nature of

4

these assertions and Plaintiff's basis for making them, Defendant-Intervenors cannot adequately oppose this motion for summary judgment.

13. It is equally unclear at this nascent stage of litigation what "conditions", according to Plaintiff, no longer justify the application of Section 5.  Plaintiff's claim is largely contingent upon the general notion that "[t]hings have changed in the South." Pl.'s Mem. in Support of Summ. J. at 4 (quoting *Nw. Austin Mun. Util. Dist. No. One*, 129 S.Ct. at 2511).  But Plaintiff's filings in this case – including its Complaint, its Statement of Material Facts, and its Memorandum in Support of its Motion for Summary Judgment – do not address what the "current conditions" actually are "in the South."  Indeed, Plaintiff's Complaint is largely devoted to "*Shelby County's* Experience Under the Voting Rights Act," *see* Compl. ¶¶ 28-36 (emphasis added), but Plaintiff seeks facial invalidation of Sections 4(b) and 5 of the VRA, which currently apply to 16 different states in whole or in part.  The Complaint is largely silent about the experience of other jurisdictions, including other jurisdictions in Alabama, covered by the challenged provisions, a stunning omission given the broad scope of the relief that Plaintiff seeks.

14. Despite the fact that Plaintiff's Complaint devotes over a dozen paragraphs to its "Experience Under the Voting Rights Act," the Complaint does not shed much light on the "current conditions" in Shelby County itself – such as the County's record of voting discrimination, its history of election-related litigation, any evidence concerning voting patterns and racial polarization in the County, and participation rates (such as registration and turnout rates) – which Plaintiff alleges could demonstrate that Section 5 is no longer necessary.  Much of this information is under the exclusive control of Plaintiff, and cannot be obtained without discovery.

15. By Plaintiff's own admission, the factual issues identified above are "material" to its

claim and therefore "might affect the outcome of the suit," which merits discovery under Rule 56(f). Pl.'s Reply Br. in Supp. of Summ. J. at 3 (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Discovery is necessary, in part, to enable Defendant-Intervenors to learn about the "burdens" imposed by Section 5 – including, but not limited to, precisely the amount of "dollars, time and energy" that Plaintiff has expended on its efforts to comply with Section 5; the nature of Plaintiff's expectation that it will continue to incur such costs in the future; and the basis for Plaintiff's assertions in both of those regards. *See* Compl. ¶ 32. It will also enable Defendant-Intervenors to consider the basis for Plaintiff's assertion that "current conditions" – both in Shelby County itself and "in the South" generally – no longer justify the "burdens" of Section 5 coverage. *See id.* As this case involves an effort to invalidate statutory provisions that currently apply to 16 states in whole or in part, the material facts cannot be limited to Shelby County alone. Rather, the material facts in this case arise from a range of jurisdictions that is necessarily coextensive in scope with the coverage of Sections 4(b) and 5.

I declare under penalty of perjury that the above is true and correct.

Date: September 8, 2010
New York, NY

/s/ Kristen M. Clarke
Kristen M. Clarke