UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SHELBY COUNTY, ALABAMA,

    Plaintiff,

        v.

ERIC H. HOLDER, Jr., in his official capacity as Attorney General of the United States,

    Defendant.

Civil Action No. 10-0651 (JDB)

---

## MEMORANDUM OPINION AND ORDER

Shelby County has sued Attorney General Eric Holder, seeking a declaratory judgment that Sections 4(b) and 5 of the Voting Rights Act ("VRA"), 42 U.S.C. §§ 1973b(b) and 1973(c), are unconstitutional. Shortly after filing its complaint, Shelby County moved for summary judgment. The United States, as well as defendant-intervenors -- a civil rights organization and a number of individuals -- ask the Court to deny the motion as premature, or in the alternative to grant discovery pursuant to Federal Rule of Civil Procedure 56(f).[1] The Court heard oral argument on defendant's request on September 10, 2010.[2]

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

---

[1] Neither the government nor defendant-intervenors have offered any argument for why Shelby County's motion is premature. Indeed, a motion for summary judgment may be brought "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the Court will discuss only the request for discovery.

[2] A final transcript of the September 10 hearing is not yet available. Accordingly, the Court is unable to offer direct citations to the oral argument.

"there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); see also Celotex, 477 U.S. at 323.

If a party opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f). "The purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." 1443 Chapin St., LP v. PNC Bank, 258 F.R.D. 186, 187 (D.D.C. 2009) (internal quotation marks omitted). But "[t]he Rule is not designed to allow 'fishing expeditions,' and [parties] must specifically explain what their proposed discovery would likely reveal and why that revelation would advance the [party's] case." Milligan v. Clinton, 266 F.R.D. 17, 18-19 (D.D.C. 2010); see also Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion").

Here, Defendants argue that they need discovery for three primary reasons: (1) to

determine whether Shelby County has standing to bring suit; (2) to evaluate whether Shelby County may be eligible to "bail out" from the VRA's requirements; and (3) to gather information relating to the VRA's constitutionality. The Court takes each argument in turn.

1.  Standing

To establish that it has standing to bring this suit, Shelby County offers that "[i]n the last ten years, [it] has sought preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5 of the VRA, and has had at least one election delayed in order to ensure compliance with the preclearance obligations of Section 5 of the VRA." See Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Docket Entry 5], Decl. of Frank Ellis, at ¶ 7. The government responds that, without discovery, it "is unable to determine whether Plaintiff has, in fact, suffered injury in complying with Sections 4(b) and 5." Gov't's Opp'n to Pl.'s Mot. for Summ. J. ("Gov't's Opp'n") [Docket Entry 7], at 11. Hence, although the government has not yet contested Shelby County's standing, it requests discovery in order to evaluate whether it will do so.

The government has not shown that it needs discovery to assess Shelby County's standing. The government has offered no reason to doubt the veracity of Ellis's declaration in support of standing. See Strang, 864 F.2d at 861 ("Without some reason to question the veracity of affiants . . . [a party's] desire to 'test and elaborate' affiants' testimony [through Rule 56(f) discovery] falls short."). And at oral argument, the government was unable to articulate any reason why a covered jurisdiction subject to Section 5's preclearance requirement -- such as

Shelby County -- would lack standing to bring this type of action.[3]  Thus, neither the government nor defendant-intervenors have put forth "specified reasons" why discovery is necessary to evaluate Shelby County's standing.  See Fed. R. Civ. P. 56(f).

2.  Bailout

The government's next argument in support of its discovery request stems from the "bailout" provision of Section 4(a) of the VRA, which "allow[s] jurisdictions with clean records to terminate their section 5 preclearance obligation."  Nw. Austin Mun. Util. Dist. No. One v. Mukasey (Nw. Austin I), 573 F. Supp. 2d 221, 226 (D.D.C. 2008) (three-judge court), rev'd on other grounds by 129 S. Ct. 2504 (2009).  Shelby County believes that it is not eligible for bailout.  See Pl.'s Mem. in Supp. of Mot. for Summ. J. [Docket Entry 5], at 41 n.8.  The government does not really contest the specifics of Shelby County's position, but states that it "does not presently know[] the degree to which Shelby County could meet or not meet each of the statutory bailout criteria under Section 4(a) of the [VRA]."  Gov't's Opp'n at 10.  The government suggests that if Shelby County is, in fact, eligible for bailout, granting that relief could obviate the need for any constitutional challenge.  Accordingly, the government seeks discovery on this issue.[4]

---

[3] Indeed, in the related case of Laroque v. Holder, Civ. A. No. 10-561 (D.D.C. June 14, 2010) (Gov't's Mem. in Supp. of Mot. to Dismiss), the government has stated that there is no "hindrance to [a covered jurisdiction's] assertion of any proper constitutional claim concerning the application of Section 5."  Id. at 22.

[4] Although the government did not press the point at oral argument, the government's motion asserts that, even if Shelby County is correct in the reasons it recites for why it is ineligible for bailout, discovery should ensue because there may be additional reasons for ineligibility.  See Gov't's Mot. at 10 ("Whether or not one or two bailout criteria might defeat bailout . . . it is relevant for the Attorney General to be allowed to discover . . . whether those are
(continued...)

Shelby County "has not," however, "sought 'bailout' from coverage pursuant to Section 4(a) of the VRA." Pl.'s Reply in Supp. of Mot. ("Pl.'s Reply") [Docket Entry 14], at 2. And the government agreed at oral argument that neither it nor this Court could force Shelby County to accept bailout. Thus, further factual investigation on this point would reveal only whether Shelby County is eligible for relief that it explicitly has not sought. The parties have pointed to no authority, and the Court is unaware of any, that would support discovery under such circumstances.

3.  <u>Constitutionality of the VRA</u>

Shelby County's complaint seeks a declaratory judgment that Sections 4(b) and 5 of the VRA are unconstitutional. <u>See</u> Compl., Prayer ¶ 44(a). It does not request any relief specific to Shelby County itself. Accordingly, the county's suit is properly deemed a facial challenge. <u>See</u> <u>Doe v. Reed</u>, 130 S. Ct. 2811, 2817 (2010) (for a challenge to be facial, "[t]he important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs"). Indeed, at oral argument Shelby County explicitly waived any as-applied challenge in this case.[5]

Because Shelby County brings only a facial challenge to the VRA, discovery into that claim is unwarranted. As a three-judge court of this district recently noted, a court's role in

---

[4](...continued)
the only criteria that might keep Shelby County from bailing out, or whether there are other areas of potential non-compliance."). That is hardly a justification to embark upon broad discovery.

[5] Defendant-intervenors have expressed concerns that in prior cases challenging the constitutionality of the VRA, plaintiffs have shifted between facial and as-applied challenges as the case progressed. Their fears that the same could happen here are unfounded. The Court will permit no gamesmanship: Shelby County insists that its challenge is facial, and the Court will hold it to that assurance <u>throughout</u> the litigation.

resolving a facial challenge to the 2006 extension of the VRA is limited to assessing whether "the 2006 legislative record contain[s] sufficient evidence of contemporary discrimination in voting to justify Congress's decision to subject covered jurisdictions to section 5 preclearance for another twenty-five years." Nw. Austin I, 573 F. Supp. 2d at 265. In other words, a court's analysis "is limited to the actual evidence Congress considered." Id. at 247. Because of this, no discovery is warranted in this case.[6]

The government protests that, in its summary judgment briefing, Shelby County has introduced county-specific facts that were not in the legislative record. See Gov't's Opp'n at 9; see also Pl.'s Statement of Mat'l Facts Not in Dispute [Docket Entry 5], at ¶¶ 4-5, 7-8. According to the government, "[w]ithout knowing the basis for the Plaintiff's assertions, the data or methodologies underlying them, or other facts related to the Plaintiff's assertions, the Attorney General cannot adequately respond to them." Gov't's Opp'n at 9.

Shelby County has explained, however, that it offered these facts "merely to buttress its already strong claim for standing." Pl.'s Reply at 13 n.1. And the county acknowledged at oral argument that, when assessing the VRA's facial constitutionality, the Court cannot rely on these

---

[6] The government cites the Supreme Court's statement that "the [VRA] imposes current burdens and must be justified by current needs," Nw. Austin Mun. Util. Dist. No. One v. Holder (Nw. Austin II), 129 S. Ct. 2504, 2512 (2009), as an indication that this Court should order additional discovery into present-day voting practices in Shelby County. But nothing in the Supreme Court's opinion suggests that the "current needs" to which it referred are anything other than those identified by Congress in 2006. Indeed, in Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000) -- a case that, like this one, turned on whether Congress exceeded its enforcement authority under the Fourteenth Amendment -- the Court assessed the constitutionality of the Age Discrimination in Employment Act ("ADEA") solely on the record created by Congress twenty-five years earlier. See id. at 89 ("Our examination of the ADEA's legislative record confirms that Congress' 1974 extension of the Act to the States was an unwarranted response to a perhaps inconsequential problem.").

facts, at least to the extent that they are not in the legislative record. Consistent with the above discussion, the Court agrees. Indeed, a contrary conclusion would be absurd. If the VRA's facial constitutionality turns -- even in part -- on present-day facts outside the legislative record, then discovery could not even properly be limited to Shelby County alone. Rather, the Court would need to consider in its analysis evidence relating to <u>every</u> covered jurisdiction and subjurisdiction. No authority requires or permits the Court to undertake such a massive factual inquiry, extending well beyond the record on which Congress relied in extending the VRA in 2006.

The government and defendant-intervenors have also pointed to several cases to support their argument that discovery is warranted on Shelby County's facial constitutional claim. They point, for example, to <u>Northwest Austin I</u>, where the plaintiff brought a constitutional challenge to the VRA, but the parties still engaged in extensive discovery. But in that case, plaintiff -- in addition to its constitutional challenge -- sought bailout under Section 4(b) of the VRA, and also presented "two arguments . . . that could be construed as reflecting an as-applied challenge." <u>Nw. Austin I</u>, 573 F. Supp. 2d at 235. Shelby County has brought no such fact-dependent claims here. Defendant-intervenors also cite <u>Nev. Dep't of Human Resources v. Hibbs</u>, 538 U.S. 721 (2003), and <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), for the proposition that in assessing whether Congress has exceeded its enforcement authority under the Fourteenth Amendment, "the [Supreme] Court has not always limited itself to the legislative record alone for evidence of discrimination." Def.-Intervenors' Opp'n to Pl.'s Mot. [Docket Entry 36], at 14. In those two cases, however, the Supreme Court merely referenced state laws and prior judicial opinions, and even then only to present the historical "backdrop" of the challenged legislation. <u>Lane</u>, 541 U.S.

at 524; see Hibbs, 538 U.S. at 729. Those cases do not, therefore, stand for the proposition that extensive fact discovery is warranted to evaluate the facial constitutionality of congressional legislation. Indeed, at oral argument the Court asked if any counsel -- who collectively have a very broad experience -- could identify a case in which the Supreme Court decided the facial constitutionality of an act of Congress based on facts unique to the specific plaintiff bringing the lawsuit. None could. Yet that is the discovery the government and defendant-intervenors seek here.

Evaluating the constitutionality of a congressional statute -- especially one as storied as the VRA -- is "the gravest and most delicate duty that this Court is called on to perform." Nw. Austin II, 129 S. Ct. at 2513. The Court therefore must be both cautious and thorough. Nonetheless, the constitutionality of the VRA must rise or fall on the record that Congress created when it extended that act in 2006. Accordingly, it is hereby

**ORDERED** that [7] the government's request for discovery pursuant to Federal Rule of Civil Procedure 56(f) is **DENIED**; and it is further

**ORDERED** that the government and defendant-intervenors shall file an opposition to [5] Shelby County's motion for summary judgment by not later than November 15, 2010; Shelby County may file a reply in support of its motion by not later than December 15, 2010.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: September 16, 2010