IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States of America<br><br>　　　　Defendant,<br><br>EARL CUNNINGHAM, HARRY JONES, ALBERT JONES, ERNEST MONTGOMERY, ANTHONY VINES and WILLIAM WALKER,<br><br>　　　　Defendant-Intervenors,<br><br>BOBBY PIERSON, WILLIE GOLDSMITH SR., KENNETH DUKES, MARY PAXTON-LEE, and ALABAMA STATE CONFERENCE OF THE NAACP,<br><br>　　　　Defendant-Intervenors,<br>and<br><br>BOBBY LEE HARRIS,<br><br>　　　　Defendant-Intervenor. | Civil Action No. 1:10-CV-651<br><br>(JDB) |

**DEFENDANT'S AND DEFENDANT-INTERVENORS' JOINT RESPONSE
TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7.1(h), Defendant Eric Holder, Jr., and Defendant-Intervenors Earl Cunningham, Harry Jones, Albert Jones, Ernest Montgomery, Anthony Vines, William Walker, Bobby Pierson, Willie Goldsmith Sr., Kenneth Dukes, Mary Paxton-Lee, the Alabama State Conference of the NAACP, and Bobby Lee Harris file the following joint response to Plaintiff Shelby County's Statement of Material Facts submitted in

1

support of its Motion for Summary Judgment [Doc. 5].  Defendant and Defendant-Intervenors do not address or concede the legal relevance or probativeness, as to the constitutional issues presented in this case, of the assertions contained in the County's Statement of Material Facts.

¶1.  Shelby County is organized under the Constitution and laws of the State of Alabama. *See* 1818 Ala. Acts page no. 29 (establishing Shelby County); Ala. Const. art. II, § 38 (1901) (ratifying and confirming the boundaries of counties).

**RESPONSE:**  Not disputed.

¶2.  Shelby County is subject to coverage under Section 4(b) of the VRA because on August 7, 1965: (1) the Attorney General of the United States determined that, as of November 1, 1964, the State of Alabama was using a prohibited "test or device" as that term is defined in Section 4(c) of the VRA; and (2) the Director of the Census determined that less than 50 percent of the persons of voting age residing in Alabama voted in the presidential election of November 1964. *See* 42 U.S.C. § 1973b(b)-(c); Determination of the Attorney General Pursuant to Section 4(b)(1) of the Voting Rights Act of 1965, 30 Fed. Reg. 9897 (Aug. 7, 1965); Determination of the Director of the Census Pursuant to Section 4(b)(2) of the Voting Rights Act of 1965 (Pub. L. No. 89-110), 30 Fed. Reg. 9897 (Aug. 7, 1965).

**RESPONSE:**  Defendant and Defendant-Intervenors dispute that this statement fully and accurately captures the reasons for Alabama and its subjurisdictions (including Shelby County) being covered under Section 4(b) of the Voting Rights Act.  Defendant and Defendant-Intervenors aver that Alabama and its subjurisdictions (including Shelby County) were covered by Section 4(b) of the Voting Rights Act because of the long history of voting discrimination in Alabama, described in the 1965 legislative history of the Voting Rights Act, and that this history led Congress to identify a set of criteria to define such jurisdictions.  Defendant and Defendant-

Intervenors also aver that the published coverage determinations of the Attorney General and the Director of the Census based on these criteria, issued in 1965, speak for themselves.  Defendant and Defendant-Intervenors also dispute this statement to the extent that it does not reflect Congress' findings, and the evidence submitted to Congress, in connection with the 1970, 1975, 1982, and 2006 reauthorizations of Section 5 of the Voting Rights Act regarding the continuing need for, and appropriateness of, applying Section 5 to covered jurisdictions, including Alabama and its respective jurisdictions.  Defendant and Defendant-Intervenors aver that Shelby County, Alabama is currently covered because Congress carefully reviewed the record in 2006 and found, based on current conditions, that Section 5 remains necessary to remedy and deter discrimination in Alabama and other covered jurisdictions.

¶3.  The voting tests identified in Section 4(c) of the Voting Rights Act were permanently banned by Congress on a nationwide basis in 1975. *See* Act of Aug. 6, 1975, Pub. L. No. 94-73, § 102, 89 Stat. 400 (1975).

**RESPONSE:**  Not disputed.

¶4.  More than 50% of the voting age persons residing in Shelby County registered and voted in the 2000 and 2004 presidential elections. *See* Declaration of Frank C. Ellis, Jr. ("Ellis Decl.") ¶ 11.

**RESPONSE:** Defendant and Defendant-Intervenors do not dispute that more than 50% of the voting age persons residing in Shelby County registered and voted in the 2000 and 2004 presidential elections.

¶5.  More than 50% of the voting age persons residing in Alabama registered and voted in the 2000 and 2004 presidential elections. *See* U.S. Census Bureau, Voting and Registration, http://www.census.gov/hhes/www/socdemo/voting/publications/historical/index.html

(last visited June 7, 2010) (Tables A-5a and A-5b showing registration and voting totals).

**RESPONSE:** Defendant and Defendant-Intervenors do not dispute that more than 50% of the voting age persons residing in Alabama registered and voted in the 2000 and 2004 presidential elections. Defendant and Defendant-Intervenors also note that the cited Census data were obtained from surveys, and therefore may not provide the best available evidence for any given purpose.

¶6. As a "covered" jurisdiction under Section 4(b) of the VRA, Shelby County must comply with Section 5 of the VRA. Section 5 prohibits Shelby County from "enact[ing] or seek[ing] to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" unless the Department of Justice ("DOJ") or the United States District Court for the District of Columbia ("DDC") determines that such "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" does not have "the purpose . . . [or] effect of diminishing the ability of any citizens of the United States on account of race or color, or [language minority], to elect their preferred candidates of choice[.]" 42 U.S.C. § 1973c.

**RESPONSE:** Defendant and Defendant-Intervenors dispute that this paragraph accurately and completely states the terms of Section 5. Defendant and Defendant-Intervenors aver that the text of Section 5, and the administrative procedures and caselaw developed under Section 5, speak for themselves. The Section 5 preclearance requirement applies "[w]henever" Shelby County "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964." Accordingly, Section 5 generally does not apply to any proposed Shelby County voting change unless and until the change is the subject of a final enactment or

administrative decision.  28 C.F.R. §§ 51.21, 51.22.  In order to obtain preclearance for a particular covered voting change, Shelby County must either:  1) demonstrate to the United States District Court for the District of Columbia that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(4)" of the Voting Rights Act; or 2) submit the change to the United States Attorney General and not have the Attorney General "interpose[] an objection within sixty days after such submission."  42 U.S.C. § 1973c(a).  Section 5 further specifies that "unless and until [preclearance is obtained] no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure."  *Id.*

¶7.  In the last ten years, Shelby County has filed for preclearance numerous times, expended significant taxpayer dollars, time, and energy to meet its obligations under Section 5, and has had at least one election delayed in order to ensure compliance with the preclearance obligation of Section 5.  Ellis Decl. ¶ 7.

**RESPONSE:**  Defendant and Defendant-Intervenors do not dispute that Shelby County has made Section 5 submissions to the Attorney General within the last ten years.  The remaining assertions are disputed because Defendants and Defendant-Intervenors are unable to verify their veracity, and because Plaintiff's use of the term "significant" is ambiguous and conclusory.  Defendant and Defendant-Intervenors dispute that any conclusion may be reached as to Shelby County's efforts to comply with Section 5 as no such investigation has been undertaken by either Defendant or Defendant-Intervenors.

¶ 8.  Shelby County reasonably anticipates that it will have to regularly seek preclearance in the near future. Shelby County anticipates that, among other reasons, the districting changes

5

triggered by the decennial census, as well as routine voting changes related to local elections and zoning, will require it to seek preclearance in the near future.  Ellis Decl. ¶ 8.

**RESPONSE:**  Defendant and Defendant-Intervenors do not dispute that Shelby County, like any covered jurisdiction, may continue to "enact or seek to administer" voting changes subject to Section 5, and, if so, will be obligated to seek Section 5 preclearance.  Defendant and Defendant-Intervenors dispute the remainder of this statement for the following reasons.  The references to having to "regularly seek preclearance in the near future" and to "routine changes related to local elections" are ambiguous and, therefore, Defendant and Defendant-Intervenors have no basis for responding to these assertions. It also is premature to determine whether, or to what extent, the 2010 Census will require the adoption of redistricting plans in the county since the requisite 2010 Census data have not yet been released.  Finally, Defendant and Defendant-Intervenors deny that zoning changes require Section 5 preclearance.  *See generally* 28 C.F.R. § 51.13.

¶ 9.  A covered jurisdiction is ineligible for bailout under Section 4(a) of the VRA unless "[a]ll changes affecting voting have been reviewed under Section 5 prior to their implementation." United States Department of Justice, Civil Rights Division, Section 4 of the Voting Rights Act, http://www.justice.gov/crt/voting/misc/sec_4.php (last visited June 1, 2010).  On April 9, 2002, Shelby County held a referendum election under a law that had not been precleared by DOJ or DDC. *See* Ellis Decl. ¶ 9. The referendum election was later precleared by DOJ.  *See id*.

**RESPONSE:**  Defendant and Defendant-Intervenors dispute that "a covered jurisdiction is ineligible for bailout under Section 4(a) of the VRA unless "'[a]ll changes affecting voting have been reviewed under Section 5 prior to their implementation.'"  The

6

Department of Justice has consented to bailout in the past where jurisdictions received preclearance from the Attorney General for voting changes after implementing them. Defendant and Defendant-Intervenors do not dispute that Shelby County held a referendum on April 9, 2002 that involved a voting change subject to Section 5 preclearance and that this change received Section 5 preclearance after the election was conducted. To the extent that this paragraph implies an argument about Shelby County's eligibility to obtain a bailout under Section 4(a), Defendant and Defendant-Intervenors dispute that any conclusion may be reached on Shelby County's bailout eligibility without a full investigation of this issue; no such investigation has been undertaken by either Defendant or Defendant-Intervenors.  In this regard, Defendant and Defendant-Intervenors note that Section 4(a)(3) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(3), provides that, in considering a bailout request, it is relevant to consider whether any relevant "violations [of federal law] were trivial, were promptly corrected, and were not repeated."

¶ 10.  A covered "political subdivision" is ineligible for bailout under Section 4(a) of the Voting Rights Act if the Attorney General has interposed an objection under Section 5 of the Voting Rights Act during the past ten years to any change submitted for preclearance by "any governmental unit within its territory." 42 U.S.C. § 1973b(a)(1)(E).  On August 25, 2008, the Attorney General interposed an objection under Section 5 of the Voting Rights Act to certain voting changes submitted for preclearance by the City of Calera, Alabama. *See* Ellis Decl. ¶ 10. The City of Calera is a "governmental unit" within the territory of Shelby County.  *See* 42 U.S.C. § 1973b(a)(1)(E).

**RESPONSE:**  Defendant and Defendant-Intervenors do not dispute that Plaintiff has correctly quoted Section 4(a)(1)(E) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1)(E).

7

Defendant and Defendant-Intervenors also do not dispute that the Attorney General interposed a Section 5 objection on August 25, 2008 to voting changes submitted by the City of Calera, which is a governmental unit located partially in Shelby County.  However, to the extent that this paragraph implies an argument about Shelby County's eligibility to obtain a bailout under Section 4(a), Defendant and Defendant-Intervenors dispute that any conclusion may be reached as to Shelby County's bailout eligibility without a full investigation of this issue; no such investigation has been undertaken by either Defendant or Defendant-Intervenors.

November 15, 2010                                              Respectfully submitted,


*Mark A. Posner*
JON M. GREENBAUM (D.C. Bar No. 489887)
ROBERT A. KENGLE
MARCIA JOHNSON-BLANCO
MARK A. POSNER (D.C. Bar No. 457833)
Lawyers' Committee for Civil Rights
 Under Law
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
Tel. (202) 662-8325
Fax (202) 783-0857
jgreenbaum@lawyerscommittee.org
bkengle@lawyerscommittee.org
mblanco@lawyerscommittee.org
mposner@lawyerscommittee.org

JOHN M. NONNA (pending pro hac vice admission)
AUTUMN KATZ(pending pro hac vice admission)
DANIEL STABILE (pending pro hac vice admission)
WENDY WALKER (pending pro hac vice admission)
DAVID COOPER
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas

New York, NY 10019
Tel. (212) 259-8311
Fax (212) 649-9461

*Attorneys for Defendant-Intervenor Harris*


*Filed with permission*
LAUGHLIN MCDONALD
NANCY ABUDU
American Civil Liberties Union
 Foundation, Inc.
230 Peachtree Street, NW
Suite 1440
Atlanta, GA 30303-1227
(404) 523-2721
(404) 653-0331 (fax)
lmcdonald@aclu.org

ARTHUR B. SPITZER (D.C. Bar. No.
 235960)
American Civil Liberties Union of the
 Nation's Capital
1400 20th Street, N.W., Suite 119
Washington, DC 20036
Tel. (202) 457-0800
Fax (202) 452-1868
artspitzer@aol.com

LAURA D. BLACKBURNE
Interim General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
(410) 580-5791
(410)358-9350 (fax)
lblackburne@naacpnet.org

VICTOR L. GOODE
Assistant General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
(410) 580-5120
(410) 358-9350 (fax)
vgoode@naacpnet.org

ALLISON E. NEAL
American Civil Liberties Union of Alabama
207 Montgomery Street, Suite 910
Montgomery, AL 36104
(334) 265-2754
(334) 269-5666 (fax)
anaclual@bellsouth.net

*Attorneys for Defendant-Intervenors
Pierson, et al.*

*Filed with permission*
JOHN PAYTON
  Director-Counsel
DEBO P. ADEGBILE
KRISTEN M. CLARKE (D.C. Bar No.
  973885)
RYAN P. HAYGOOD
DALE E. HO
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 965-2200

SAMUEL SPITAL
Squire, Sanders & Dempsey L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 872-9800

*Attorneys for Defendant-Intervenors
Cunningham, et al.*


RONALD C. MACHEN, JR.            THOMAS E. PEREZ
  United States Attorney            Assistant Attorney General
  District of Columbia              Civil Rights Division

                                 SAMUEL R. BAGENSTOS
                                 JULIE A. FERNANDES
                                   Deputy Assistant Attorneys General

                                 *Filed with permission*

                T. CHRISTIAN HERREN, JR.
                DIANA K. FLYNN
                RICHARD DELLHEIM (lead counsel)
                LINDA F. THOME
                ERNEST A. MCFARLAND
                JARED M. SLADE
                JUSTIN WEINSTEIN-TULL
                  Civil Rights Division
                  U.S. Department of Justice
                  950 Pennsylvania Avenue, N.W.
                  NWB-Room 7264
                  Washington, D.C. 20530
                  Telephone: (202) 305-1734
                  Facsimile: (202) 307-3961

                *Attorneys for Defendant Eric Holder, Jr.*

## Certificate of Service

I hereby certify that on November 15, 2010, I served foregoing document through the District Court's ECF system on all counsel of record.


*Mark A. Posner*
Counsel for Defendant-Intervenor Harris