IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA, )<br><br>Plaintiff, )<br><br>v. )<br>)<br>ERIC H. HOLDER, Jr., )<br>in his official capacity as )<br>Attorney General of the )<br>United States, )<br>)<br>Defendant ) | <br><br><br><br><br>Civil Action No.<br>1:10-cv-00651-JDB |

**DECLARATION OF ROBERT S. BERMAN**

I, Robert S. Berman, pursuant to 28 U.S.C. 1746, declare as follows:

1. I am an attorney who currently serves as a Deputy Chief in the Voting Section of the Civil Rights Division of the United States Department of Justice.  I have supervisory responsibility for the administrative review of voting changes submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c.  I have been employed as an attorney in the Department of Justice for 32 years with over 20 years of service in the Voting Section.

2. I have personal knowledge of the information contained in this declaration based upon my review of relevant records maintained by the Department of Justice, as well as my professional experience with, and personal knowledge of, Department of Justice policies and procedures.

3. At least 31 subjurisdictions located in whole or in part in Shelby County have submitted voting changes for administrative review under Section 5.

4. Since Shelby County was first required to comply with Section 5, the Department of Justice has received at least 682 submissions for review involving Plaintiff Shelby County or jurisdictions located in whole or in part in Shelby County.  Of the 682 submissions, 291 were received from 19 jurisdictions located wholly within Shelby County.

5. The Attorney General has received at least 69 submissions for Section 5 review on behalf of Plaintiff Shelby County.

6. On April 8, 2010, the Department informed county officials that no objection would be interposed to Shelby County's most recent submission, which included a polling place change.

7. Section 5 submissions from the Cities of Birmingham, Calera, Chelsea, and Helena, all subjurisdictions located in whole or in part in Shelby County, are currently pending the Attorney General's administrative review.

8. The Attorney General has interposed five objections to changes affecting voting in jurisdictions wholly or partially contained within Shelby County: a July 7, 1975, objection to six annexations to the City of Alabaster; a December 27, 1977, objection to two annexations to the City of Alabaster; a May 4, 1987, objection to annexations to the City of Leeds; an August 16, 2000, objection to the designation of two annexations to Ward 1 of the City of Alabaster (at the same time 42 annexations adopted between 1992 and 2000 were precleared); and an August 25, 2008, objection to 177 annexations, their designation to districts, and a redistricting plan for the City of Calera.

9. On March 13, 2008, the City of Calera, a subjurisdiction of Shelby County, submitted a redistricting plan, along with 177 annexations that the City adopted between 1995 and 2007

but had not previously submitted, and their designation to districts, to the Attorney General

for administrative review under Section 5.

10. On August 25, 2008, the Attorney General interposed an objection to the voting changes

occasioned by the City of Calera's proposed redistricting plan and 177 annexations.  The

letter, which is dated August 25, 2008, and provides the factual and legal basis for the

Attorney General's decision to interpose an objection, is appended as Attachment A.

11. On August 26, 2008, and October 7, 2008, the City of Calera conducted elections under the

redistricting plan, which included the electorate of the objected-to 177 annexations, that was

the subject of the Attorney General's August 25, 2008, objection.  Attachment C at 4

(Consent Decree in *United States* v. *City of Calera*, CV-08-BE-1982-S (N.D. Ala. Oct. 29,

2008)).

12. On October 24, 2008, the United States filed an action against the City of Calera under

Section 5 seeking to enjoin further implementation of changes affecting voting that had not

received Section 5 preclearance.  Attachment B (Complaint, *United States* v. *City of Calera*,

CV-08-BE-1982-S (N.D. Ala. Oct. 24, 2008)).

13. On October 29, 2008, the court temporarily resolved this City of Calera matter through a

consent decree that provided for an interim change in the method of election to an interim

limited voting election plan, pending the results of the 2010 Census and a new special

municipal election.  *United States v. City of Calera*, CV-08-BE-1982-S (N.D. Ala.  2008);

Attachment C (Oct. 29, 2008 Consent Decree).

14. On November 17, 2008 and March 24, 2009, the Attorney General denied the City of

Calera's requests to withdraw his objections.  Attachments D and E (Nov. 17, 2008 and Mar.

24, 2009 letters).

15. On September 25, 2009, after the adoption of the interim limited voting election plan, the Attorney General withdrew his objection to the 177 annexations to the City of Calera and also informed city officials that no objection would be interposed to the city's proposed interim voting plan for the 2009 municipal election in Calera.  The Attorney General's September 25, 2009, letter did not, however, withdraw his objection to the 2008 redistricting plan or the designation of annexations to districts.  The September 25, 2009, letter is appended as Attachment F.

**The Administrative Review Process**

16. The Attorney General endeavors to comply with Congress's intent that the administrative review of voting changes submitted pursuant to Section 5 be an efficient, convenient, and affordable alternative to seeking a declaratory judgment from a three-judge court in the United States District Court for the District of Columbia.

17. To that end, the Attorney General has a long-standing policy of providing information to covered jurisdictions concerning the administrative review process by publishing the Procedures for the Administration of Section 5 of the Voting Rights Act of 1965 in the Code of Federal Regulations.  28 C.F.R. part 51.  These procedures were first promulgated in 1971.  36 Fed. Reg. 18186 (Sept. 10, 1971), and are revised when necessary.  *See, e.g.*, 75 Fed. Reg. 332050 (June 10, 2010).

18. The Attorney General also has created a website that provides information concerning the Section 5 process (http://www.usdoj.gov/crt/voting/).

19. The Attorney General provides a toll-free telephone number for submitting officials to contact Department of Justice staff members, who are available to guide those officials through the submission process.

20. The Attorney General's procedures have always provided covered jurisdictions with the option to request expedited consideration of voting changes.  28 C.F.R. § 51.34.  The Attorney General makes every effort to accommodate covered states and local jurisdictions that experience emergencies prior to elections that require expedited consideration of voting changes.  Situations calling for expedited consideration include events such as fires or natural disasters that affect which polling places can be used in an election, or pre-election litigation that threatens to stop the conduct of an election.  In appropriate circumstances, the Attorney General has made determinations within 24 hours or less of receipt of a submission.

21. The Attorney General also allows covered jurisdictions to send Section 5 submissions by overnight delivery.  Shelby County availed itself of this option in a 2007 submission, which the jurisdiction sent by overnight delivery to the Attorney General.

22. For some years, the Department has allowed jurisdictions to make submissions and submit additional information on pending Section 5 submissions by telefacsimile.  Shelby County availed itself of these options in 2004 and 2007, respectively, when it faxed a submission and additional information on pending Section 5 submissions to the Attorney General.

23. The Attorney General allows jurisdictions to make Section 5 submissions through a web-based application (http://wd.usdoj.gov/crt/voting/sec_5/evs/).

24. The Attorney General allows jurisdictions to submit additional information on pending Section 5 submissions by electronic mail.

**Termination of Coverage Under the Act's Special Provisons**

25. A jurisdiction may seek to terminate coverage under Section 4 of the Act, and thereby be relieved of the responsibility of complying with Section 5. 42 U.S.C. 1973b(a)(1).

26. Since 1965, of the approximately 943 county, parish, and township-level jurisdictions that conduct voter registration and were originally covered by Section 4, 57 of these jurisdictions (around 6.4%) have successfully bailed out and maintained their bailed out status.  One state and several other jurisdictions also successfully bailed out and were later re-covered by new coverage determinations or by new court findings.  Overall, since 1965, there have been 44 cases filed in which bailout was sought under Section 4(a).  The United States consented to bailout in 36 of those cases and bailout was granted (and in one of these cases bailout was later rescinded); in three cases, the United States opposed bailout and the court denied bailout; in five cases, the jurisdiction dismissed its bailout action voluntarily after the United States opposed the bailout request.

27. Since the new bailout standard enacted in 1982 went into effect in 1984, the United States has consented to bailout in 21 cases.  This included 18 cases involving county level jurisdictions (with 51 subjurisdictions) and three cases involving smaller jurisdictions. Hence, a total of 72 jurisdictions have been granted bailout since 1984.

28. If a jurisdiction requests termination of Section 4 coverage, the Attorney General conducts an independent investigation into whether the jurisdiction meets the statutory requirements.

29. The Attorney General has consented to every bailout action by a political subdivision filed since 1984, the effective date for the revised bailout provision.

30. Currently, the Attorney General is reviewing the informal requests of numerous jurisdictions to consent to terminate coverage under Section 4.

31. Since the Supreme Court's decision in *Nw. Austin Mun. Util. Dist. No. 1* v. *Holder*, 129 S. Ct. 2504, 2513-17 (2009), the Attorney General has consented to bailout by three smaller subjurisdictions, including the Northwest Austin Municipal Utility District itself.

32. The Attorney General's independent investigations involve interviewing minority contacts, reviewing electoral behavior within the jurisdiction, and researching whether there are any unsubmitted voting changes, including reviewing a jurisdiction's minutes for the last 10 years to see if the jurisdiction has implemented any changes affecting voting that have not received the requisite Section 5 preclearance.

33. Shelby County advises that it has implemented at least one voting change prior to submitting the change for review. The County admits that it held a referendum election on April 9, 2002, prior to obtaining Section 5 preclearance. Complaint at 14; Pl. Statement of Material Facts 3-4. The County subsequently submitted for review and the Attorney General ultimately precleared under Section 5 the law providing for the April 9, 2002, referendum election.

34. The Attorney General has entered into consent decrees allowing bailout under Section 4 with other jurisdictions including, but not limited to, Roanoke County, Virginia, Shenandoah County, Virginia, and Frederick County, Virginia, where the jurisdictions had implemented isolated voting changes prior to submitting them for Section 5 review.

35. The Attorney General has neither conducted discovery in this case nor conducted the statutorily-required independent investigation as to Shelby County's eligibility to terminate Section 4 coverage. Accordingly, the Attorney General is unable make a determination at this time as to whether Shelby County is eligible to terminate Section 4 coverage.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on November 15, 2010.

Robert S. Berman

7

# ATTACHMENT  A



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

August 25, 2008

Dan Head, Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama 35051

Dear Mr. Head:

This refers to 177 annexations, their designations to districts, and the 2008 redistricting plan for the City of Calera in Shelby County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your response to our May 7, 2008, request for additional information on June 24, 2008; additional information was received through August 18, 2008.

According to the 2000 Census, the City of Calera has a total population of 3,158 persons, of whom 628 (19.9%) were identified as African American. We understand that the city has experienced sizeable growth since that time, due primarily to residential development on the 177 annexations now under review. The city has provided estimates that its population is at 10,806 persons as of December 2006, of whom 20 percent are identified as African American.

The submitted annexations and redistricting plan would eliminate the city's sole majority African-American district. This district and the single-member district method of election were adopted pursuant to a consent decree approved 18 years ago by the court in Dillard v. City of Calera, Civil Action No. 2:87cv1167-MHT. Under this arrangement, the district has elected an African-American candidate for the last 20 years.

We have carefully considered the information you have provided, as well as information and materials from other interested parties. Under Section 5 of the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006, Public Law 109-246, 120 Stat. 577 (2006) ("Voting Rights Act"), the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. See also Georgia v. Ashcroft, 123 U.S. 2498 (2003); Procedures for the Administration of Section 5 of the Voting Rights Act, 28 C.F.R. 51.52 (c). As discussed further below, I cannot conclude that the city has sustained its burden of showing that the proposed change does not have a discriminatory purpose or effect. Therefore, based on the information available to us, I object to the voting changes on behalf of the Attorney General.

The United States Supreme Court has held that where annexations decrease minority voting strength, the reasons for the annexations must be objectively verifiable and legitimate,

-2-

and the post-annexation election system must fairly reflect the post-annexation voting strength of the minority community in the expanded city.  City of Richmond v. United States, 422 U.S. 358, 370-3 (1975); see also, City of Pleasant Grove v. United States, 479 U.S. 462 (1987); City of Port Arthur v. United States, 459 U.S. 159 (1982); City of Rome v. United States, 446 U.S. 156 (1980).

For 13 years, the city has failed to submit their adopted annexations for Section 5 review. Our Department has not received an annexation submission from the city since 1993, and the city admits that it is at fault for not submitting the 177 annexations. The only submission in the last 13 years was a proposed redistricting plan based on the 2000 Census which included no mention of the missing annexations.

In a similar situation, the United States Supreme Court in City of Rome v. United States, 446 U.S. at 186, made it clear that the current population of the annexations needs to be included for Section 5 review:

> Because Rome's failure to preclear any of these annexations caused a delay in federal review and placed the annexations before the District Court as a group, the court was correct in concluding that the cumulative effect of the 13 annexations must be examined from the perspective of the most current available population data.

The Supreme Court found that the City of Rome failed to provide the necessary information about total population, voting age population, and a racial composition for each. *Id.*  Likewise, the City of Calera also has failed to provide any reliable current population information about the 177 annexations here.

The demographic data provided by the city regarding total population and voting age population in the city as a whole is also unreliable.  Beginning with total population, the city used certificate of occupancy data to estimate total population in December 2006 of 10,806.  The city arrived at this number by decreasing the persons per household multiplier of 2.3 significantly from the 2000 Census without explanation.  Had the city used the 2000 Census number, the population estimate would have been approximately 12,000 persons.  The United States Census Bureau estimated the population in July 2006 at 8,329 and in July 2007 at 9,398. The city has not explained why its population estimate is substantially higher than the Census estimate.  Likewise, the city fails to provide reliable voting age population.

The estimate of racial composition in the city has no basis.  The city has claimed that the population is 20 percent black throughout the newly annexed areas, but no attempt has been made to determine their composition.  Simply because black population in the city was 20 percent of the population in 2000, does not mean that would be the percentage of black population in the newly annexed areas.  In fact, both city-wide voter registration and school data in recent years appear to show growth in the black population.  In failing to provide adequate numbers to evaluate the annexations and concomitant redistricting plan, the city fails to meet its burden of proof.

-3-

The City of Calera also appears to have failed to consider how the African-American population would be fairly reflected in the post-annexation election system moving forward. In March 2007, three months prior to the adoption of the proposed redistricting plan, the State of Alabama and plaintiffs filed a Joint Motion to Show Cause asking why the case should not be dismissed. In that order to show cause, they stated that the Alabama legislature in Act No. 2006-252 provide that the Calera City Council can increase the size of the city council under the single-member district method of election by general or local law in the future. The court dissolved the consent decree on May 9, 2007. According to the geographer hired by the city, he was willing to provide information for the city to consider alternative methods of election that would have provided black voters a better opportunity to elect a candidate of choice, but the city council expressed no interest in these alternatives.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. See 28 C.F.R. 51.44. In addition, you may request that the Attorney General reconsider the objection. See 28 C.F.R. 51.45. However, until the objection is withdrawn or a judgment from the District Court for the District of Columbia is obtained, the annexations and concomitant redistricting plan will continue to be legally unenforceable. Clark v. Roemer, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the City of Calera plans to take concerning this matter. If you have any questions, you should call Eric Rich (202-305-0107), an attorney in the Voting Section.

Sincerely,

*Grace Chung Becker*

Grace Chung Becker
Acting Assistant Attorney General

# ATTACHMENT  B

FILED

2008 OCT 24  PM 3: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )          CV-08-BE-1982-S
THE CITY OF CALERA, ALABAMA;      )
GEORGE W. ROY, Mayor of City of   )
Calera; JERRY DAVIS, ERNEST       )
MONTGOMERY, BOBBY JOE PHILLIPS, )
DAVID BRADSHAW and MILE           )
ROBERSON, Council members of City of )
Calera; LINDA STEELE, City Clerk for )
City of Calera;                   )
                                  )
          Defendants.             )
                                  )
                                  )
_____ )

## COMPLAINT

The United States of America, plaintiff herein, alleges:

1. This action is brought on behalf of the United States by the Attorney General pursuant to Sections 5 and 12(d) of the Voting Rights Act of 1965, as amended 42 U.S.C. 1973c and 1973j(d), and pursuant to 28 U.S.C. 2201, to enforce rights guaranteed by Section 5 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. 1973c, 42 U.S.C. 1973j(f), and 28 U.S.C. 1345. Venue properly lies in this Court under 28 U.S.C. 1391(b)(1), (2). The City of Calera, Alabama, lies within this Judicial District and is the place

where the events giving rise to the claim occurred. Defendant City of Calera officials also reside

and perform their official duties in this Judicial District.  Upon information and belief, all

Defendants reside in the State of Alabama.

<u>**PARTIES**</u>

3.  The Attorney General, representing plaintiff United States of America, is

charged by the Voting Rights Act with the statutory responsibility both for the Act's

Administrative preclearance process, and with bringing actions in Federal court to enforce the

Act's requirements. <u>See</u> 42 U.S.C. 1973j(d).

4.  Defendant City of Calera, Alabama, is charged with the responsibility of

ensuring that its elections laws, as applied, comply with Section 5 of the Voting Rights Act of

1965, as amended, 42 U.S.C. 1973c ("Section 5").

5.  Defendant George W. Roy is the Mayor of the City of Calera and in that

capacity serves as the head of the Executive Branch of city government.  Defendant Roy is

charged with the responsibility of legislating and enforcing compliance with city ordinances,

including drawing voting districts and annexations pertaining to the establishment of city

municipal election districts.  Defendant Roy is sued in his official capacity.

6.  Defendants Jerry Davis, Ernest Montgomery, Bobby Joe Phillips, David

Bradshaw and Mile Roberson are Council Members of the City of Calera City Council and in

that capacity charged with the responsibility of legislating ordinances, including drawing voting

districts and annexations pertaining to the establishment of city municipal election districts.

Defendants Davis, Montgomery, Phillips, Bradshaw and Roberson are sued in their official

capacities.

2

7.  Defendant Linda Steele is the City Clerk for the City of Calera and in such capacity presides over the election process, including voter registration, candidate qualifying, running of the municipal elections, and certifies results of elections as well as actions taken by the City of Calera City Council.  Defendant Steele is sued in her official capacity.

## ALLEGATIONS

8.  The defendants named herein have authority under Alabama law to enact or administer voting qualifications or prerequisites to voting, or standards, practices, or procedures with respect to voting different from those in force or effect on November 1, 1964.

9.  The City of Calera, Alabama, is subject to the preclearance requirements of Section 5.

10. Section 5 states that any "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" different from that in force or effect in the City of Calera, Alabama, on November 1, 1964, may not be lawfully implemented unless the State of Alabama, or other appropriate authority with the power to enact or administer voting changes such as the City of Calera, obtains a declaratory judgment from the United States District Court for the District of Columbia that the changes does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. However, such change may be implemented without such judgment if it has been submitted to the United States Attorney General, and the Attorney General has not interposed an objection within sixty days.  42 U.S.C. 1973c.

11. According to the U.S. Census Bureau, in 2000, Calera had 3,158 residents, of whom 628 (19.9%) are African American, 60 (1.9%) are Hispanic, 27 (0.9%) are Native

American, and 18 (0.6%) are Asian. The voting-age population totaled 2,314 residents, with 404 (17.5%) African Americans, 33 (1.4%) Hispanics, 22 (1.0%) Native Americans, and 9 (0.4%) Asians. According to the Census Bureau, as of July 2004, the City of Calera's population was 5,918; as of July 2006, the population was 8,329; and as July 2007, the population estimate indicates there is a population of 9,398. The City of Calera estimated that as of December 2006, its populations was 10,806, of whom 20.24 percent are African American.

      12. As of August 10, 2004, the City of Calera had 3,027 registered voters, of whom 400 (13.2%) were identified as African American, and 43 (1.4%) identified as "other." As of July 30, 2008, Shelby County, wherein the City of Calera is located, reported that there are 4,680 registered voters in the City of Calera, of whom 773 (16.5%) are African American, 11 (0.2%) are Hispanic, 1 (0.02%) is Native American, 3 (0.1%) are Asian, and 84 (1.7%) are listed as "other."

      13. The City of Calera is governed by a mayor and five council members. The mayor is a voting member of the Council and is elected at-large for a four-year term. Council members are elected from single-member districts to serve concurrent four-year terms. General elections occur in August of Presidential election years.

      14. The City of Calera's five single-member districts were created by a consent decree in the case of Dillard v. City of Calera, M.D. Alabama, Civil Action No. 2:87cv1167-MHT(WO, in which the Court found evidence of racially polarized voting. The parties agreed to change the City of Calera's form of government for the election of its Council members from at-large, numbered posts to the current five single-member district plan, with one majority African American district. The consent decree was entered on January 3, 1990.

4

15. On March 7, 2007, the State of Alabama and plaintiffs in the case filed a Joint Motion to Show Cause asking why the case should not be dismissed. In that order to show cause, the parties argued that the Alabama legislature in Act No. 2006-252 provided that the City Council for the City of Calera could thereafter increase the size of the city council under the single-member district method of election by general or local law. Act No. 2006-252 also provided authority for the city to have single-member districts. Given the ability of the city to change the size of its body with the single-member district method of election, there was no reason for the court to retain jurisdiction to administer the consent decree, and thus, the Court dismissed the case on May 9, 2007.

16. The City of Calera submitted for review under Section 5 177 annexations to the district boundaries and jurisdiction of the City that had been implemented between 1993 and 2008. The City of Calera also submitted for review under Section 5 a concomitant redistricting plan which provided for a change in the boundaries of the City Council's voting districts. The proposed redistricting maintained five single-member districts, but had the effect of dissolving the only majority-minority district. The redrawn district 2 reduced the African American registered voters in the district from 70.9% to 29.5%.

17. On August 25, 2008, the Attorney General interposed a timely objection under Section 5 to the submitted annexations to the City of Calera's redistricting plan and the 177 annexations on the grounds that the submitting authority had failed to meet its burden of establishing that the proposed changes would not have a discriminatory purpose and effect on minority voters. The objection letter is attached as Exhibit A.

18. The City of Calera held an election for mayor and council members on

5

August 26, 2008 and a run-off election on October7, 2008 using the objected-to district boundaries and electorate that included the objected-to annexations.

19.  Defendants have not obtained a judgment from the United States District Court for the District of Columbia pursuant to Section 5 declaring that the proposed districts and annexations have neither the purpose nor the effect of denying or abridging the right to vote on account of race or color.

20. The failure of defendants to obtain Section 5 preclearance of the proposed district boundaries and annexations renders these voting changes legally unenforceable.

21. Unless enjoined by this Court, defendants will continue to violate the Voting Rights Act by continuing to administer and implement the objected-to change in district boundaries and electorate by certifying the results of the August 26, 2008 and October 7, 2008 elections.   The prevailing candidates will be sworn into office on November 3, 2008.

WHEREFORE, the United States of America prays that a court of three judges be convened to hear this action pursuant to 42 U.S.C. 1973c and 28 U.S.C. 2284 and thereafter enter a judgment:

(1) Declaring that the changes in district boundaries and electorate for City of Calera elections constitute changes affecting voting within the meaning of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c, and are legally unenforceable because they have not received the requisite preclearance under Section 5 of the Voting Rights Act;

(2) Declaring that implementation of the changes in district boundaries and electorate for City of Calera elections violates Section 5 of the Voting

6

Rights Act of 1965, as amended, 42 U.S.C. 1973c; and

(3)     Enjoining defendants, their successors in office, their agents and all

persons acting in concert or participation with them, from administering or

implementing the district boundaries and electorate to which the Attorney

General has interposed a timely objection unless and until preclearance

under Section 5 of the Voting Rights Act of 1965, as amended, 42,

U.S.C.1973c, is obtained; and

(4)     Enjoining defendants, their successors in office, their agents and all

persons acting in concert or participation with them, from certifying the

results of the August 26, 2008, and October 7, 2008 municipal elections,

which was based on the district boundaries and electorate to which the

Attorney General has interposed a timely objection unless and until

preclearance under Section 5 of the Voting Rights Act of 1965, as

amended, 42, U.S.C.1973c, is obtained; and

(5)     Enjoining defendants, their successors in office, their agents and all

persons acting in concert or participation with them, from swearing in the

prevailing candidates on November 3, 2008, which would be based on the

district boundaries and electorate to which the Attorney General has

interposed a timely objection unless and until preclearance under Section 5

of the Voting Rights Act of 1965, as amended, 42, U.S.C.1973c.

Plaintiff further prays that this Court grant such additional relief as the interests of justice may

require, together with the costs and disbursements of this action.

MICHAEL B. MUKASEY
Attorney General


GRACE CHUNG BECKER
Acting Assistant Attorney General
Civil Rights Division


ALICE H. MARTIN                    Sharon D. Kelly
United States Attorney             Chief, Civil Division
                                   U.S. Attorneys Office


CHRISTOPHER COATES
Chief, Voting Section
TIMOTHY F. MELLETT
CHRISTY A. McCORMICK
Attorneys, Voting Section
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Room NWB-7254
Washington, DC 20530
Telephone: (202) 305-0609
Facsimile: (202) 307-3961
christy.mccormick@usdoj.gov

# ATTACHMENT  C

FILED
2008 Oct-29 PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

2008 OCT 24  PM 3:05

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| THE CITY OF CALERA, ALABAMA, ) | **CONSENT DECREE** |
| et al.; ) | |
| Defendants. ) | Three-Judge District Court |
| ) | |
| _____ ) | CV-08-BE-1982-S |

The Attorney General of the United States of America ("Attorney General") filed this action pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c (Section 5"). The Court has jurisdiction of this action pursuant to 28 U.S.C. 1345 and 42 U.S.C. 1973C and 1973j(f). In accordance with the provisions of 42 U.S.C. 1973c and 28 U.S.C. 2284, the Section 5 claim must be heard and determined by a court of three judges. The events relevant to this action occurred in the City of Calera, Alabama, which is located in the United States District Court for the Northern District of Alabama, Southern Division. See 28 U.S.C. 124.

The Attorney General, representing plaintiff United States of America, is charged by the Voting Rights Act with the statutory responsibility both for the Act's administrative preclearance process, and with bringing actions in Federal court to enforce the Act's requirements. See 42 U.S.C. 1973j(d).

The State of Alabama and its subdivisions are subject to the preclearance requirements of Section 5. See 42 U.S.C. 1973c; see also 28 C.F.R. Part 51, Appendix. Section 5 provides that any "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" different from that in force or effect in the State of Alabama or its subdivisions

on November 1, 1964, may not be lawfully implemented unless such change has been submitted

to the Attorney General, and the Attorney General has not interposed an objection within sixty

days, or the jurisdiction obtains a declaratory judgment from the United States District Court for

the District of Columbia that the change does not have the purpose and will not have the effect of

denying or abridging the right to vote on account of race, color, or membership in a language

minority group. See 42 U.S.C. 1973c.

Defendant City of Calera ("City") is a subdivision of the State of Alabama and is

therefore subject to the Section 5 preclearance requirements. The City is governed by a mayor,

elected at large, and a five-member city council, elected from five single-member districts, each

for four-year concurrent terms.

Defendant Mayor and City Council members are the governing body for the City and,

along with the City Clerk, are responsible for implementing and administering voting changes

and conducting elections for the City.

On March 18, 2008, the City submitted for Section 5 review 177 annexations to the

district boundaries of the City that had been implemented between 1993 and 2008 and a

concomitant redistricting plan which provided for a change in the boundaries of the City

Council's voting districts. On May 7, 2008, the Attorney General informed the City of Calera

that determination was not possible in that supplementary information was required. On July 24,

2008, the City submitted that additional information to enable the Attorney General to conduct

his review.

On August 25, 2008, the Attorney General interposed a timely objection under Section 5

to the submitted annexations to the City of Calera's redistricting plan and the 177 annexations on

2

the grounds that the submitting authority had failed to meet its burden of establishing that the proposed changes would not have a discriminatory purpose or effect on minority voters.

On August 26, and October 7, 2008, the City proceeded with municipal elections using the district boundaries and electorate that included the annexations objected to by the Attorney General under Section 5 of the Voting Rights Act.

To avoid protracted and costly litigation, the parties have agreed that this lawsuit should be resolved through the terms of this Consent Decree ("Decree"). Accordingly, the United States and the Defendants hereby consent to the entry of this Decree, as indicated by the signatures of counsel at the end of this Decree. The parties waive a hearing and entry of findings of fact and conclusions of law on all issues involved in this matter. Each party shall bear its own costs and fees. Defendants are committed to fully complying with all the Section 5 preclearance requirements in the future. Accordingly, the United States and Defendants stipulate and agree to the following:

1.    The City of Calera, Alabama is a covered jurisdiction within the meaning of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c.

2.    The 177 annexations and the concomitant redistricting plan submitted by the City of Calera to the Attorney General constitute voting changes within the meaning of Section 5. The voting changes are legally unenforceable unless they receive the requisite preclearance under Section 5 of the Voting Rights Act. See Clark v. Roemer, 500 U.S. 649 (1991); 28 C.F.R. 51.10.

3.    On August 25, 2008, the Attorney General interposed a timely objection to the 177 annexations and the concomitant redistricting plan submitted by the City of Calera. These annexations and the redistricting plan have not received preclearance from the United States

3

District Court for the District of Columbia or the United States Attorney General, as required under Section 5 of the Voting Rights Act.

    4.    Defendants' conducted the August 26, and October 7, 2008, City of Calera municipal elections based on the unprecleared voting changes, including the annexations and the concomitant redistricting plan. The candidates who prevailed in those elections would be sworn into office on November 3, 2008.

    5.    Irreparable harm would be caused by Defendants' continued administration and implementation of the unprecleared voting changes.

    6.    On September 16, 2008, Defendants sought reconsideration of the August 25, 2008, objection, and the Attorney General has committed to providing a decision by no later than November 17, 2008. The Attorney General will issue a decision by October 31, 2008, if it is possible.

Accordingly, it is hereby ORDERED, ADJUDGED, AND DECREED that:

    1.    In the event that the Attorney General withdraws the August 25, 2008, objection, the United States agrees that the necessary Section 5 preclearance will have been obtained, and the candidates prevailing in the August 26, and October 7, 2008 elections may be sworn into office.

    2.    In the event that the Attorney General has not made a decision by October 31, 2008, the Defendants, their agents, their successors in office, and all persons acting in concert with them, are ENJOINED from allowing the candidates prevailing in the August 26, and October 7, 2008 elections to be sworn into office, unless the Attorney General subsequently withdraws the August 25, 2008 objection, or unless the United States District Court for the

4

District of Columbia preclears the annexations and redistricting plan.

3.    In the event that the Attorney General continues the August 25, 2008, objection, Defendants, their agents, their successors in office, and all persons acting in concert with them, are PERMANENTLY ENJOINED from allowing the candidates prevailing in the August 26, and October 7, 2008 elections to be sworn into office, unless the Attorney General subsequently withdraws the August 25, 2008 objection, or unless the United States District Court for the District of Columbia preclears the annexations and redistricting plan.

4.    Defendants, their agents, their successors in office, and all persons acting in concert with them, are ENJOINED from administering or attempting to administer any election using the 177 annexations and concomitant redistricting plan until Defendants obtain Section 5 preclearance.

5.    If the August 25, 2008 objection is not withdrawn, Defendants shall reschedule the August 26, and October 7, 2008 municipal elections to a special election date in 2009. Defendants shall follow state law requirements in conducting the election, and Defendants shall submit the special election date for the necessary Section 5 preclearance.

6.    This decree is final and binding between the parties and their successors in office regarding the claims raised in this action. This Decree shall remain in effect through December 31, 2009, or until the annexations and redistricting plan are precleared, whichever occurs first.

7.    The Court shall retain jurisdiction of this case to enter further relief or such other orders as may be necessary for the effectuation of the terms of this agreement and to ensure compliance with Section 5 of the Voting Rights Act.

5

Agreed to this 29 day of October, 2008.

AGREED AND CONSENTED TO:

For Plaintiff:

MICHAEL B. MUKASEY
Attorney General

GRACE CHUNG BECKER
Acting Assistant Attorney General
Civil Rights Division

CHRISTOPHER COATES
Chief, Voting Section
TIMOTHY F. MELLETT
CHRISTY A. McCORMICK
Attorneys
United States Department of Justice
Civil Rights Division
Voting Section
950 Pennsylvania Avenue, NW
Room NWB-7254
Washington, DC 20530
Telephone: (202) 305-0609
Facsimile: (202) 307-3961
christy.mccormick@usdoj.gov

ALICE H. MARTIN
United States Attorney

Sharon D. Kelly
Chief, Civil Division
U. S. Attorneys Office

For Defendants:

FRANK ELLIS, Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama 35051

## JUDGEMENT AND ORDER

This Court, having considered the United States' claim under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c, and having determined that it has jurisdiction over this claim, has considered the terms of the Consent Decree, and hereby enters the relief set forth above and incorporates those terms herein.

ENTERED and ORDERED this 29th day of October, 2008.

UNITED STATES CIRCUIT JUDGE

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT JUDGE

# ATTACHMENT  D



**U. S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

November 17, 2008

Frank C. Ellis, Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama  35051

Dear Mr. Ellis:

This refers to your request that the Attorney General reconsider and withdraw the August 25, 2008, objection interposed under Section 5 of the Voting Rights Act, 42 U.S.C. 1973c, to 177 annexations, their designation to districts, and the 2008 redistricting plan for the City of Calera in Shelby County, Alabama. We received your request on September 16, 2008, with additional information received through November 7, 2008.

We have reconsidered our earlier determination in this matter. We based this review on the information and arguments you have advanced in support of your request, along with the other information in our files and comments received from other interested parties. The city submitted data from a demographic survey conducted subsequent to our objection. The survey purports to indicate population, by race, that has been added to the city as a result of post-2000 residential development. The survey was sent to 3,055 households in 32 new housing developments. There were 21 new housing developments in the annexed areas and 11 new housing developments within the 1993 boundaries of the city. The survey requested information about total population, voting age population, registered voters, and whether survey respondents were "white" or "non-white." The city received 990 responses, a 31 percent return rate. According to survey data, 12.7 percent of the population in respondent households is nonwhite. The city cites this result as evidence that it would have been impossible to reapportion the city's five districts while maintaining the black majority in District 2.

Although the information provided does increase the understanding of the population growth in the City of Calera, the city has failed to provide information necessary to the review of

-2-

the submitted changes. We have requested that the city provide reliable estimates for the entire area of annexed territory. These projections should include the total and voting-age population, broken out by race. Our guidelines identify the information necessary to the review of annexations and redistricting plans. In particular, 28 C.F.R. 51.28 (a)(1) requires that jurisdictions provide the "Total and voting-age population of the affected area before and after the change, by race and language group;" and subsection (a)(3) requires "Any estimates of population, by race and language group, made in connection with the adoption of the change." The jurisdiction failed to provide these estimates.

The city did not use the survey results to estimate the population for the districts in the proposed redistricting plan. The city also failed to provide the racial breakdown in each district. This would have allowed the city to determine if adding or removing different developments may have avoided the resulting elimination of the ability of black voters to elect a candidate of choice.

The city also has failed to address a key concern as to whether the survey data supports the city's assertion that a less retrogressive district plan could not have been drawn. The results of the August 26, 2008, election demonstrate the impact of the changes on the minority franchise in the city. Prior to this election, voters in District 2 had elected an African-American councilman for 20 years. In the election under the objected-to district lines, the African-American incumbent was defeated, although the prevailing candidate has been enjoined by a three-judge court from taking office. *United States v. City of Calera*, 2:08-cv-1982-KOB (N.D. Ala.) (October 29, 2008). The city has not provided any analysis demonstrating that it could not develop a proposed plan that would increase the black population in District 2. Thus, the city has failed to demonstrate that the retrogression was unavoidable.

Finally, the city has failed to consider alternative election methods for mitigating the impact of the proposed changes. The Supreme Court has held that where annexations decrease minority voting strength, the post-annexation election system must fairly reflect the post-annexation voting strength of the minority community in the expanded city. *City of Richmond* v. *United States*, 422 U.S. 358, 370-3 (1975); see also, *City of Pleasant Grove* v. *United States*, 479 U.S. 462 (1987); *City of Port Arthur* v. *United States*, 459 U.S. 159 (1982); *City of Rome* v. *United States*, 446 U.S. 156 (1980).

In light of these considerations, I remain unable to conclude that the City of Calera has carried its burden of showing that the submitted changes have neither a discriminatory purpose nor a discriminatory effect. *See Georgia v. United States*, 411 U.S. 526 (1973): 28 C.F.R. 51.52. Therefore, on behalf of the Attorney General, I must decline to withdraw the objection to the 177 annexations, their designations to districts, and the 2008 redistricting plan.

-3-

As we previously advised, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed changes neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. We remind you that unless the objection is withdrawn or a judgment from the District Court for the District of Columbia is obtained, the annexations, their designations and the concomitant redistricting plan will continue to be legally unenforceable. *Clark v. Roemer*, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the City of Calera plans to take concerning this matter. If you have any questions, you should call Mr. Eric Rich (202-305-0107), an attorney in the Voting Section.

Because the Section 5 status of the changes is before the Court in *United States v. City of Calera*, 2:08-cv-1982-KOB (N.D. Ala.), we are providing a copy of this letter to the court and counsel of record in that case.

Sincerely,

Grace Chung Becker
Acting Assistant Attorney General

# ATTACHMENT  E



**U. S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                                      *Washington, D.C. 20530*

March 24, 2009

Frank C. Ellis, Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama  35051

Dear Mr. Ellis:

This refers to your second request that the Attorney General reconsider and withdraw the August 25, 2008, objection interposed under Section 5 of the Voting Rights Act, 42 U.S.C. 1973c, to 177 annexations, their designation to districts, and the 2008 redistricting plan for the City of Calera in Shelby County, Alabama.  We received your request on January 23, 2009; supplemental information was received through March 10, 2009.

On September 16, 2008, the Department received the city's first request for reconsideration of the August 25, 2008 objection.  On November 17, 2008, the Department continued the August 25, 2008 objection, finding that the city failed to provide necessary information in a number of key areas.  We received your second request for reconsideration on January 23, 2009.  In this latest reconsideration request, the city submitted analysis of the demographic survey data and responses to our November 17, 2008 letter.

Having reviewed these materials, I remain unable to conclude that the City of Calera has carried its burden of showing that the submitted changes have neither a discriminatory purpose nor a discriminatory effect.  See *Georgia* v. *United States*, 411 U.S. 526 (1973): 28 C.F.R. 51.52.  Therefore, on behalf of the Attorney General, I must again decline to withdraw the objection to the 177 annexations, their designations to districts, and the 2008 redistricting plan.

According to the 2000 Census, the City of Calera has a total population of 3,158 persons, of whom 628 (19.9%) were identified as African American.  The city has experienced sizeable growth since that time, due primarily to residential development on the 177 annexations now under review.  In the latest reconsideration request, the city's analysis showed, "approximately 13%, or 995 persons, of an estimated 7, 648 residents who have moved into the City of Calera

-2-

are minority residents." January 22, 2009 letter, Exhibit 1 at 2. If these figures are added together, the total population is 10,806, of whom 1,623 (15%) were identified as non-white.[1]

The city states that the survey data demonstrates a dramatic drop in the city's nonwhite population as a percentage of the city as a whole since the 2000 Census. The city also has revised the numbers for its proposed districts based on new analysis by its geographer. The analysis shows that the proposed District 2 would have a 31.5 percent nonwhite population, a drop from the city's estimate in its initial submission.

Although the city claims that African-Americans have become a smaller percentage of the population as a whole over the years, the city does not adequately account for the fact that, both citywide voter registration and school data in recent years have shown that the black population has become a larger percentage of the population. For example, in 2004 the non-white voter registration was 14.7 percent and the black registration was 13.2 percent of total registrants. Registration data obtained from the November 2008 general election show that non-white registration is 21.3 percent of Calera's registrants and black registrants comprise nearly 19 percent of the total. In contrast, the city's estimates show a total minority population of 15 percent. There has been no evidence presented to show that black voters are more likely to register to vote than white voters in the City of Calera.

The question of reliability is highly relevant in light of the fact that the submitted annexations and redistricting plan would eliminate the city's sole majority African-American district. This district and the single-member district method of election were adopted pursuant to a consent decree approved 18 years ago by the court in *Dillard* v. *City of Calera,* Civil Action No. 2:87cv1167-MHT. As you are aware, the black incumbent lost his bid for reelection in an election that was held under the new district lines, even though the city had not obtained Section 5 preclearance for the annexations and districting plan.

Once again, the city has failed to appropriately consider alternative election methods for mitigating the impact of the proposed changes. The Supreme Court has held that where annexations decrease minority voting strength, the post-annexation election system must fairly reflect the post-annexation voting strength of the minority community in the expanded city. *City of Richmond* v. *United States*, 422 U.S. 358, 370-3 (1975); see also, *City of Pleasant Grove* v. *United States*, 479 U.S. 462 (1987); *City of Port Arthur* v. *United States*, 459 U.S. 159 (1982); *City of Rome* v. *United States*, 446 U.S. 156 (1980).

---

[1] The city failed to estimate the total population and the minority population in a consistent manner. The city arrived at a total population estimate by using 2000 Census total population and adding an estimate for the total population based upon building permit and certificate of occupancy data from 2006. The city determined the estimate for the percentage of minority population by using the survey data from 2008. The city then used the minority population percentage from the survey and applied it to the total population data from 2006 to arrive at the number of minority persons in the five proposed districts.

-3-

The consent decree in *Dillard* v. *City of Calera* was dissolved because, *inter alia*, the State of Alabama had adopted law that allowed jurisdictions to maintain minority representation by increasing the size of the governing body or by other methods. The city can increase the number of seats to provide representation and then draw a district that will allow black voters to elect a candidate of choice. The city states that it could only achieve a majority-minority district by implementing a 15-district plan. Our analysis of registered voters show that a viable district is possible under an eight-district plan. Moreover, our analysis suggests that alternatives are available even under a five-district plan to mitigate retrogression.

As we previously advised, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed changes neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. We remind you that unless the objection is withdrawn or a judgment from the District Court for the District of Columbia is obtained, the annexations, their designations and the concomitant redistricting plan will continue to be legally unenforceable. *Clark* v. *Roemer*, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the City of Calera plans to take concerning this matter. If you have any questions, you should call Mr. Eric Rich (202-305-0107), an attorney in the Voting Section.

Because the Section 5 status of the changes is before the Court in *United States* v. *City of Calera*, 2:08-cv-1982-KOB (N.D. Ala.), we are providing a copy of this letter to the court and counsel of record in that case.

Sincerely,

Loretta King

Loretta King
Acting Assistant Attorney General

# ATTACHMENT  F



**U. S. Department of Justice**

Civil Rights Division

_Office of the Assistant Attorney General_          _Washington, D.C. 20530_

**SEP 2 5 2009**

Dan Head, Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama  35051

Dear Mr. Head:

This refers to your third request that the Attorney General reconsider and withdraw the August 25, 2008, objection to 177 annexations interposed under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c.  This also refers to the interim voting plan for the 2009 municipal election, which consists of a change in method of election from five single-member districts to an at-large, limited voting plan, an increase in the number of council members from five to six, and a plurality vote requirement; and five additional annexations with one technical correction to a previously submitted annexation, for the City of Calera in Shelby County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. We received your submission on July 29, 2009; supplemental information was received through August 25, 2009.

On September 16, 2008, the Department received the city's first request for reconsideration of the August 25 objection. On November 17, 2008, the Department continued the objection, finding that the city failed to provide necessary information in a number of key areas.  We received your second request for reconsideration on January 23, 2009. On March 24, 2009, the Department once again continued the objection, with similar findings.

In this latest reconsideration request, the city submitted an interim voting plan for the 2009 municipal election that will be used in lieu of a single-member district plan.  We have reconsidered our earlier determination regarding the 177 annexations based on the information and arguments you have advanced in support of your request, along with other information in our files and comments received from other interested persons.

The city's adoption of the at-large, limited voting plan with six councilmembers for the 2009 municipal election reflects a good faith effort to effectively remedy the concerns raised in our objection and subsequent objection continuations.   The interim plan does not depend upon the location of minority populations in order to provide African-American voters a meaningful opportunity to elect a candidate of choice. Instead, the voting system proposed here will preserve African-American voting strength so long as these voters equal or exceed a specific percentage of the electorate, known as the "threshold of exclusion."  Our review of voter registration and turnout data shows that the interim voting plan will provide African-American voters with the opportunity to elect a candidate of choice to the city council.

-2-

Accordingly, pursuant to the Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, 28 C.F.R. 51.48(b), the objection interposed against the 177 annexations is hereby withdrawn.   No other portion of the August 25 objection has been withdrawn (i.e. the 2008 redistricting plan or the designation of the 177 annexations to districts).

With regard to the interim voting plan for the 2009 municipal election, which consists of a change in method of election from five single-member districts to an at-large, limited voting plan, an increase in the number of council members from five to six, and a plurality vote requirement; as well as five additional annexations with one technical correction to a previously submitted annexation, the Attorney General does not interpose any objection to the specified changes.  Approval of this interim plan does not change the benchmark (submission no 2004-3101) for any plans submitted after the 2010 Census.  In addition, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of all of the submitted changes.  28 C.F.R. 51.41.

Sincerely,

Loretta King
Acting Assistant Attorney General