**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHELBY COUNTY, ALABAMA

                  Plaintiff,

v.

ERIC H. HOLDER, JR.,
in his official capacity as
ATTORNEY GENERAL OF THE
UNITED STATES, et al.,

                  Defendants.

Civil Action No. 1:10-cv-00651-JDB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Bert W. Rein* (D.C. Bar No. 067215)
William S. Consovoy (D.C. Bar No. 493423)
Thomas R. McCarthy (D.C. Bar No. 489651)
Brendan J. Morrissey (D.C. Bar No. 973809)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

Frank C. Ellis, Jr.
WALLACE, ELLIS, FOWLER & HEAD
113 North Main Street
Columbiana, AL  35051
Tel.: (205) 669-6783
Fax: (205) 669-4932

*Counsel of Record

## <u>TABLE OF CONTENTS</u>

**Page**

I.     BACKGROUND ................................................................................................................1

II.    ARGUMENT ...................................................................................................................3

    A.    Shelby County is Eligible For Fees and Litigation Expenses Under Section
        1973*l*(e) ................................................................................................................3

        1.    This is An Action to Enforce the Voting Guarantees of the Fourteenth
              and Fifteenth Amendments .........................................................................3

        2.    Shelby County is the Prevailing Party ........................................................7

    B.    An Award of Fees is Appropriate in this Case ........................................................8

    C.    Shelby County's Fee Request is Based on a "Reasonable" Lodestar Figure
        and is Supported By Contemporaneous Billing Records.......................................10

        1.    The Claimed Rates are "Reasonable" ......................................................10

        2.    The Claimed Number of Hours is "Reasonable".......................................13

        3.    The Claimed Litigation Expenditures are Reasonable..............................16

III.   CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Blum v. Stenson*,
    465 U.S. 886 (1984) .............................................................................................9, 15

*Bond v. United States*,
    131 S. Ct. 2355 (2011) ..........................................................................................5, 6

*Carmel & Carmel PC v. Dellis Const., Ltd.*,
    858 F. Supp. 2d 43 (D.D.C. 2012) ..........................................................................16

*Castro County v. Crespin*,
    101 F.3d 121 (D.C. Cir. 1996) ..................................................................................6

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978) ...............................................................................................8, 9

*Commissioners Court of Medina County, Texas v. United States*,
    683 F.2d 435 (D.C. Cir. 1982) ..........................................................................6, 7, 8

*Donnell v. United States*,
    682 F.2d 240 (D.C. Cir. 1982) ..................................................................................6

*In re Donovan*,
    877 F.2d 982 (D.C. Cir. 1989) ................................................................................13

*Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Phila. and Vicinity*,
    799 F.2d 45 (3d Cir. 1986) ........................................................................................9

*Georgia v. Ashcroft*,
    539 U.S. 461 (2003) ...................................................................................................6

*Grano v. Barry*,
    783 F.2d 1104 (D.C. Cir. 1986) ................................................................................7

*Hastert v. Illinois State Bd. of Election Comm'rs*,
    28 F.3d 1430 (7th Cir. 1993) .....................................................................................8

*Heller v. District of Columbia*,
    832 F. Supp. 2d 32 (D.D.C. 2011) ..........................................................................14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................................7, 8, 10

*Lawrence v. Bowsher*,
   931 F.2d 1579 (D.C. Cir. 1991) ...................................................................................8

*\*McKesson Corp. v. Islamic Republic of Iran*,
   935 F. Supp. 2d 34 (D.D.C. 2013) ..............................................................11, 12, 14

*\*Miller v. Holzmann*,
   575 F. Supp. 2d 2 (D.D.C. 2008) ..................................................10, 11, 12, 14, 15

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ....................................................................................................10

*National Federation of Independent Business v. Sebelius*,
   132 S. Ct. 2566 (2012) .................................................................................................4

*Novak v. Capital Management & Development Corp.*,
   496 F. Supp. 2d 156 (D.D.C. 2007) ..........................................................................14

*Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*,
   718 F.2d 628 (4th Cir. 1983) .......................................................................................9

*Save Our Cumberland Mountains, Inc. v. Hodel*,
   857 F.2d 1516 (D.C. Cir. 1988) ................................................................................10

*Shelby County, Ala. v. Holder*,
   133 S. Ct. 2612 (June 25, 2013)........................................................................2, 7, 13

*Shelby County, Ala. v. Holder*,
   133 S. Ct. 594 (Nov. 9, 2012) .....................................................................................2

*Shelby County, Ala. v. Holder*,
   679 F.3d 848 (D.C. Cir. 2012) ..................................................................................2, 7

*Shelby County, Ala. v. Holder*,
   811 F. Supp. 2d 424 (D.D.C. 2011) ...................................................................2, 7, 13

*Shelby County, Ala. v. Holder*,
   270 F.R.D. 16 (D.D.C. 2010).......................................................................................1

*Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*,
   705 F.2d 1502 (9th Cir. 1983) .....................................................................................9

*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966).....................................................................................................2

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007)...................................................................................16

**FEDERAL STATUTES**

5 U.S.C. § 5596 ................................................................................................................8

5 U.S.C. § 7701 ................................................................................................................8

7 U.S.C. § 2157 ................................................................................................................8

15 U.S.C. § 15 ..................................................................................................................8

15 U.S.C. § 1667b .............................................................................................................8

15 U.S.C. § 2310 ..............................................................................................................8

29 U.S.C. § 216 ................................................................................................................8

29 U.S.C. § 2617 ..............................................................................................................8

31 U.S.C. § 3730 ..............................................................................................................8

42 U.S.C. § 1973b ...................................................................................................1, 2, 3, 7

42 U.S.C. § 1973c ............................................................................................................1

42 U.S.C. § 1973ee-4 .........................................................................................................9

42 U.S.C. § 1973*l* ..............................................................................................1, 3, 6, 7, 8, 16

**CONSTITUTIONS**

Fourteenth Amendment ......................................................................................................4

Fifteenth Amendment ........................................................................................................4

**RULES**

Local Civil Rule 54.2 .......................................................................................................14

Fed. R. Civ. P. 54 .......................................................................................................1, 13

**OTHER AUTHORITIES**

Dkt. 635-664, *Animal Welfare Inst. v. Feld Entertainment, Inc.*,
    No. 1:03-cv-2006-EGS-JMF (D.D.C.) (filed Oct. 21, 2013) ...................................................12

Black's Law Dictionary (4th ed. 1968) ...................................................................................3

Black's Law Dictionary (9th ed. 2009) ...................................................................................3

Tr. of Oral Argument, *Nw. Austin Mun. Util. Dist. No. 1 v. Holder*,
No. 08-322 (Apr. 29, 2009) ................................................................................................16

Webster's Third New International Dictionary (1981)...................................................................3

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 1973*l*, Plaintiff Shelby County, Alabama ("Shelby County" or "Plaintiff") hereby requests that the Court award it attorney's fees in the amount of $2 million and litigation expenses in the amount of $10,000.00.  As set forth below, a fee award is warranted in this case because: this is an "action or proceeding to enforce the voting guarantees of the fourteenth [and] fifteenth amendment[s]"; Shelby County is the "prevailing party" in this action; no special circumstances warrant a denial; and the results obtained were exceptional.  Nevertheless, the United States and Defendant-Intervenors have indicated that they will oppose Shelby County's fee petition.

## I.  BACKGROUND

Shelby County filed this action on April 27, 2010.  Shelby County challenged the facial constitutionality of Section 4(b), 42 U.S.C. § 1973b(b), and Section 5, *id.* § 1973c, of the Voting Rights Act, which respectively rendered Plaintiff Shelby County a "covered" jurisdiction and required it to obtain "preclearance" for all voting changes.  Complaint ¶¶ 1, 44, Dkt. 1 (Apr. 27, 2010).  Shelby County sought a declaratory judgment, a permanent injunction, and all other relief deemed appropriate by the court.

Shelby County moved for summary judgment on June 8, 2010.  Dkt. 5 (June 8, 2010).  Shortly thereafter, several groups and individuals sought to intervene, Dkt. 6 (June 11, 2010), Dkt. 9 (June 22, 2010), Dkt. 18 (July 1, 2010), which the district court allowed, Dkt. 29 (Aug. 25, 2010).  The Attorney General opposed summary judgment, arguing that the motion was premature because discovery was needed before the facial constitutionality of Section 4(b) and Section 5 could be resolved.  Dkt. 7 (June 22, 2010).  This Court disagreed.  Dkt. 41 (Sept. 16, 2010); *Shelby Cnty., Ala. v. Holder*, 270 F.R.D. 16 (D.D.C. 2010).

Following extensive summary judgment briefing, the Court heard oral argument on February 2, 2011.  Two days later, the Court requested supplemental briefing on the issue of

whether, "in considering the reauthorization of Section 5 of the Voting Rights Act in 2006, [it was] 'rational in both practice and theory,' *South Carolina v. Katzenbach*, 383 U.S. 301, 330 (1966), for Congress to preserve the existing coverage formula in Section 4(b) of the Act?"  The parties simultaneous briefed that issue on February 16, 2011.  Dkt. 72-75.  This Court thereafter issued an opinion granting the Attorney General's and Defendant-Intervenors' cross-motions for summary judgment.  Dkt. 83, 84 (Sept. 21, 2011); *Shelby Cnty., Ala. v. Holder*, 811 F. Supp. 2d 424 (2011).  Shelby County timely appealed.

After expediting the appeal, the Court of Appeals heard argument on January 19, 2012. On May 18, 2012, the D.C. Circuit issued a 2-1 decision affirming this Court's judgment; Circuit Judges Tatel and Griffith found both Section 4(b) and Section 5 constitutional, while Senior Judge Williams dissented on the ground that Section 4(b) was unconstitutional.  *Shelby Cnty., Ala. v. Holder*, 679 F.3d 848 (D.C. Cir. 2012).  Shelby County timely petitioned for a writ of certiorari, and the Supreme Court granted review.  *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 594 (Nov. 9, 2012).

The Supreme Court reversed in a 5-4 decision.  *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612 (June 25, 2013).  In an opinion authored by Chief Justice Roberts, the Supreme Court held that Section 4(b) is facially unconstitutional and, as a result, no jurisdiction could be subject to "coverage" under its formula.  *See id*. at 2627-31.  Given its holding with respect to Section 4(b), the Court did not need to reach Section 5's constitutionality.  *See id*. at 2631.  Justice Ginsburg issued a dissenting opinion.  *See id*. at 2632-52.

Upon receiving the Supreme Court's mandate, the D.C. Circuit vacated its judgment, issued a new judgment vacating this Court's judgment, and remanded the case to this Court "to enter a declaratory judgment in favor of Shelby County on its claim that it is unconstitutional to

use the Section 4(b) formula to determine which jurisdictions are subject to the preclearance requirement of Section 5, and dismissing Shelby County's constitutional challenge to Section 5 as moot."  Judgment, Doc. #1459217, No. 11-5256 (D.C. Cir. Oct. 2, 2013).  This Court issued its final order entering the declaratory judgment on October 11, 2013.  Order, Dkt. 92 (Oct. 11, 2013).

## II.   **ARGUMENT**

### A.   **Shelby County is Eligible For Fees and Litigation Expenses Under Section 1973*l*(e).**

The fee-shifting provision of the Voting Rights Act provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.

42 U.S.C. § 1973*l*(e).  The threshold determination of Shelby County's eligibility for fees under this provision requires the Court to resolve two questions: first, whether this is an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment"; and second, whether Shelby County is the "prevailing party."  The Court should answer both questions in the affirmative.

### 1.   This Is An Action to Enforce the Voting Guarantees of the Fourteenth and Fifteenth Amendments.

There can be no dispute that, as a textual matter, this action was brought to "enforce" the "voting guarantees of the fourteenth [and] fifteenth amendment."  The ordinary meaning of "enforce" is "to compel obedience to."  Black's Law Dictionary 621 (4th ed. 1968).[1]  That is

---

[1] *See also* Black's Law Dictionary 608 (9th ed. 2009) (same definition); Webster's Third New International Dictionary 751 (1981) (defining "enforce" as to compel obedience to, or give effect to).

precisely what Shelby County has done here: it has compelled the Government's obedience to the outer limits of congressional enforcement authority under the Fourteenth and Fifteenth Amendments and enforced Shelby County's right to establish voting rules and procedures which it believes best permit its citizens to exercise the franchise.  The Fourteenth Amendment ensures that the States do not deprive individuals of "equal protection" and the Fifteenth Amendment prevents denial of the right to vote "on account of race, color, or previous condition of servitude[.]"  Each Amendment has been construed to encompass protections going beyond the ability to register and cast a ballot and extends to voting procedures ensuring that a constitutionally protected vote has a meaningful role in the political process.   And each amendment also limits Congress's "power to enforce" the Amendment to "appropriate legislation."  Ensuring that Shelby County's citizens have the right to initiate changes designed to enhance the electoral process without the obligation of preclearance—and that Congress honors express limitations on its constitutional authority—no less "enforces" these Amendments than does a suit seeking to enforce the substantive guarantee that each affords to individuals.

The Supreme Court has repeatedly made this point clear.  "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder."  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2576 (2012) (Roberts, C.J.). "The enumeration of powers is also a limitation of powers, because '[t]he enumeration presupposes something not enumerated.'  The Constitution's express conferral of some powers makes clear that it does not grant others."  *Id*. (citation omitted).   Accordingly, "[t]he Constitution may restrict state governments—as it does, for example, by forbidding them to deny any person the equal protection of the laws.  But where such prohibitions do not apply, state governments do not need constitutional authorization to act."  *Id*.  Here, it is the "appropriate

4

legislation" limitation found in the text of the Fourteenth and Fifteenth Amendments that ensures "that powers which 'in the ordinary course of affairs, concern the lives, liberties, and properties of the people' [are] held by governments more local and more accountable than a distant federal bureaucracy." *Id*. (quoting The Federalist No. 45, at 293 (J. Madison)).

At base, both types of suits—*i.e.*, those invoking the Constitution's limits on state actions, and those challenging legislation as exceeding Congress's authority and unduly interfering with local prerogatives—serve the same end: the preservation of individual liberty. "The Framers concluded that allocation of powers between the National Government and the States enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived." *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011). Thus, there can be no question that the "allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States. The federal balance is, in part, an end in itself, to ensure that States function as political entities in their own right." *Id*. It is equally clear, however, that state sovereignty "is not its exclusive sphere of operation. Federalism is more than an exercise in setting the boundary between different institutions of government for their own integrity .... Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." *Id.* (citations and quotations omitted)). "By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake." *Id*.

This litigation proves the point. Shelby County sought to protect the political rights of sovereign States and their political subdivisions to run state and local elections free from the prior restraint of Section 5's preclearance regime. But the ultimate goal of its challenge was to

ensure that the people of Shelby County have "a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power."[2] *Id.* By prevailing in this challenge to Congress's enforcement authority, *see infra* at 7, Shelby County has permitted its citizens to exercise their constitutional right to put into effect changes in electoral practices they believe will improve the voting process to the benefit of all citizens of Shelby County without bearing the cost and experiencing the delay inherent in the preclearance process. In so doing, Shelby County enforced the "appropriate legislation" limitation that the Fourteenth and Fifteenth Amendments include to ensure individual liberty and protect meaningful participation in the electoral process.

Finally, D.C. Circuit precedent confirms that this is an "action or proceeding" within the meaning of Section 1973*l*(e). In *Commissioners Court of Medina Cnty., Texas v. United States*, 683 F.2d 435 (D.C. Cir. 1982), a political subdivision instituted a declaratory judgment under Section 5 to obtain preclearance of two redistricting plans to which the Attorney General had objected. *Id.* at 437. Individuals intervened on the side of the Attorney General to oppose preclearance, but the case was mooted when the county adopted a new redistricting plan that the Attorney General precleared. *Id.* at 438. The intervenors argued, and the D.C. Circuit agreed, that they were eligible for a fee award if on remand they established that they "prevailed" in the litigation. *See id.* at 439-44. Given this ruling, an action brought by a covered jurisdiction to obtain preclearance necessarily is an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." Were it not, no fees could have been awarded under the

---

[2] Indeed, Shelby County argued that Section 5 was constitutionally problematic in part because the 2006 Amendments to the statute increased the substantive tension between Section 5 and the Fourteenth Amendment. *See Georgia v. Ashcroft*, 539 U.S. 461, 491 (2003) (Kennedy, J., concurring).

statute.  *See also Donnell v. United States*, 682 F.2d 240, 245 (D.C. Cir. 1982) (fees awardable in preclearance action); *Castro Cnty. v. Crespin*, 101 F.3d 121 (D.C. Cir. 1996) (same).

This case is even clearer in its characterization, as Shelby County sought relief under the Fourteenth and Fifteenth Amendments from the statutory obligation—not a ruling under the statutory standard itself.  In other words, if an intervenor is eligible for fees because it defended a statute that in turn claimed to enforce the Fourteenth and Fifteenth Amendments, a covered jurisdiction *a fortiori* is eligible for fees if it prevails in a Fourteenth and Fifteenth Amendment challenge to the statute itself as exceeding the limits of "appropriate legislation."   Like the *Medina County* intervenors, Shelby County is eligible for a fee award so long as it "prevailed" in its challenge.

2.   <u>Shelby County is the Prevailing Party</u>.

Shelby County has plainly "prevailed" in this litigation.  A party prevails within the meaning of federal fee-shifting statutes "if [it] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted); *see also Grano v. Barry*, 783 F.2d 1104, 1108 (D.C. Cir. 1986) ("[I]t is obvious that a party who succeeds in obtaining a favorable final judgment following a full trial on the merits and exhaustion of all appeals is a prevailing party[.]").  Among other things, Shelby County sought a declaration that Section 4(b) is not "appropriate legislation" and therefore that Shelby County could not be subject to preclearance under that formula.  *See Shelby Cnty.*, 811 F. Supp. 2d at 427  (citing Compl. ¶¶ 1, 44(a)-(b)); *Shelby Cnty.*, 679 F.3d at 856-58;  *Shelby Cnty.*, 133 S.Ct. at 2621-22.  As this Court's judgment reflects, that is precisely what Shelby County achieved in this litigation.

**B.**      <u>**An Award of Fees is Appropriate in This Case.**</u>

Once the court has determined "that a party has 'prevailed'" under Section 1973*l*, the only remaining question is "whether a fee award would be 'unjust' under the particular circumstances of the case." *Medina Cnty.*, 683 F.2d at 442.  As the D.C. Circuit has explained, "[t]he discretionary portion of the attorney's fees inquiry is limited.  In order to deny reasonable attorneys' fees to a prevailing party, the court must find that special circumstances exist that would render such an award unjust." *Id.* at 438 n.2, 442 n.12.

There are no such "special circumstances" here.  *See, e.g.*, *Lawrence v. Bowsher*, 931 F.2d 1579, 1580 (D.C. Cir. 1991); *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1443-44 (7th Cir. 1993).  If anything, an award is especially warranted given the nature of this litigation.  Shelby County has not merely advanced a parochial interest, but has vindicated a constitutional right and benefitted thousands of jurisdictions across sixteen states and their citizens who, absent Shelby County's action, would remain subject to the unconstitutional application of preclearance under Section 5 of the Voting Rights Act.  *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.").  It could never be "unjust" to award attorney's fees when the prevailing litigant vindicates the Constitution.

Although the Defendants may argue otherwise, the more restrictive fee award standard of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), has no application here.[3]  That rule

---

[3]  It is notable that Section 1973*l*(e) does not differentiate between prevailing plaintiffs and prevailing defendants, but instead makes fees available to "the prevailing party."  Where Congress wishes to make fees available to one preferred class of litigants and not another, it knows how to do so.  *See, e.g.*, 29 U.S.C. § 216(b) (fees available to prevailing "plaintiff or

applies only where a prevailing defendant (or nominal plaintiff) seeks a fee award.  *See id.* at 418-19.  Shelby County is a prevailing plaintiff in every sense.  Shelby County did not bring a preemptory lawsuit in order to ward off potential liability under federal law nor did it prevail on a technicality or because it merely mounted a successful defense.  Shelby County, like any other plaintiff that believes it is subject to an unconstitutional law, brought an affirmative lawsuit to vindicate its rights and won outright on the merits.  Moreover, the *Christiansburg Garment* standard does not apply where the defendant (or nominal plaintiff) "has vindicated a constitutional right or benefitted a large number of people[.]"  *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 799 F.2d 45, 50 n.6 (3d Cir. 1986); *see also Shelter Framing Corp. v. Pension Benefit Guar. Corp.*, 705 F.2d 1502 (9th Cir. 1983), *rev'd on other grounds sub nom. Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984); *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 644 (4th Cir. 1983).  That is certainly the case here.  Thus, whether the *Christiansburg Garment* standard is inapplicable or the exception to it applies, the outcome is the same: Shelby County is entitled to fees because no special circumstances exist rendering the award unjust.

---

plaintiffs"); 5 U.S.C. § 7701(g)(2) (fees available to prevailing plaintiff "employee or applicant for employment"); 5 U.S.C. § 5596(b)(1)(A)(ii) (fees available to an "employee of an agency" who was "affected by an unjustified or unwarranted personnel action"); 7 U.S.C. § 2157(d) (fees available to any person "injured in its business or property by reason of a violation of this section"); 15 U.S.C. § 15(a) (fee available to any "person who shall be injured in his business or property"); 15 U.S.C. § 1667b(a) ("lessee" entitled to fee); 15 U.S.C. § 2310(d)(2) (fees available to prevailing "consumer"); 29 U.S.C. § 2617(a)(3) ("plaintiff" may be awarded fees if it obtains a "judgment"); 31 U.S.C. § 3730(d) (fees "shall" be awarded to prevailing relator under False Claims Act, but may only be awarded to a prevailing defendant if "the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment").  Indeed, in another section of the Voting Rights Act, Congress limited the availability of attorney's fees to situations in which a party brings an action "to enforce the original judgment of the court."  42 U.S.C. § 1973ee-4(c).

**C.**     **Shelby County's Fee Request is Based on a "Reasonable" Lodestar Figure And Is Supported By Contemporaneous Billing Records.**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984). "A strong presumption exists that the product of these two variables—the 'lodestar figure'— represents a 'reasonable fee.'" *Miller v. Holzmann*, 575 F. Supp. 2d 2, 11 (D.D.C. 2008) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)), *amended in part, vacated in part on other grounds by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011). Where, as here, no multiplier is sought, "the Court must thus make [two] separate determinations: (1) what constitutes a 'reasonable hourly rate' for his counsel's services; [and] (2) which among his counsel's claimed work hours were 'reasonably expended on the litigation[.]'" *Id.* The fee request here is based on (1) the number of hours actually expended on the litigation, as reflected in Wiley Rein's billing records; and (2) each attorney's established billing rate for the years 2010 through 2013. As explained below, as well as in the declaration submitted by Bert W. Rein ("Rein Dec.") (attached hereto as Exhibit A) in support of this request, both the rates and hours submitted are reasonable.

1.     The Claimed Rates are "Reasonable."

Although the "burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Miller*, 575 F. Supp. 2d at 12 (quotation omitted), "an attorney's usual billing rate is presumptively the reasonable rate." *Id.* at 11 (quoting *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (in turn quoting *Blum*, 465 U.S. at 896

n.11) (internal quotations omitted)). "*In almost every case, the firms' established billing rates will provide fair compensation.* The established rates represent the opportunity cost of what the firm turned away in order to take the litigation; they represent the lawyers' own assessment of the value of their time." *Id.* at 12 (citation and quotation omitted), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)); *see also Missouri v. Jenkins*, 491 U.S. 274, 284-89 (1989) (reasonable rates includes paralegal time). Because this fee request is based on Wiley Rein's standard billing rates, which is the rate that it customarily charges its clients for that attorney's time, *see* Rein Dec. ¶¶ 14-15, 21, it is presumptively reasonable. *See McKesson Corp. v. Islamic Republic of Iran*, 935 F. Supp. 2d 34 (D.D.C. 2013).

This case is a prime candidate for a full hourly fee award. First, given the high profile nature of this case and the stakes involved, Wiley Rein was reasonable in charging its standard rates. Second, although the work on this case was performed between 2010 through 2013, the request is based on the time when the work was actually performed, as opposed to each attorney's current billing rates. *Cf. Miller*, 575 F. Supp. 2d at 18-21 (fee petition submitted in 2007 for work performed over the prior decade could use 2007 rates); *McKesson*, 935 F. Supp. 2d 34 (awarding fees based on 2012 rates for work performed in prior years). Third, the 2012 National Law Journal Law Firm Billing Survey demonstrates that Wiley Rein's established 2012 rates are well within the range of rates for firms of comparable size and reputation based in the Washington, D.C. market:

| Position | Wiley Rein | Dickstein Shapiro | Hogan Lovells | Patton Boggs | Holland & Knight |
|----------|-----------|-------------------|---------------|--------------|------------------|
| Associates (Range) | $305-$520 | $235-$570 | $310-$655 | $240-$570 | $200-$575 |
| Associates (Median) | $445 | $460 | $465 | $435 | $310 |

| Partners (Range) | $530-$920 | $560-$1,250 | $545-$1,200 | $425-$990 | $315-$985 |
| Partners (Median) | $615 | $700 | $750 | $665 | $560 |

| Associate Year | Wiley Rein | Dickstein Shapiro | Hogan Lovells | Patton Boggs | Holland & Knight |
| --- | --- | --- | --- | --- | --- |
| 1st year | $305 | $235-$305 | $330 | $308 | $240 |
| 5th year | $480 | $380-$515 | $474 | $446 | $330 |
| 8th year | $520 | $455-$570 | $552 | $513 | $405 |

Rein Dec. ¶ 19.  And fourth, Wiley Rein's rates compare favorably to the Morgan Lewis & Bockius and Winston & Strawn rates this Court recently deemed "reasonable."[4]  *See McKesson*, 935 F. Supp. 2d 34.  It is also worth noting that another fee petition recently filed in this Court has sought substantially similar rates for its District of Columbia attorneys with similar experience, based in part on a comparison to the rates deemed reasonable in *McKesson*.  *See* Dkt. 635-664, *Animal Welfare Inst. v. Feld Entm't, Inc.*, No. 1:03-cv-2006-EGS-JMF (filed Oct. 21, 2013).[5]  The fact that those large firms' market rates are comparable to Wiley Rein's demonstrates that there is no basis for overcoming the presumption that Wiley Rein's market rates are "reasonable."

At bottom, the Wiley Rein attorneys who handled this case are highly qualified lawyers with significant experience in constitutional litigation.  Lead counsel Bert Rein has over 45 years of litigation experience; two other partners have over 10 years of litigation experience; two partners were former Supreme Court clerks and the third clerked on the U.S. Court of Appeals

---

[4] The Morgan Lewis & Bockius rates that formed the basis for that fee award are attached as Exhibit B.

[5] A breakdown of the rates claimed by Fulbright & Jaworski for attorneys who billed more than 100 hours to that matter, and Covington & Burling attorneys who billed more than 10 hours to that matter, are attached hereto as Exhibit C.

for the District of Columbia Circuit; the associates who contributed to the matter each clerked for federal court of appeals judges and have multiple years of litigation experience; and the paralegals had substantial prior experience and formal training in litigation.  Rein Dec. ¶¶ 3, 8, 9, 11, 12.  *Compare with Miller*, 575 F. Supp. 2d at 13 n.22; *McKesson*, 935 F. Supp. 2d 34.  A fee award in the full amount billed to date would yield a blended rate of compensation of $525.98 per hour, which is extremely reasonable.  Rein Dec. ¶ 21.  And after deductions, *see infra* pp. 14-15, the fee request yields a blended rate of compensation of approximately $431.73 per hour, *see* Rein Dec. ¶ 27.  Given these lawyers' experience and the high-stakes nature of this litigation, Wiley Rein's rates are reasonable.  *McKesson*, 935 F. Supp. 2d 34 (finding "reasonable" lodestar of $10,027,235.70 for 18,537.5 hours of Morgan Lewis and Winston & Strawn attorney time, for a blended rate of $540.91 per hour); Exhibit C (requesting blended rate of approximately $647 per hour for current Fulbright & Jaworski attorneys, and approximately $743 per hour for current Covington & Burling attorneys).

2.     The Claimed Number of Hours is "Reasonable."

Wiley Rein billed for this matter in ¼ hour increments, contemporaneous with the performance of the work.  Rein Dec. ¶ 20.  Wiley Rein's accounting records for this matter state that, as of October 10, 2013, Wiley Rein timekeepers had expended 4,632.50 hours litigating this matter over the course of 3 ½ years.  Rein Dec. ¶ 21.  An effort of that scale was justified in light of the effort and length of time required to bring this case to a successful conclusion.  This litigation centered on a legislative record consisting of "more than 15,000 pages" of testimony, exhibits, and reports.  *Shelby Cnty.*, 133 S. Ct. at 2636 (Ginsburg, J., dissenting) (citing H.R. Rep. 109–478, at 5, 11–12; S. Rep. 109–295, at 2–4, 15).  Counsel was obligated to become expert in that record in order to vindicate its constitutional claims.  *See Shelby Cnty.*, 811 F. Supp. 2d at 428 ("This Court has now carefully reviewed the extensive 15,000-page legislative

record that Congress amassed in support of its 2006 reauthorization of Section 5 and Section 4(b).").   The length of the comprehensive opinions at all levels of judicial review is further attestation of the complexity of the issues.   For these reasons, the number of hours expended is reasonable.

Because of the requirement that this fee request be filed within 14 days after entry of judgment, Fed. R. Civ. P. 54(d)(2)(B)(i), Shelby County has not had sufficient time to review three and a half years of bills and redact for privilege, and thus is currently not able to provide the Court with "contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents[.]"   *See In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989).   Shelby County's fee request is based on those records, however, and it will, if necessary, supplement its motion with a more detailed accounting should the Court deem it appropriate.[6]   In any event, Shelby County has submitted a "fair estimate" of the amount of fees it is seeking, *see* Fed. R. Civ. P. 54(d)(2)(B)(iii), as this application and supporting declaration state outright the fee sought and break down the hours expended by month and stage of the case, Rein Dec. ¶¶ 23, 27-28.   The application is thus "sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified."   *Miller*, 575 F. Supp. 2d at 34 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (internal quotation marks omitted); *Novak v. Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 158-59 (D.D.C.

---

[6] Shelby County had anticipated that this Court would enter a notation in the Judgment directing the parties to confer regarding attorney's fees pursuant to Local Civil Rule 54.2.   That would have tolled the time to file a motion for attorney's fees while the parties conferred, and would have provided Shelby County with additional time to prepare the time records for public disclosure and further document the reasonableness of its fee application.   After determining that Shelby County is eligible for fees, the Court could in its discretion order the parties to meet and confer as to the reasonableness of the particular fees sought.

2007) ("[I]t is the law of this Circuit that the requirement of submitting detailed records should not be applied in a Draconian manner.").

Shelby County has also exercised billing judgment.  *See Heller v. District of Columbia*, 832 F. Supp. 2d 32, 56 (D.D.C. 2011) ("[I]t is desirable—and, indeed, advisable—for a fee applicant to submit a separate declaration explaining the various reductions and exclusions of charges that were made in the billing-judgment exercise[.]").  Total billings through October 10, 2013 are $2,436,616.25.  Rein Dec. ¶ 21.  Its requested fee of $2.0 million reflects a reduction of 10% due to the fact that its attorneys kept their time in block-billing format, and a further 5% to account for any inefficiencies (such as clerical work performed by attorneys) that might be reflected in the bills.  Rein Dec. ¶¶ 25-26; *see Miller*, 575 F. Supp. 2d at 24-34 (comprehensive deduction, rather than item-by-item analysis, appropriate to account for potential inefficiencies); *McKesson*, 935 F. Supp. 2d 34 (same).  Then, in an effort to be overly conservative and in order to minimize the burden on the Court and the parties to examine each billing entry, Shelby County rounded the request down further to an even $2.0 million.  Rein Dec. ¶ 27.

"A 'strong presumption' exists that the lodestar figure, without more, constitutes a reasonable fee award."  *Miller*, 575 F. Supp. 2d at 45 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).  Thus, there must be "specific evidence" to demonstrate that "an adjustment"—either up or down—"is necessary to the determination of a reasonable fee."  *Blum*, 465 U.S. at 898-99.  Despite the fact that the results here were exceptional, Shelby County is not seeking a multiplier of the lodestar.  Nor, however, should the Court reduce the award from the lodestar figure.  *See* Rein Dec. ¶ 28 (Latham & Watkins paid $977,000 for filing one brief and argument before Supreme Court of the United States).  Not only is the relief significant from a constitutional perspective, but it will have a major financial impact as well.  For example,

Merced County, California submitted an *amicus curiae* brief in support of neither party before the Supreme Court that disclosed that it spent $1 million over ten years on Section 5 compliance activity, and another $350,000 to bail out of coverage.  Rein Dec. ¶ 29.  South Carolina recently spent $3.5 million in legal fees to obtain preclearance of its voter ID law.  *Id.*  And Shelby County spent approximately $5,000 for each preclearance submission it made, and it made 72 submissions from April 1998 until this litigation began in 2010.  *Id.*  In light of these facts, as well as the evidence in the legislative record, it is no stretch to state that Shelby County's victory will save the thousands of covered jurisdictions over a billion dollars in Section 5 compliance and litigation costs between now and 2031, when the statute was set to expire.  *See* Modern Enforcement of the Voting Rights Act, Hearing before the Senate Committee on the Judiciary, 109th Cong., at 110 (May 10, 2006) (Coleman) ("[P]reclearance compliance has over the past decade required the commitment of state and local resources easily valued at over a billion dollars."); *see also* Tr. of Oral Argument 33, *Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, No. 08-322 (Apr. 29, 2009); *cf. Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 363-64 (D.D.C. 2007) (fee award amounting to 26% in common fund recovery case is "reasonable").

### 3.   The Claimed Litigation Expenditures are Reasonable.

Finally, "[v]arious forms of litigation expenses that are not fees for attorneys' time—such as copying charges, court reporter fees, and travel costs—may also be included in the award if such expenses are routinely billed by the attorney to his or her client."  *Carmel & Carmel PC v. Dellis Constr., Ltd.*, 858 F. Supp. 2d 43, 47 (D.D.C. 2012) (citing *New York v. Microsoft Corp.*, 297 F. Supp. 2d 15, 47-48 (D.D.C. 2003)).  Wiley Rein has incurred $46,569.82 in costs attributable to this matter.  Rein Dec. ¶ 30.  These costs include database research services (e.g., Westlaw and Lexis), PACER charges, filing fees, the cost of obtaining transcripts, transportation,

16

courier services, office copying charges, outside printing and duplication, filing fees, and postage. *Id.* These expenditures are ordinarily billed to Wiley Rein's clients. *Id.* Certain costs were reimbursed through the Supreme Court's award of costs, and others will be reimbursed through the Bill of Costs Shelby County will submit in this Court. Significant "reasonable litigation expenses" not reimbursable through the Bill of Costs include approximately $22,000 in outside printing and duplicating costs, $10,500 in electronic database research fees, $400 in PACER fees, $577 for transcripts, and $92 in office copying charges. Instead of itemizing these and other expenditures, Shelby County seeks $10,000 for "reasonable litigation expenses." 42 U.S.C. § 1973*l*(e).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Shelby County is the prevailing party and should be awarded a reasonable attorney's fee of $2.0 million, and litigation expenses of $10,000.00.

Dated:  October 25, 2013

Respectfully submitted,

/s/ Bert W. Rein

Bert W. Rein* (D.C. Bar No. 067215)
William S. Consovoy (D.C. Bar No. 493423)
Thomas R. McCarthy (D.C. Bar No. 489651)
Brendan J. Morrissey (D.C. Bar No. 973809)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

Frank C. Ellis, Jr.
WALLACE, ELLIS, FOWLER & HEAD
113 North Main Street
Columbiana, AL  35051
Tel.: (205) 669-6783
Fax: (205) 669-4932

*Counsel of Record*