IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY COUNTY, ALABAMA,     ) | |
| ) | |
| Plaintiff     ) | |
| ) | |
| v.     ) | Civil Action No. |
| ) | 1:10-cv-00651-JDB |
| ERIC H. HOLDER, Jr.,     ) | |
| in his official capacity as     ) | |
| Attorney General of the     ) | |
| United States,     ) | |
| ) | |
| Defendant     ) | |
| ) | |

**ATTORNEY GENERAL'S OPPOSITION TO SHELBY COUNTY'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES UNDER SECTION 1973*l*(e)**

RONALD C. MACHEN, JR.
  United States Attorney
  District of Columbia

JOCELYN SAMUELS
  Acting Assistant Attorney General
T. CHRISTIAN HERREN, JR.
RICHARD DELLHEIM (lead counsel)
AVNER SHAPIRO
ERNEST A. McFARLAND
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Avenue, N.W.
  NWB-Room 7264
  Washington, D.C. 20530
  Telephone: (202) 305-1840
  Facsimile: (202) 307-3961

## Table of Authorities

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ......................................... 10

*Apache Cnty. v. United States*, 256 F.Supp. 903 (D.D.C. 1966) .................................................... 25

*Ardestani v. I.N.S.*, 502 U.S. 129 (1991) ........................................................................................ 9

*Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794 (D.C. Cir. 1998) .......... 23

*Brown v. Sec'y of the Army*, 78 F.3d 645 (D.C. Cir. 1996) ............................................................. 8

*Castro County. v. Crespin*, 101 F.3d 121 (D.C. Cir. 1996) ..................................................... 22, 25

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412  (1978) ........................................... 4, 17, 18

*Comm'rs Court of Medina Cnty. v. United States*, 683 F.2d 435 (D.C. Cir. 1982).......... 15, 22, 25

*Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982)........................................................ 22, 25

*Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Phila. and Vicinity.*  799 F.2d 45 (3d

Cir. 1986) ...................................................................................................................... 22

*Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201 (D.C. Cir. 1995)........................................... 23

*Emery v. Hunt*, 132 F. Supp. 2d 803 (D.S.D. 2001) ..................................................................... 20

*Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994) .............................................................................. 23

*Fox v. Vice*, 131 S. Ct. 2205 (2011)............................................................................................... 18

*Georgia v. Ashcroft*, 539 U.S. 461 (2003) .................................................................................... 24

*Hall v. United States*, 773 F.2d 703 (6th Cir. 1985) ..................................................................... 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................. 10

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)................................................................... 8

*Jafari v. City of Richmond*, No. 3:05CV823, 2006 U.S. Dist. LEXIS 94856 (E.D. Va. June 7,

2006) ............................................................................................................................... 20

*Kentucky v. Graham,* 473 U.S. 159 (1985)................................................................ 12

*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) ....................................... 10, 14

*King v. Ill. State Bd. of Elections*, 410 F.3d 404 (7th Cir. 2005).................................. 20

*Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277 (11th Cir. 1992) ............................. 11

*Library of Cong. v. Shaw*, 478 U.S. 310 (1986) ........................................................ 8

*Martin v. Heckler*, 773 F. 2d 1145 (11th Cir. 1985) ................................................ 10

*Newman v. Piggie Park Enter.*, 390 U.S. 400............................................... 16, 18, 19

*Nichols v. Pierce*, 740 F.2d 1249 (D.C. Cir. 1984)..................................................... 9

*Nowd v. Rubin*, 76 F.3d 25 (1st Cir. 1996) ............................................................ 11

*Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506 (11th Cir. 1988) ......................... 10

*Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471 (1997).................................................. 24

*Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320 (2000).................................................. 24

*Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund,* 718 F.2d 628 (4th

    Cir. 1983) ........................................................................................................ 16

*Shelby Cnty. v. Holder*, 133 S. Ct. 2612 (2013)......................................................... 6

*Shelby Cnty. v. Holder*, 133 S. Ct. 594 (2012)......................................................... 6

*Shelby Cnty. v. Holder*, 679 F.3d 848 (D.C. Cir. 2012)............................................... 6

*Shelby Cnty. v. Holder*, 811 F. Supp. 2d 424 (D.D.C. 2011)........................................ 6

*Shelter Framing Corp. v. Pension Benefit Guar. Corp.,* 705 F.2d 1502 (9th Cir. 1983), *rev'd on*

    *other grounds sub nom. Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717 (1984)

    ............................................................................................................... 15, 16

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ............................................. 4, 5

*Unification Church v. INS*, 762 F.2d 1077, 1080-81 (D.C. Cir. 1985)........................... 12

*United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659 (1947) ........................................ 8

*United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992) ........................................................ 8

*United States v. Sherwood*, 312 U.S. 584, 586 (1941) .................................................................. 8

*United States v. Testan*, 424 U.S. 392, 399 (1976) ...................................................................... 8

*Young v. Pierce*, 822 F.2d 1376, 1377 (5th Cir. 1987) ................................................................ 10

## Statutes

28 U.S.C. § 2412(b) ............................................................................................................. 10, 11

29 U.S.C. § 216(b) .................................................................................................................... 11

29 U.S.C. § 216b ........................................................................................................................ 11

29 U.S.C. § 633a ........................................................................................................................ 11

42 U.S.C. § 1973b(b) ................................................................................................................... 4

42 U.S.C. § 1973c .......................................................................................................................... 5

42 U.S.C. § 1973*l*(e) ...................................................................................................................... 9

5 U.S.C. § 552(a)(4)(E)(i) .............................................................................................................. 9

Pub. L. No. 109-246 (2006) ........................................................................................................... 5

Pub. L. No. 89-110 (1965) ............................................................................................................. 4

## Other Authorities

Attachment A .............................................................................................................................. 20

Mem. Points & Authorities Pl.'s Mot. 3 .................................................................... 7, 14, 15, 22

Pet'r's Br. 22-23 ............................................................................................................................. 6

Pl's Compl. 16-19 .......................................................................................................................... 5

S. Rep. No. 94-295, at 40 (1975) ..................................................................................... 17, 18, 19

## Secondary Sources

Gregory C. Sisk, A Primer on Awards of Attorney's Fees Against the Federal Government, 25

Ariz. St. L.J. . 733, 783-84 (1993) ........................................................................... 10

**ATTORNEY GENERAL'S OPPOSITION TO SHELBY COUNTY'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES UNDER SECTION 1973*l*(e)**

Defendant Eric Holder, Attorney General of the United States ("Attorney General or

United States") respectfully submits his Opposition to Plaintiff Shelby County's motion for

attorney's fees.  For the reasons discussed herein, Shelby County's motion should be denied.

**INTRODUCTION**

Having prevailed in the Supreme Court in its challenge to the constitutionality of Section

4(b) of the Voting Rights Act ("VRA"), Shelby County now seeks to shift payment of its

attorney's fees and litigation expenses to the United States.  The Court granted the parties' joint

motion to bifurcate the issues involved (ECF 98), and thus will first consider whether Shelby

County is entitled to attorney's fees under the fee-shifting provision of the VRA.  Only if the

Court determines that Shelby County is entitled to fees will it set additional briefing as to the

appropriateness of the requested amount.

Shelby County cannot use the VRA's fee-shifting provision to obtain fees here for at least

three independent reasons.  First, nothing in the VRA's fee-shifting provision or anywhere else

even so much as hints at a waiver of the government's sovereign immunity for an award of fees

here.  For a party in litigation to obtain fees from the United States under a statute's fee-shifting

provision, the statute must contain an unequivocal and unambiguous waiver of sovereign

immunity that explicitly encompasses the remedy of attorney's fees.

Second, Shelby County cannot now change the theory of its case to obtain the benefits of

the VRA's fee-shifting provision.  The county only now, for the first time in three years of

litigation, characterizes this action as one to "enforce the guarantees of the Fourteenth and

Fifteenth Amendments" in an attempt to bring its litigation efforts within the ambit of the

provision.  However, in its complaint, in its briefings, and when its attorneys advocated before

1

this Court, the D.C. Circuit Court of Appeals, and the Supreme Court, the fulcrum of Shelby

County's case against Section 4(b) of the VRA has consistently been an appeal to the rights of

States and the principle of the "sovereign equality" of States embodied in the Tenth Amendment

and Article IV of the U.S. Constitution.

Third, and finally, under the VRA's fee-shifting provision, Shelby County's posture here

is most readily analogous to that of a party seeking to oppose a claim of a violation of the VRA,

not to that of a party seeking to enforce VRA protections.  Such parties are only entitled to fees

under the VRA's fee-shifting provision if they can meet the demanding *Christiansburg* standard

of demonstrating that their opponents' positions have been frivolous, vexatious, or groundless.

Shelby County cannot meet this standard, and does not claim it can.  *Christiansburg Garment*

*Co. v. EEOC*, 434 U.S. 412, 418-21 (1978).

As with most other civil rights fee-shifting provisions, the VRA's provision was designed

to incentivize the private enforcement of federally protected rights.  Shelby County should not

now be allowed to avail itself of this provision when what it has accomplished through litigation

is so manifestly at odds with the provision's purpose.

## BACKGROUND AND PROCEDURAL HISTORY

Congress enacted the VRA in 1965 to "banish the blight of racial discrimination in

voting, which ha[d] infected the electoral process in parts of our country for nearly a century."

*South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966).  The VRA of 1965 included both

permanent provisions, applicable to the nation as a whole, and temporary provisions, applicable

only to certain "covered jurisdictions."  Pub. L. No. 89-110 (1965).

The temporary provisions included Sections 4(b) and 5.  Section 4(b) of the VRA

provided the formula for identifying States where discrimination in voting was "most flagrant."

*South Carolina*, 383 U.S. at 315, 329-30; *see also* 42 U.S.C. § 1973b(b). Section 5 required States covered under the Section 4(b) formula to obtain federal approval before implementing voting changes. 42 U.S.C. § 1973c; *see also South Carolina*, 383 U.S. at 317-18. The VRA provided that such preclearance was to be given if the jurisdiction seeking to implement the change could demonstrate that the change had neither the purpose nor would have the effect of denying or abridging the right to vote on account of race or color (and later also membership in a language minority group). 42 U.S.C. § 1973c.

Though Sections 4(b) and 5 of the VRA were initially set to expire after five years, Congress re-authorized them in 1970, 1975, 1982, and 2006 after finding an ongoing need for the protections they afforded. The most recent re-authorization occurred in 2006, when Congress sought to extend these provisions for another 25 years. Pub. L. No. 109-246 (2006).

In April 2010, Shelby County filed this action against the United States, seeking a declaratory judgment as well as a permanent injunction prohibiting the United States from enforcing Sections 4(b) and 5 of the VRA. Its complaint alleged that Sections 4(b) and 5 "violate[] the Tenth Amendment and Article IV of the Constitution" by exceeding Congress's enforcement authority under the Fourteenth and Fifteenth Amendment. Pl's Compl. 16-19 (ECF 1).

As to Section 4(b), specifically, Shelby County asserted that,"[b]ecause Section 4(b)'s coverage exceeds Congress's enforcement authority under the Fourteenth and Fifteenth Amendments, it violates the Tenth Amendment and Article IV of the Constitution." *Id.* at 19. It also alleged that, "[b]ecause Section 4(b)'s coverage formula is not 'sufficiently related to the problem that it targets' it violates the principle of equal sovereignty [of States] embodied in the Tenth Amendment and Article IV of the Constitution." *Id.* at 20.

In September 2011, this Court rejected Shelby County's claims and upheld the constitutionality of both Sections 4(b) and 5 of the VRA.  *Shelby Cnty. v. Holder*, 811 F. Supp. 2d 424, 508 (D.D.C. 2011).   A divided panel of the U.S. Court of Appeals for the D.C. Circuit affirmed this Court's ruling in May 2012 (by a two to one vote).  *Shelby Cnty. v. Holder*, 679 F.3d 848, 884 (D.C. Cir. 2012).

The Supreme Court granted Shelby County's petition for a writ of certiorari in November 2012.  *Shelby Cnty. v. Holder*, 133 S. Ct. 594, 594 (2012).  As it had done before the lower courts, Shelby County argued to the Supreme Court that Sections 4(b) and 5 should be deemed unconstitutional because they had "accomplished their mission and their encroachment on Tenth Amendment rights and the constitutional principle of equal sovereignty is no longer appropriate."  Pet'r's Br. 22-23.

The Supreme Court's decision in the *Shelby County* case is embodied in a majority opinion authored by Chief Justice Roberts (with four Justices dissenting).  *Shelby Cnty. v. Holder*, 133 S. Ct. 2612, 2631 (2013).  The Court held that it was no longer constitutional to use the Section 4(b) coverage formula "as a basis for subjecting jurisdictions to preclearance under Section 5."  *Id.* at 2631.  The Court issued "no holding on [Section] 5 itself, only the coverage formula" and noted that Congress "may draft another formula based on current conditions."  *Id.*

Acting upon the Supreme Court's mandate, the D.C. Circuit ordered the parties to this case to file motions to govern further proceedings, and after considering their responses, the Court of Appeals  vacated its judgment and this Court's judgment and remanded the case to this Court "to enter a declaratory judgment in favor of Shelby County on its claim that it is unconstitutional to use the Section 4(b) formula to determine which jurisdictions are subject to the preclearance requirement of Section 5, and dismissing Shelby County's constitutional

4

challenge to Section 5 as moot." *Shelby Cnty. v. Holder*, No. 11-5256, 2013 U.S. App. Lexis 20177 (D.C. Cir. Oct. 2, 2013). This Court entered the declaratory judgment in a final order issued on October 11, 2013. (ECF 92).

On October 25, 2013, Shelby County moved for attorney's fees, claiming an entitlement to fees solely under the VRA's fee-shifting provision, Section 1973*l*(e). Mem. Points & Authorities Pl.'s Mot. 3 (ECF 94). For the first time, Shelby County claimed that "this action was brought to enforce the voting guarantees of the fourteenth and fifteenth amendment." *Id.* at 3 (internal quotation marks omitted) (alteration omitted). Shelby County requested that the Court award it attorney's fees in the amount of $2 million and litigation expenses in the amount of $10,000. *Id.* at 1.

The United States and Shelby County filed a joint motion on November 4, 2013, requesting that this Court bifurcate the issue of whether Shelby County is entitled to fees under the VRA from the issue of what amount of fees may be appropriate and to set briefing deadlines. (ECF 96). The Court granted the motion on November 5, 2013. (ECF 98).

## ARGUMENT

I.   **Shelby County cannot obtain fees from the United States because the United States has not waived its sovereign immunity.**

Shelby County's brief is completely silent on the essential question of sovereign immunity of the United States. Its memorandum provides no explanation as to where a relevant waiver of the United States' sovereign immunity may exist with regard to its attorney's fees claim here or how this Court should discard the well-established precedents regarding sovereign immunity. The United States should not be required to guess about the possible arguments Shelby County might have made but did not make. Likewise, the United States should not be required to respond to arguments Shelby County has not made. Shelby County's failure to

5

address this critical jurisdictional issue, by itself, is a fatal defect that must lead to denial of Shelby County's fee petition.

Moreover, the United States is aware of no such explicit statutory waiver of sovereign immunity for Shelby County's claim for fees, and hence, it must be denied.

### A.   The United States has sovereign immunity.

The basic principle is well understood.  "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . .'"  *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  Before a party can obtain fees or any other type of remedy from the United States, a waiver of sovereign immunity to liability must be "unequivocally expressed."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 37 (1992) ("the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text").[1]

When determining whether the waiver exists and whether the scope of the waiver includes attorney's fees, the "rule of strict construction" should be applied and a statute should be read "no more broadly than its terms require."  *Brown v. Sec'y of the Army*, 78 F.3d 645, 649 (D.C. Cir. 1996); *see also Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986) ("[T]here can be no consent by implication or by use of ambiguous language.") (quoting *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659 (1947)).  "The policies inherent in the rule requiring strict construction of waivers of sovereign immunity strongly suggest that any doubts about the scope of a waiver be resolved in favor of the narrower governmental liability."  *Nichols v.*

---

[1] As a suit against the Attorney General in his official capacity, this case is treated as a suit against the United States for sovereign immunity purposes.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity." (citation omitted)); *Harris v. Holder*, 885 F. Supp.2d 390, 397 (D.D.C. 2012) (holding that, for purposes of sovereign immunity, "[a] suit against a federal official in his official capacity is treated as a suit against the government itself.").

*Pierce*, 740 F.2d 1249, 1257 (D.C. Cir. 1984); *see also Ardestani v. I.N.S.*, 502 U.S. 129, 136-38 (1991).

> **B.    Nothing in the VRA's fee-shifting provision provides the type of "unequivocally expressed" waiver of sovereign immunity required to impose obligations for attorney's fees on the United States.**

Nothing in Section 1973*l*(e) or anywhere else in the VRA contains anything approaching the type of unambiguous and explicit waiver necessary to entitle a prevailing party to fees against the United States.  The VRA's fee-shifting provision provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.

42 U.S.C. § 1973*l*(e).  As would be expected given the statutes failure to waive the government's sovereign immunity, the United States knows of no case in which a court awarded attorney's fees against the United States under 42 U.S.C. 1973*l*(e).

The VRA's language differs markedly from the language contained in statutes where courts have identified a standalone waiver of sovereign immunity encompassing attorney's fees. In such cases Congress has made its intent to consent to the waiver crystal clear.  For example, the Freedom of Information Act provides, "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  In contrast, the VRA contains no language even hinting that the government consents to having attorney's fees awarded against it.

> **C.    There is no other relevant waiver of fee liability.**

Shelby County's brief nowhere mentions the Equal Access to Justice Act ("EAJA"), and nowhere claims to be seeking fees under EAJA's provisions, so any arguments Shelby County

might have in that regard have been waived.  While the United States does not concede that

EAJA applies here, we note that the VRA can also be distinguished from statutes that waive

sovereign immunity to attorney's fees when read in conjunction with Section 2412(b) of EAJA.

Section 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses
> of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to
> the prevailing party in any civil action brought by or against the United States or any
> agency or any official of the United States acting in his or her official capacity in any
> court having jurisdiction of such action.  The United States shall be liable for such fees
> and expenses to the same extent that any other party would be liable under the common
> law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Section 2412(b) works a partial waiver of sovereign immunity through

application to the United States of certain other federal fee-shifting statutes that allow fees to

prevailing parties. See *Young v. Pierce*, 822 F.2d 1376, 1377 (5th Cir. 1987); *Martin v. Heckler*,

773 F. 2d 1145, 1152-53 (11th Cir. 1985) (en banc).  However, Section 2412(b) "does not create

any new substantive rights to attorney's fee awards" and as a result, "to obtain an award, a fee

petitioner still must identify an exception to the American Rule." *See* Gregory C. Sisk, A Primer

on Awards of Attorney's Fees Against the Federal Government, 25 Ariz. St. L.J. . 733, 783-84

(1993).[2]  As the Eleventh Circuit has observed, "Section 2412(b) of the EAJA .... does not alter

in any way the doctrines that make up the traditional exceptions to the American rule." *Panola*

*Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1509 n.10 (11th Cir. 1988).

---

[2] Under the "American Rule," each party in a lawsuit ordinarily bears its own attorney's
fees "unless there is express statutory authorization to the contrary."  *Hensley v. Eckerhart*, 461
U.S. 424, 429 (1983); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 256 (1975)
(describing the general rule as being that "absent statute or enforceable contract, litigants pay
their own attorneys' fees"); *Key Tronic Corp. v. United States*, 511 U.S. 809, 819, (1994)
(describing "general practice of not awarding fees to a prevailing party absent explicit statutory
authority").

In sum, Section 2412(b) authorizes reasonable attorney's fees against the United States under the terms of any statute that: (1) expressly permits suit against the United States for its violation of the statute, and (2) also provides for the award of attorney's fees against the losing party without mentioning the United States.  28 U.S.C. § 2412(b); *see also Nowd v. Rubin*, 76 F.3d 25, 28 (1st Cir. 1996).

The Age Discrimination in Employment Act of 1967 ("ADEA") is an example of such a statute in which the EAJA applies.  In 1974, Congress amended the ADEA to create express and unequivocal liability for the United States by providing certain federal employees with protections against age discrimination.  29 U.S.C. § 633a; *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1281-82 (11th Cir. 1992).  The ADEA also incorporates the fee-shifting provision of the Fair Labor Standards Act of 1938.  29 U.S.C. § 216b.  The provision does not expressly prohibit obtaining fees from the United States, and provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." 29 U.S.C. § 216(b).  Thus, the ADEA meets both the prerequisites for qualifying for a waiver of the government's sovereign immunity against the awarding of fees under Section 2412(b).

In contrast, the VRA satisfies only one of Section 2412(b)'s prerequisites.  It is true that Section 1973*l*(e) of the VRA constitutes a fee-shifting provision that does not expressly prohibit obtaining fees from the United States.  The second requisite is not met, however, because, there is no waiver of sovereign immunity nor is there any merits liability in this case by the United States for violations of the voting guarantees of the constitution or the statutes that enforce them that could lead to fees liability under Section 1973l(e). Morever, as described in greater detail

below, this case is not brought to enforce the guarantees of the fourteenth or fifteenth amendments or the Voting Rights Act, for which Section 1973l(e) authorizes fees.[3]

###### D.   Fees liability runs with merits liability

Shelby County's fee petition is also defeated on sovereign immunity grounds by the principle in attorney's fees cases that "fee liability runs with merits liability . . . ." *Kentucky v. Graham*, 473 U.S. 159, 168 (1985).   Here, the United States cannot be held substantively liable under voting guarantees of the fourteenth or fifteenth amendment themselves or under any of the statutes that enforce the voting guarantees, such as the VRA, nor has the United States waived its sovereign immunity under any of these provisions.

By analogy, it is a well-developed principle in cases under the attorney's fees provisions of the Civil Rights Attorney's Fees Awards Act that "Section 1988 simply does not create fee liability where merits liability is non-existent."  *Id.*; *see, e.g.*, *Hall v. United States*, 773 F.2d 703, 707 (6th Cir. 1985) ("The federal government must violate one of the sections enumerated in section 1988 to be liable for attorney fees under that section."); *Unification Church v. INS*, 762 F.2d 1077, 1080-81 (D.C. Cir. 1985) ("[T]he United States would be liable for fees when it was a losing defendant in proceedings to enforce the statutes listed in section 1988 . . . .Since [the United States] did not violate section 1983, it is not liable for fee awards under Section 1988 . . . .").

---

[3] We note that Shelby County did not seek attorney's fees under the separate provisions of EAJA(d), 28 U.S.C. 2412(d), and that argument is likewise waived.  Even if Shelby County had sought fees under EAJA(d), it could not invoke the limited waiver of the government's immunity found there since Shelby County has not satisfied the threshold requirements for an award of fees under that section.  Specifically, it has not provided an affidavit in which it: (1) asserts that it has a net worth of less than seven million dollars and has no more than five hundred employees; and (2) claims that the government's position was not substantially justified. 28 U.S.C. § 2412(d)(1)(A), (d)(2)(B).

The same "fee liability running with merits liability" principle applies here under Section 1973*l*(e).  At most, the United States should only be liable for fees if it were itself to violate one of voting guarantees listed in 1973*l*(e).  This merits liability does not and cannot exist here.  By their terms, the voting guarantees of the Fourteenth and Fifteenth Amendments, and the VRA, which was enacted to vindicate the voting guarantees of those constitutional amendments, regulate the conduct of voting *by states* (and localities like Shelby County), not the United States.  The United States has not waived its sovereign immunity to be sued, has not been sued here for violating the voting guarantees of the Fourteenth or Fifteenth Amendments, or the voting protections of the VRA, nor could it be.  Similarly, there are no adjudicated violations here of these constitutional amendments, or the VRA, by the United States, nor could there be.  Shelby County as an entity has no right to vote in elections, and thus was not itself an intended beneficiary of the voting guarantees of the amendments or the VRA.  Shelby County does not claim to be, and cannot be, suing to vindicate the voting rights of its citizens.  Hence, there is no merits liability for the United States here under any of the provisions listed in Section 1973*l*(e), which precludes an award of fees under its terms.  Simply put, an action seeking to overturn part of the VRA is not an action designed to enforce the voting guarantees of the constitution.  Rather, Shelby County here has sued to vindicate its federalism interests under the Tenth Amendment.  There is no federal fee-shifting provision that would enable Shelby County's fees to be shifted to the United States.

**II.    Shelby County cannot obtain fees and litigation expenses under Section 1973*l*(e).**

   **A.    This is not a lawsuit to "enforce the voting guarantees of the Fourteenth or Fifteenth Amendments."**

In an attempt to bring this litigation within the ambit of Section 1973*l*(e), in its motion for fees, Shelby County asserts for the first time that its challenge to the constitutionality of Section

11

4(b) of the VRA "was brought to enforce the voting guarantees of the fourteenth and fifteenth amendment". Mem. Points & Authorities Pl.'s Mot. 3 (internal quotation marks omitted) (alteration omitted) (ECF 94). This assertion mischaracterizes Shelby County's case as well as the basis for the Supreme Court's decision in its favor. Shelby County brought this action to vindicate and enforce the prerogatives of States preserved under the Tenth Amendment and the principle of equal sovereignty of states, not to enforce and protect federal voting rights guaranteed under the Civil War Amendments.

Shelby County stretches the plain terms of the phrase "enforce the voting guarantees of the Fourteenth and Fifteenth Amendments" too far when it attempts to argue that the phrase explicitly encompasses this action. The thrust of Shelby County's lawsuit was to vindicate States' rights, not to protect federal voting rights. *See* Pl's Compl. *16-19. (ECF 1); see Key Tronic Corp*, 511 U.S. at 814-15 (holding that private plaintiff lacked explicit statutory authority for obtaining fees as a prevailing party because the phrase "enforcement activities" under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 was insufficiently explicit to encompass the type of private cost recovery action at issue in the case).

Shelby County errs when it suggests that its position in this action can be equated with the position of those private defendant-intervenors who have been awarded attorney's fees in declaratory judgment actions brought in this Court by a covered jurisdiction seeking judicial preclearance for voting changes under Section 5 of the Voting Rights Act. *See* Mem. Points & Authorities Pl.'s Mot. 6-7 (ECF 94). In those types of cases, as recognized by the case law in this circuit and the 1975 legislative history of Section 1973*l*(e), private defendant-intervenors in Section 5 actions in this Court who successfully prevail in preventing plaintiff jurisdictions from

obtaining preclearance for discriminatory voting changes are vindicating federally protected

voting rights in the same manner in which private plaintiffs are in cases brought against

defendant jurisdictions under Section 2 of the VRA in local federal courts.   *See Comm'rs Court*

*of Medina Cnty. v. United States*, 683 F.2d 435 (D.C. Cir. 1982) (involving claim for award of

attorneys' fees by defendant-intervenors after their Section 5 litigation efforts may have led to

plaintiff abandoning a redistricting plan that violated the rights of minority voters).  Such

preclearance proceedings directly serve as vehicles for the enforcement of federally protected

voting rights in a way that the present action clearly does not.  Not only are citizens able to

directly vindicate their federal voting rights by intervening as defendants in such Section 5 cases,

the actions themselves are a product of a mechanism within the VRA for vindicating those rights.

In contrast, here the litigation occurred outside the framework of the VRA's enforcement

mechanisms, did not attempt to vindicate the federally protected voting guarantees, and Shelby

County explicitly argued for three years that it was enforcing the rights embedded in the Tenth

Amendment and Article IV of the U.S. Constitution.

Shelby County also errs when it likens this matter to motions for attorneys fees by

prevailing parties in cases involving challenges to the constitutionality of the Multiemployer

Pension Plan Amendments Act of 1980 ("MPPA"), an amendment to the Employee Retirement

Income Security Act of 1974 ("ERISA").  *See* Mem. Points & Authorities Pl.'s Mot. 9.  (ECF

94).  Courts have deemed prevailing parties in such cases as eligible for fees only because of the

way in which that particular statute defines eligibility.  *See Shelter Framing Corp. v. Pension*

*Benefit Guar. Corp.,* 705 F.2d 1502, 1515 (9th Cir. 1983), *rev'd on other grounds sub nom.*

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717 (1984) (explaining how "the

language of the [MPPA] is broad enough to include an award for vindication of constitutional

rights").  Specifically, as explained in *Shelter Framing Corp.*, under the MPPA and its fee-shifting provision, any party prevailing in an action brought by a person "adversely affected by the act or omission" of another party with respect to a multiemployer plan may be eligible for fees.  *Id.*; *see also Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 644 (4th Cir. 1983) (noting that the MPPA "broadly defines the range of actions which may be brought thereunder" when discussing the scope of MPPA's fee-shifting provision).  Given this broad language, courts have concluded that challenges to the constitutionality of the statute itself may constitute actions under the MPPA for purposes of its fee-shifting provision.  *Id.*; *see also Shelter Framing Corp.*, 705 F.2d at 1515.  The actions referred to in Section 1973*l*(e) are more narrowly defined.  Section 1973*l*(e) carves out an exception to the American Rule limited to actions directly related to the enforcement of federal voting rights.   Shelby County's action falls far outside the scope of that exception.

**B.**   **Even if Shelby County were eligible for fees under 1973*l*(e), it would have to meet the *Christiansburg* standard that the United States' position was "frivolous, vexatious, or brought for harassment purposes"---a standard it cannot meet.**

Even assuming that Shelby County potentially has crossed the eligibility threshold, it falls far short of meeting Section 1973*l*(e)'s fee standard for parties opposing the enforcement of federally protected voting rights.  Section 1973*l*(e)'s statutory language appears neutral in permitting a fee award to the "prevailing party."  However, as with other similarly worded civil rights fee-shifting provisions, Section 1973*l*(e) is designed primarily to promote the enforcement of federal civil rights by private litigants and, accordingly, has a fee standard geared to make it very difficult for a party who prevailed in opposing the enforcement of federal civil rights from obtaining fees.  Shelby County's position in this action is much more analogous to the position of an opponent of an effort to enforce voting rights under the VRA than to that of a party seeking

14

to vindicate those rights.  Therefore, even if it were potentially eligible for fees under Section

1973*l*(e), it would have to meet the demanding fee standard of showing that the position of the

United States in this action has been frivolous, vexatious, or harassing in nature. *Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 412, 418-21 (1978).  Because it obviously cannot meet this

standard, Plaintiff Shelby County has no entitlement to fees under Section 1973*l*(e).

> **a.    The demanding *Christiansburg* standard would apply to Shelby County because of Section 1973*l*(e)'s legislative history, judicial interpretation, and because it is a party prevailing in opposing efforts to enforce federally protected voting rights.**

Section 1973*l*(e)'s legislative history establishes that its purpose is to promote private

enforcement of the favored Congressional policy of rigorously enforcing federally protected

voting rights.  The Statute's fee-shifting provision was added to the VRA in 1975.  That year, the

Senate Judiciary Committee submitted its report on the provision together with a report on the

Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988 ("Section 1988").  The Senate Report

describes the policy rationale behind Section 1973*l*(e) in some detail, making it clear that the

provision's purpose is to promote the enforcement of federally protected voting rights laws by

private litigants.  For instance, in the Senate Report, the Senate Committee emphasized that:

> [Section 1973*l*(e)] allows a court, in its discretion, to award attorneys' fees to a prevailing party in suits to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments, and statutes enacted under those amendments.  This section is similar to provisions in Titles II and VI of the Civil Rights Act of 1964, which prohibit discrimination in public accommodations and employment, and to Section [1988] . . . . Such a provision is appropriate in voting rights cases because there, as in employment and public accommodations cases, and other civil rights cases, Congress depends heavily upon private citizens to enforce the fundamental rights involved.  Fee awards are a necessary means of enabling private citizens to vindicate these Federal rights.

S. Rep. No. 94-295, at 40 (1975).

In its Report on the provision, the Senate Judiciary Committee also detailed the fee

standard for effectuating its policy goal of promoting federally protected voting rights through

private litigation as follows:

> It is intended that the standards for awarding fees under sections [1973*l*(e)] and [1988] be generally the same as under the fee provisions of the 1964 Civil Rights Act.  A party seeking to enforce the rights protected by the Constitutional clause or statute under which fees are authorized by these sections, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).  Such "private attorneys general" should not be deterred from bringing meritorious actions to vindicate the fundamental rights here involved by the prospect of having to pay their opponent's counsel fees should they lose . . . . However, such a party, if unsuccessful, should be assessed his opponent's fee where it is shown that his suit was frivolous, vexatious, or brought for harassment purposes.  *United States Steel Corp v. United States*, 385 F. Supp. 346 (W.D. Pa. 1974).  These provisions thus deter frivolous suits by authorizing an award of attorney's fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights covered by sections [1973*l*(e)] and [1988].

*Id.* at 40-41.

The criteria for awarding fees the Senate Report sets out in this passage are similar to

those for other civil rights fee-shifting provisions.  For such provisions, prevailing private

plaintiffs, when acting as the chosen instrument of Congress in enforcing civil rights laws, can

obtain attorney's fees under the favorable *Piggie Park* standard, while most prevailing

defendants can only obtain attorney's fees under the *Christiansburg* standard.  *Christiansburg*,

434 U.S. at 418–21.  Under the *Piggie Park* standard, the prevailing party can "ordinarily

recover an attorney's fee unless *special circumstances* would render such an award unjust."

*Piggie Park*, 390 U.S. at 402 (emphasis added).  Under *Christiansburg*, a court may only award

fees to a party "upon a finding that the plaintiff's action was frivolous, unreasonable, or without

foundation . . . ."  *Christiansburg*, 434 U.S. at 421; *see also Fox v. Vice*, 131 S. Ct. 2205, 2213

(2011) (noting that while civil rights statutes also authorize fee awards to defendants, they do so

under different standards because of the "quite different equitable considerations").

16

The Senate Report is explicit that the question of whether the accommodating *Piggie Park* standard applies turns on whether the prevailing party is "seeking to enforce the rights protected by the Constitutional clause or statute under which fees are authorized by these sections," S. Rep. No. 94-295, at 40, not on whether the prevailing party is a plaintiff.   The Senate Report explicitly notes that "[i]n the large majority of such cases the party or parties seeking to enforce such rights will be the plaintiffs and/or plaintiff-intervenors.  However, in the procedural posture of some cases (e.g., a declaratory judgment suit under Sec. 5 of the Voting Rights Act) the parties seeking to enforce such rights may be the defendants and /or defendant-intervenors."  *Id.* at 40 n.42.  Aware that under Section 5 of the VRA, plaintiff jurisdictions and jurisdiction officials routinely oppose the enforcement of federal voting rights while the defendant United States and private defendant-intervenors routinely seek to enforce those rights, Congress crafted language that unambiguously incentivizes those private litigants engaged in vindicating the rights of individuals injured by racial discrimination in voting, irrespective of whether they are plaintiffs or defendants.

The Senate Report is also explicit that the favorable standard for fees under Section 1973*l*(e) applies to "private attorneys general," not to governmental actors.  The reference to "private attorneys general" is consistent with similar references to "private attorneys general" found in civil rights cases such as *Piggie Park,* opining on the purpose of civil rights fee-shifting provisions.  *Piggie Park*, 390 U.S. at 402.  In *Piggie Park*, the Court explained that a private citizen seeking injunctive relief under Title II of the Civil Rights Act of 1964 did so "not for himself alone but also as 'a private attorney general,' vindicating a policy that Congress considered of the highest priority."  *Id.*  Congress clearly meant the fee provision to incentivize voting rights enforcement by private citizens because "Congress depends heavily upon private

citizens to enforce the fundamental rights involved."  S. Rep. No. 94-295, at 40-41.  Congress

knew well that the "defendants in these cases are frequently state or local bodies or state or local

officials" and it fully "intended that the attorneys' fees . . . will be collected either from the

official directly, from funds of his agency, or under his control, or from the State or local

government . . . ."  *Id.*  Congress clearly was not incentivizing lawsuits by governmental bodies.

　　　　With an eye toward the provision's legislative history, when awarding fees under Section

1973*l*(e), courts routinely apply the favorable *Piggie Park* standard for prevailing private

enforcers of federally protected voting rights and the unforgiving *Christiansburg* standard for

their prevailing opponents.  For this reason, in most reported cases involving an award of fees

under Section 1973*l*(e), the parties benefitting from the award have prevailed in vindicating

protections for federally protected voting rights and are private citizens, not local governments.

*See* Attachment A.  And, indeed, in one of the very rare cases is where a local governmental

entity opposing an effort to enforce federal voting rights was awarded fees under Section

1973*l*(e),  *Jafari v. City of Richmond* is one of the very rare cases No. 3:05CV823, 2006 U.S.

Dist. LEXIS 94856 (E.D. Va. June 7, 2006),  the Court explained that it was awarding fees

because, in its view, the prevailing party had met the *Christiansburg* standard.  *Id.* at *3-4.

　　　　When considering the appropriate standards for awarding fees for Section 1973*l*(e),

courts have consistently recognized that the provision's purpose is to promote private

enforcement of federal voting rights.  *See, e.g., King v. Ill. State Bd. of Elections*, 410 F.3d 404,

412-13 (7th Cir. 2005) (explaining that as with Section 1988, with Section 1973*l*(e), "Congress

hoped to encourage private citizens to initiate court action to correct violations of the Nation's

civil rights statutes . . . and . . . to insure that those who violate the Nation's fundamental laws do

not proceed with impunity" (internal quotation marks omitted)); *Emery v. Hunt*, 132 F. Supp. 2d

803, 805 (D.S.D. 2001) (stating that Congress intended both Sections 1973*l*(e) and 1988 to

"discourage violations of the rights of our citizens" and "make it more likely that citizens would

assert constitutional rights").

Therefore, even if Shelby County could demonstrate a waiver of sovereign immunity,

Shelby County's posture is that of *the opponent* of a party seeking to enforce federal voting

rights.  Shelby County has all along pursued this case to impose limits on the capacity of the

United States to use federal law to protect civil rights and voting rights in particular.  As such,

like jurisdictions defending a case brought to enforce federally protected voting rights under the

VRA itself, the *Christiansburg* standard is the appropriate standard for determining whether

Shelby County is entitled to fees.

> **b.**  **Shelby County cannot meet the *Christiansburg* standard and therefore does not try to meet this demanding standard.**

Simply put, Shelby County cannot meet the *Christiansburg* standard, and it does not try

to do so in its brief.  In defending this duly enacted federal law, the position of the United States

here has not been frivolous, vexatious, or harassing.  Indeed, the government's position was

sustained by this Court and a divided panel of the D.C. Circuit, and endorsed by four justices on

the Supreme Court in this case.[4]

Attempting to avoid a *Christiansburg* standard it clearly cannot satisfy, Shelby County

cites three cases where a court applied the more lenient *Piggie Park* standard when assessing

---

[4] The Supreme Court had previously upheld Section 5 four times against prior constitutional challenges.  *Lopez* v. *Monterey Cnty.*, 525 U.S. 266, 282-85 (1999); *City of Rome* v. *United States*, 446 U.S. 156, 181-82 (1980); *Georgia* v. *United States*, 411 U.S. 526, 534-35 (1973); *South Carolina* v. *Katzenbach*, 383 U.S. 301, 337 (1966)).  Further, in 2008, a unanimous panel of this Court had rejected a prior constitutional challenge to Section 5, but that determination was vacated after the Supreme Court decided the case on statutory grounds.  *Nw. Austin Mun. Util. Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221 (D.D.C. 2008) (three-judge court), *rev'd and remanded*, 557 U.S. 193 (2009).

whether to award fees to a defendant-intervenor in a "preclearance action" under Section 5 of the VRA: *Commissioners Court of Medina County.*, 683 F.2d at 435; *Donnell v. United States*, 682 F.2d 240, 245 (D.C. Cir. 1982); and *Castro County. v. Crespin*, 101 F.3d 121 (D.C. Cir. 1996). These cases are of no help to Shelby County because all of the parties seeking fees in these cases did so after vindicating voting rights protected under federal law.  *Comm'rs Court of Medina Cnty.*, 683 F.2d at 435 (involving a declaratory judgment action under Section 5 of the VRA where defendant-intervenors claimed their efforts had led to plaintiff jurisdiction abandoning a redistricting plan that violated the rights of minority voters under Section 5 of the VRA); *Donnell*, 682 F.2d at 245 (same); *Castro Cnty.*, 101 F.3d at 121 (same).  The same cannot be said of Shelby County here.  It aimed to protect and vindicate 'the political rights of sovereign States and their political subdivisions to run state and local elections free from the prior restraint of Section 5's preclearance regime." Mem. Points & Authorities Pl.'s Mot. 5 (ECF 94). Vindicating voting rights protected under federal law simply never entered the picture.

Shelby County's argument that the restrictive *Christiansburg* standard does not apply because it "vindicated a constitutional right or benefitted a large number of people" is also off the mark.  Shelby County relies primarily on dicta in a footnote in *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Phila. and Vicinity*.  799 F.2d 45, 50 n.6 (3d Cir. 1986).  In that footnote, however, the court referred to hypothetical "employers" who vindicated constitutional rights or benefited large numbers of people, and was discussing an appropriate fee standard in the context of ERISA cases, not civil rights cases.  *Id.*  Indeed, the court emphasized the importance of looking beyond facial similarities between provisions in civil rights and ERISA cases and assessing entitlement to fees under the MPPA with reference to the policies undergirding ERISA.  *Id.* at 48.  The fee standards developed to protect the economic interests

involved in ERISA cases simply do not apply to a civil rights fee-shifting provision furthering constitutionally based imperatives to incentivize enforcement.  *See Eddy v. Colonial Life Ins. Co. of Am.*, 59 F.3d 201, 204-205 (D.C. Cir. 1995) ("Although the discretionary language in the fee-shifting provisions in these civil rights statutes is similar to that in ERISA's attorneys' fees provision . . .  there are crucial differences.  The interests furthered by ERISA differ substantially from those furthered by the civil rights statutes."); *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 804 (D.C. Cir. 1998) (describing the standards for fees under ERISA and MPPA, and explaining that "[i]n statutes protecting economic interests . . . the same standards are usually applied to fee awards to both plaintiffs and defendants").

The one consistency between the fee standards in civil rights cases and those created for cases geared toward protecting economic interests is that in each instance standards have developed that further the purposes of the provisions involved.  *See Fogerty v. Fantasy, Inc.* 510 U.S. 517, 534 n.19 (1994) (emphasizing that factors court considers when exercising discretion to award fees under Copyright Act should be "faithful to the purposes of the . . . Act").   Here, Shelby County would have this Court adopt a fee standard directly at odds with Congress's *expressly stated policy objectives* for the VRA's fee-shifting provision.  Applying the *Piggie Park* standard would in no way promote federal voting rights enforcement.  In fact, it would have the opposite effect because it would discourage parties seeking to vindicate federal voting rights, such as prospective defendant-intervenors, for fear of having to pay for their opponent's fees.

## C.    Decades of voting litigation in this Court supports a ruling that Shelby County is not entitled to fees.

Decades of experience in litigation in voting cases in the D.C. Court reinforces the fact that Shelby County's interpretation of Section 1973*l*(e) is fundamentally flawed.  More than 140

cases have been filed in this Court by jurisdictions seeking judicial preclearance under Section 5

of the VRA, seeking bailout under Section 4 of the VRA from coverage under the special

provisions of the Act, or challenging the constitutionality of provisions of the VRA since

enactment of the Act in 1965.  A great many of these cases were decided after the 1975

enactment of the attorney's fees provisions of Section 1973*l*(e).   In many of these cases,

jurisdictions have "prevailed," in the sense that they achieved, for example, preclearance for

voting changes under Section 5 or bailout under Section 4.  A good number of these cases have

been vigorously litigated, as much or more than this case was, including appeals to the Supreme

Court, in which the jurisdiction ultimately prevailed on the merits and in doing so limited the

scope of the VRA.  *See, e.g.*, *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320 (2000); *Reno v.*

*Bossier Parish Sch. Bd.*, 520 U.S. 471 (1997); *Georgia v. Ashcroft*, 539 U.S. 461 (2003).

      Yet, the United States is aware of no case over this entire history since 1965 in which a

jurisdiction in such a voting case even so much as sought attorney's fees from the United States

in this Court, much less a case in which this Court awarded attorney's fees against the United

States in this Court under Section 1973*l*(e).  If Shelby County's reading of Section 1973*l*(e)  was

correct, one certainly would think jurisdictions would have routinely sought attorney's fees when

they obtained merits relief in voting cases in this Court.   Indeed, one would have expected that

jurisdictions would never have sought administrative review of voting changes from the Attorney

General under Section 5, rather they always would have sought judicial preclearance for even the

most minor of voting changes if attorney's fees were routinely available to jurisdictions under

Section 1973*l*(e).   The fact that no jurisdictions, before now, have even sought fees against the

United States in this Court under Section 1973*l*(e) suggests that these jurisdictions correctly

realized that they could not obtain fees under the governing law.

The only instances in which the United States can recall attorney's fees being sought or awarded under Section 1973*l*(e) in voting cases in this Court have been cases in which fees were awarded to private defendant-intervenors who were resisting claims by jurisdictions for judicial preclearance under Section 5 of the VRA.  *See, e.g.*, *Donnell*, 682 F.2d  at 245, *Comm'rs Court of Medina Cnty.*, 683 F.2d at 435 and *Castro Cnty.*, 101 F.3d at 121.   In *Donnell*, the D.C. Circuit observed that "[t]he purpose of [Section 1973*l*(e)] . . . is the familiar one of encouraging private litigants to act as 'private attorneys general' in seeking to vindicate the civil rights laws." *Donnell*, 682 F.2d at 245. The court cited the 1975 Senate Report discussion on the unique posture of cases under the VRA in this Court and concluded that there was a possibility that private parties who intervene as defendants on the same side as the Department of Justice in voting cases in this Court "may be considered as prevailing parties entitled to an award of attorneys' fees." *Id.* at 246. But the D.C. Circuit did "not believe Congress intended that such an award be as nearly automatic as it is for a party prevailing in its own right" in affirmative voting rights litigation against jurisdictions, because the Department of Justice was the statutory defendant in voting cases in this Court and "when the Justice Department defends a suit under section 5 it is acting on behalf of those whose rights are affected."  *Id.*  Accordingly, "Congress assigned to the Attorney General the primary role in vindicating the public interest under the Act."  *Id.* (quoting *Apache Cnty. v. United States*, 256 F.Supp. 903, 908 (D.D.C. 1966) (three-judge court)).

To the extent any doubt remains about Shelby County's inability to obtain attorney's fees here, *Donnell* ends that doubt.   It confirms that the parties seeking to vindicate the voting guarantees of the VRA and the Constitution are the Justice Department and private defendant-intervenors in defending cases in this Court, not the plaintiff jurisdictions bringing suit.  Since

the United States cannot seek attorney's fees, the only parties whom *Donnell* makes it possible to

seek attorney's fees are private defendant-intervenors.  *Donnell* does not anywhere contemplate

that it is enabling jurisdictions in cases in this Court to seek fees.  The fact that the United States

and private intervenors are the parties seeking to vindicate the voting guarantees in cases in this

Court, also means that they should be the parties receiving the benefit of the higher

*Christiansburg* standard for fee liability.

## CONCLUSION

In sum, Plaintiff Shelby County is not entitled to attorney's fees.  Shelby County has

entirely failed to address the question of whether there is a waiver of the government's sovereign

immunity for an award of fees here.  Without such a waiver, Shelby County's motion must

surely fail.  Moreover, Shelby County's claim that it brought this action to enforce the Fifteenth

Amendment and the Equal Protection Clause of the Fourteenth Amendment is newly minted in

its fee motion and belied by the claims in its complaint and the arguments it has made on the

merits.  Shelby County has spent the last three years arguing that Section 4(b) of the VRA should

be held unconstitutional because neither of these grants of Congressional authority could be used

to justify Section 4(b)'s coverage formula, and that the United States had therefore violated the

rights of States and the principle of sovereign equality guaranteed under the framework of the

Constitution and the Tenth Amendment.  Shelby County's case has been about enforcement of

States' rights not enforcement of voting rights.  Shelby County's position in this litigation either

entirely forecloses its eligibility for fees under 1973*l*(e) or, at the very least, burdens it with a

demanding *Christiansburg* fee standard that it cannot meet.

24

Date:  December 6, 2013                          Respectfully submitted,

RONALD C. MACHEN, JR.                            JOCELYN SAMUELS
  United States Attorney                            Acting Assistant Attorney General
  District of Columbia                              Civil Rights Division

                                                   _s/ Avner Shapiro_
                                                 T. CHRISTIAN HERREN, JR.
                                                 RICHARD DELLHEIM
                                                 ERNEST A. MCFARLAND
                                                 AVNER SHAPIRO
                                                 Attorneys, Voting Section
                                                 Civil Rights Division
                                                 U.S. Department of Justice
                                                 950 Pennsylvania Avenue, N.W.
                                                 NWB-Room 7254
                                                 Washington, D.C. 20530
                                                 Telephone:  (202) 305-1840
                                                 Facsimile:  (202) 307-3961

CERTIFICATE OF SERVICE

        I hereby certify that on December 6, 2013, I served a true and correct copy of the
foregoing via the Court's ECF filing system to the following counsel of record:


William S. Consovoy                          Arthur B. Spitzer
Thomas R. McCarthy                           American Civil Liberties Union
Brendan J. Morrissey                         1400 20th Street, NW
Wiley Rein LLP                               Suite 119
1776 K Street, NW                            Washington, DC 20036-5920
Washington, DC 20006                         Phone: (202) 457-0800 x113
Phone: (202) 719-7434                        Fax: (202) 452-1868
Fax: (202) 719-7049

                                             Ryan P. Haygood
*Counsel for Plaintiff*                      NAACP Legal Defense
                                             & Education Fund, Inc.
                                             1444 Eye Street, NW
                                             10th Floor
                                             Washington, DC 20005
                                             Phone: (202) 682-1300
                                             Fax: (202) 682-1312

                                             Jon M. Greenbaum
                                             Lawyers' Committee for Civil Rights under
                                             Law
                                             1401 New York Avenue, NW
                                             Suite 400
                                             Washington, DC 20005
                                             Phone: (202) 662-8325

                                             *Counsel for Movant-intervenors*


                                                    /s/ Avner Shapiro
                                                    Avner Shapiro
                                                    Voting Section
                                                    Civil Rights Division
                                                    U.S. Department of Justice
                                                    950 Pennsylvania Avenue, N.W.
                                                    Washington, D, C, 20530
                                                    (202) 305-1840