**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHELBY COUNTY, ALABAMA, | |
| Plaintiff, | |
| v. | Civil Action No. 1:10-cv-00651-JDB |
| ERIC H. HOLDER, JR., in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES, et al., | |
| Defendants. | |

<u>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**</u>

Bert W. Rein* (D.C. Bar No. 067215)
William S. Consovoy (D.C. Bar No. 493423)
Thomas R. McCarthy (D.C. Bar No. 489651)
Brendan J. Morrissey (D.C. Bar No. 973809)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

Frank C. Ellis, Jr.
WALLACE, ELLIS, FOWLER & HEAD
113 North Main Street
Columbiana, AL  35051
Tel.: (205) 669-6783
Fax: (205) 669-4932

*Counsel of Record

# TABLE OF CONTENTS

                                                                                        Page

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      Shelby County Is Eligible For Attorney's Fees Under The Plain Terms of Section
                1973*l*(e) .....................................................................................................2

                1.      The United States Can Be Liable For Violations of the Fourteenth and
                        Fifteenth Amendments...............................................................2

                2.      This Is An "Action or Proceeding" Within The Meaning of Section
                        1973*l*(e) .......................................................................................4

        B.      Sovereign Immunity Presents No Barrier To Recovery of Shelby County's
                Attorney's Fees ......................................................................................12

        C.      There Is No Basis For Denying Shelby County Fees Under The Restrictive
                *Christiansburg Garment* Standard ...........................................................14

        D.      "Decades of Voting Litigation In This Court" Provides No Justifiable Basis For
                Denying Fees Here ..................................................................................18

III.    CONCLUSION ......................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adarand Constructors, Inc. v. Pena,*
   515 U.S. 200 (1995)...............................................................................................3

*\*Allen v. State Board of Elections,*
   393 U.S. 544 (1969).........................................................................................4, 12

*Bolling v. Sharpe,*
   347 U.S. 497 (1954)...............................................................................................3

*Bond v. United States,*
   131 S. Ct. 2355 (2011).........................................................................................12

*Castro County v. Crespin,*
   101 F.3d 121 (D.C. Cir. 1996)............................................................................5, 6

*\*Christiansburg Garment Co. v. EEOC,*
   434 U.S. 412 (1978)..................................................................................... *passim*

*City of Boerne v. Flores,*
   521 U.S. 507 (1997).........................................................................................11, 15

*Clinton v. City of New York,*
   524 U.S. 417 (1998).............................................................................................11

*Commissioners Court of Medina County, Texas v. United States,*
   683 F.2d 435 (D.C. Cir. 1982)......................................................................5, 6, 14

*Donnell v. United States,*
   682 F.2d 240 (D.C. Cir. 1982)............................................................................5, 6

*Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity,*
   799 F.2d 45 (3d Cir. 1986)..................................................................................18

*Gonzalez v. Raich,*
   545 U.S. 1 (2005).................................................................................................15

*Hughes Aircraft Co. v. Jacobson,*
   525 U.S. 432 (1999)...............................................................................................8

*Independent Federation of Flight Attendants v. Zipes,*
   491 U.S. 754 (1989).........................................................................................15, 18

*Johnson v. Miller*,
 864 F. Supp. 1354 (S.D. Ga. 1994)........................................................................19

*Katzenbach v. Morgan*,
 384 U.S. 641 (1966).................................................................................................4

*Kentucky v. Graham*,
 473 U.S. 159 (1985).................................................................................................3

*Laroque v. Holder*,
 755 F. Supp. 2d 156 (D.D.C. 2010).......................................................................11

*Miller v. Johnson*,
 515 U.S. 900 (1995)...............................................................................................19

*New York v. United States*,
 505 U.S. 144 (1992)...............................................................................................10

*\*Newman v. Piggie Park Enterprises, Inc.*,
 390 U.S. 400 (1968)....................................................................................... *passim*

*Newton v. Office of the Architect of the Capitol*,
 840 F. Supp. 2d 384 (D.D.C. 2012).........................................................................2

*Northwest Austin Municipal Utility District Number One v. Holder*,
 557 U.S. 193 (2009)............................................................................................9, 10

*Oregon v. Mitchell*,
 400 U.S. 112 (1970)...............................................................................................10

*Printz v. United States*,
 521 U.S. 898 (1997).................................................................................................9

*Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*,
 718 F.2d 628 (4th Cir. 1983) ...................................................................................5

*Rice v. Cayetano*,
 528 U.S. 495 (2000).................................................................................................3

*Shelby County, Alabama v. Holder*,
 133 S. Ct. 2612 (2013)....................................................................................6, 9, 11

*Shelby County, Alabama v. Holder*,
 811 F. Supp. 2d 424 (D.D.C. 2011)..............................................................5, 8, 9, 11

*Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*,
 705 F.2d 1502 (9th Cir. 1983) .................................................................................5

*United States v. Lopez*,
514 U.S. 549 (1995)..................................................................................................11

**FEDERAL STATUTES**

28 U.S.C. § 2412................................................................................................................13

42 U.S.C. § 1973......................................................................................................*passim*

42 U.S.C. § 1988................................................................................................................12

**CONSTITUTION**

U.S. Const. amend. XV.......................................................................................................3

**LEGISLATIVE MATERIALS**

S. Rep. No. 94-295 (1975).................................................................................................18

Plaintiff Shelby County, Alabama, ("Shelby County") hereby submits its response to Defendant Eric H. Holder, Jr.'s (the "Government") Opposition to Shelby County's Motion for Attorney's Fees and Expenses Under Section 1973*l*(e) ("U.S. Opp.") (Dkt. 103-1 (Dec. 9, 2013)), and the Defendant-Intervenors' ("Intervenors") Memorandum In Opposition to Shelby County's Motion for Attorney's Fees ("Int. Opp.") (Dkt. 100 (Dec. 6, 2013)).

## I.  <u>INTRODUCTION</u>

Over the determined opposition of the Government and Intervenors, Shelby County prevailed in an action brought pursuant to 42 U.S.C. § 1973*l*(b) and obtained a declaration from this Court that Section 4(b) of the Voting Rights Act ("VRA") is facially unconstitutional as exceeding Congress's power to enforce the provisions of the Fourteenth and Fifteenth Amendments by "appropriate" legislation.  Shelby County did not act merely for itself, but challenged Sections 4(b) and 5 on their face on behalf of all jurisdictions covered by those provisions of the VRA.  The judgment in its favor not only vindicated the rights of political subdivisions to be free of an unconstitutional prior restraint, but also necessarily restored to the citizens of those jurisdictions the full panoply of political rights that have always been enjoyed by citizens of non-covered jurisdictions.  As the Government and Intervenors acknowledge, Shelby County prevailed on the merits, receiving precisely the ruling that it set out to obtain: jurisdictions subject to coverage under Section 4(b) no longer must submit voting changes for preclearance under Section 5.

Despite their longstanding position that the voting rights guarantees of the Fourteenth and Fifteenth Amendments comprehended the structure of the voting process as well as the ability to register and cast a ballot, the Government and Intervenors now contend that Shelby County's action was not intended to enforce voting rights at all, and seek to deny Shelby County the fees to which it is entitled under 42 U.S.C. § 1973*l*(e) on that basis.  In effect, they seek to reargue the

1

proposition that preclearance administered under the VRA's Section 4(b) formula was a constitutionally appropriate voting rights enforcement measure, thereby re-casting Shelby County's effort to terminate it as an attack on voting rights rather than a vindication of them. But that is, of course, an argument they lost before the Supreme Court.  Thus, neither their antipathy toward the rights Shelby County restored to the citizens of formerly covered jurisdictions nor the slew of other objections they raise can defeat Shelby County's proper claim for attorney's fees under 42 U.S.C. § 1973*l*(e).

## II.   ARGUMENT

### A.   Shelby County Is Eligible For Attorney's Fees Under The Plain Terms of Section 1973*l*(e).

Shelby County argued in its motion that it is the prevailing party because it won outright on the merits and obtained the relief it sought.  Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorney's Fees at 8, Dkt. 94-1 (Oct. 25, 2013) ("Shelby Mem.").   Neither the Government nor the Intervenors contested that point, which stands established.  *See* LCvR 7(b); *Newton v. Office of the Architect of the Capitol*, 840 F. Supp. 2d 384, 397-98 (D.D.C. 2012).  Accordingly, the only attorney's fees eligibility issue is whether this is an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment[.]"  42 U.S.C. § 1973*l*(e).  The Government and Intervenors' efforts to challenge Shelby County's analysis of that issue all miss the mark.

#### 1.   The United States Can Be Liable For Violations of the Fourteenth and Fifteenth Amendments.

The Government takes the remarkable position that "the United States cannot be held substantively liable under voting guarantees of the Fourteenth or Fifteenth amendment themselves or under any of the statutes that enforce the voting guarantees" because they "regulate the conduct of voting *by states* (and localities like Shelby County), not the United

2

States."   U.S. Opp. at 11-12 (emphasis in original).   The Fifteenth Amendment itself conclusively refutes the Government's contention: "The right of citizens of the United States to vote shall not be denied or abridged *by the United States* or by any state on account of race, color, or previous condition of servitude."   U.S. Const. amend. XV (emphasis added); *see also Rice v. Cayetano*, 528 U.S. 495, 498 (2000) ("The Fifteenth Amendment to the Constitution of the United States, *binding on the National Government*, the States, and their political subdivisions, controls the case.") (emphasis added).   The Equal Protection Clause of the Fourteenth Amendment, which is the source of the "voting guarantees" in that Amendment, also applies against the United States via the Fifth Amendment.   *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213-225 (1995).   Thus, as Intervenors acknowledge, *see* Int. Opp. at 5-6, the Government's position is meritless.[1]

The Government appears to have chosen to advance this startling and unsustainable assertion of federal immunity because it acknowledges, as it must, that "'fee liability runs with merits liability.'"   U.S. Opp. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 168 (1985)).   The United States can be liable—and indeed has been found to be liable in this case—under the Fourteenth and Fifteenth Amendments.   This Court declared "that it is unconstitutional to use the formula in Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), to determine which jurisdictions are subject to the preclearance requirement of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c[.]"   Order, Dkt. 92 (Oct. 11, 2013).   Given this Court's conclusion on the merits, Shelby County is indisputably eligible to recover attorney's fees under Section 1973*l*(e).

---

[1]        It is particularly troubling that the Government would make the claim that it can freely violate the voting rights of the citizens of the United States—unconstrained by the Constitution or federal law—merely to avoid paying attorney's fees to Shelby County.   The Court should reject this ill-conceived construction of the Constitution and make clear that the United States is no more entitled to engage in conduct that would violate the Fourteenth and Fifteenth Amendments than are the States.

     2.       <u>This Is An "Action or Proceeding" Within The Meaning of Section 1973*l*(e).</u>

The Government argues that even if it *could* be liable under the Fourteenth and Fifteenth Amendments, this is not an "action or proceeding" that falls within the statutory definition of Section 1973*l*(e). *See* U.S. Opp. at 11-14; Int. Opp. at 2-4. That argument is foreclosed as well. The Government and the Intervenors admit that there are two ways that a particular action can be an "action or proceeding" for purposes of Section 1973*l*(e): (1) it is an action brought directly under the VRA; or (2) it is an action that, even if not brought directly under the VRA, seeks to enforce the voting rights encompassed by the Fourteenth and Fifteenth Amendments. *See* U.S. Opp. at 13; *see also* Int. Opp. at 3-4. Both grounds are satisfied here.

First, this is an action brought directly under the VRA. Shelby County brought this action pursuant to 42 U.S.C. § 1973*l*(b) to obtain: (1) a declaratory judgment that Sections 4(b) and 5 of the VRA are facially unconstitutional; (2) a permanent injunction enjoining Defendant Attorney General Eric H. Holder, Jr. from enforcing those provisions; and (3) an award of attorney's fees and costs. Complaint ¶¶ 1, 4, 6, 44, Dkt. 1 (Apr. 27, 2010). Shelby County invoked Section 1973*l*(b) because that provisions establishes "jurisdiction" in this Court to enter a "restraining order or temporary or permanent injunction against the execution or enforcement of any provision of [the VRA] or any action of any Federal officer or employee pursuant hereto." 42 U.S.C. § 1973*l*(b). The Supreme Court has acknowledged that Section 1973*l*(b) is one of the VRA's "*enforcement* provisions" on par with preclearance declaratory judgment actions and Section 5 enforcement actions, and that actions "aimed at prohibiting enforcement of the provisions of the Voting Rights Act," including those that "involve an attack on the constitutionality of the Act itself," are appropriately brought under Section 1973*l*(b). *Allen v. State Bd. of Elections*, 393 U.S. 544, 558 (1969) (citing *Katzenbach v. Morgan*, 384 U.S. 641

(1966)) (emphasis added).  Contrary to the assertion, then, Shelby County's action most certainly was brought pursuant to one of the VRA's enforcement provisions.[2]

The D.C. Circuit likewise has spoken to this issue in ruling that a Section 5 judicial preclearance suit by a covered jurisdiction like Shelby County is an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment" such that fees are awardable to the "prevailing party."  *See, e.g.*, *Commissioners Court of Medina Cnty., Texas v. United States*, 683 F.2d 435 (D.C. Cir. 1982) (holding that attorney's fees are awardable in preclearance action); *Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982) (same); *Castro Cnty., Tex. v. Crespin*, 101 F.3d 121 (D.C. Cir. 1996) (same).  If a preclearance suit is an action to enforce Fourteenth or Fifteenth Amendment rights, Shelby County's lawsuit cannot meaningfully be distinguished.  A successful preclearance action merely establishes that government interference with a single voting change by a single covered jurisdiction exceeds the bounds of Section 5's scope, which itself must be consistent with the Fourteenth and Fifteenth Amendments.  *See Shelby County, Ala. v. Holder*, 811 F. Supp. 2d 424, 431 (D.D.C. 2011) (explaining that a covered jurisdiction "may institute a declaratory judgment action before a three-judge panel of this Court, seeking *de novo* consideration of whether the method of election violates rights protected by the Voting Rights Act or the Constitution") (citations and quotations omitted)).  Shelby County's lawsuit more broadly established that *no* voting change of *any* covered jurisdiction could be subjected to prior restraint under Section 4(b)'s coverage formula

---

[2]      That the VRA includes a mechanism by which covered jurisdictions can challenge the law's constitutionality under the Act itself defeats the Government's attempt to distinguish *Shelter Framing Corp. v. Pension Benefit Guar. Corp.*, 705 F.2d 1502 (9th Cir. 1983) and *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628 (4th Cir. 1983). U.S. Opp. at 13-14.  Like the fee-shifting provision of ERISA at issue in those cases, Section 1973*l*(b) is "broad enough to include an award for vindication of constitutional rights." *Shelter Framing Corp.*, 705 F.2d at 1515.

consistent with the enforcement authority of the Fourteenth and Fifteenth Amendments.  *See Shelby County, Ala. v. Holder*, 133 S. Ct. 2612, 2631 (2013).

In fact, the Government and Intervenors have acknowledged that Shelby County's constitutional challenge is indistinguishable from a preclearance action in this respect.  When Intervenors sought to enter this action as parties, they referred to it as a "Section 5 case" indistinguishable from preclearance declaratory judgment actions in which they were traditionally permitted to participate.  Pierson Intervention Motion, Dkt. 9-1 (June 22, 2010) ("Pierson Mot.") at 2-5 (citing nine preclearance declaratory judgment actions); Cunningham Intervention Motion,  Dkt. 6-1 (June 11, 2010) ("Cunningham Mot.") at 4-6 (citing eleven preclearance declaratory judgment actions); Harris Intervention Motion, Dkt. 18-1 (July 1, 2010) ("Harris Mot.") at 10-11 (citing seven preclearance declaratory judgment actions).   The Government agreed that intervention was appropriate for the same reasons, *viz.*, that citizens of the affected jurisdiction are permitted to intervene "in declaratory judgment actions brought by covered jurisdictions against the Attorney General as the statutory defendant under the Voting Rights Act."  Attorney General Response to Intervention Motions, Dkt. 11 (June 24, 2010) ("AG Intervention Response") at 2-3 (citing twenty-four preclearance actions, including *Medina County*, *Donnell*, and *Castro County*).   Having taken the position before this Court that the present lawsuit and preclearance actions are analogous for intervention purposes because the same rights and issues are at stake, the Government and Intervenors should not be permitted now to divorce the two in order to avoid paying attorney's fees to Shelby County as the prevailing party.

The Government counters that preclearance actions are distinguishable from this case because "citizens [in such cases are] able to directly vindicate their federal voting rights by

intervening as defendants."  U.S. Opp. at 13.  But that is the precise basis on which Intervenors claimed an interest in this litigation sufficient to justify their participation as a party.  For example, the Pierson Intervenors argued that they "have a direct, substantial, and legally protectable interest in" this case because they are "racial minorities protected by Section 5 of the Voting Rights Act, and . . . registered voters who reside in Shelby County."  Pierson Mot. at 4. The other Intervenors made similar arguments.  *See, e.g.*, Cunningham Mot. at 8-9 (arguing that minority residents and voters of Shelby County had an interest in "ensur[ing] that this Court retain the protections against discriminatory voting changes afforded by the Section 5 preclearance process in Shelby County"); Harris Mot. at 1 (stating that Mr. Harris is "a racial minority protected by Section 5 and a registered voter residing in Shelby County" who "has a direct and substantial interest in the continued enforcement of these key provisions of the Voting Rights Act in Shelby County").  The Government consented to permissive intervention on that basis.  AG Intervention Response at 2-3.  And the Court granted the Intervenors' motions. Because fee entitlements arise from the nature of the action, rather than the party's position in the action, the Government's and Intervenors' across-the-board agreement on that characterization requires recognition of Shelby County's entitlement to attorney's fees under Section 1973*l*(e).[3]

---

[3]        Indeed, after this Court ruled in favor of the Attorney General and the intervenors in *Northwest Austin Municipal Utility District Number One v. Holder*, the same counsel who represent the Intervenors in this case indicated their intent to seek fees under Section 1973*l*(e) on the grounds that this Court ruled in their favor on the question of Section 5's constitutionality. *See* No. 06-1384, Dkt. 137, 138 (June 13, 2008); 141 (July 17, 2008).  This fact leaves little doubt that, had Shelby County been unsuccessful in this action, the Intervenors would have sought fees here as well.  If an affirmative constitutional claim is an "action or proceeding" under Section 1973*l*(e) when the defendants or defendant-intervenors prevail, it is also must be an "action or proceeding" when the plaintiff prevails.

Second, even if this Court were to ignore the fact that this is an action brought directly under the VRA, which alone brings it within the scope of Section 1973*l*(e) under the Government's and Intervenor's own construction of the statute, this is still clearly an action to "enforce" the voting guarantees of the Fourteenth and Fifteenth Amendments.  As an initial matter, the Government and Intervenors do not even attempt to dispute that Shelby County's action "enforces" the express mandate of those amendments, which require enforcement legislation to be "appropriate"; this action thus "enforced" that limitation within that word's plain meaning.  *See* Shelby Mem. at 3-4 (citing Black's Law Dictionary 621 (4th ed. 1968)). That should be decisive.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well.") (citations and quotations omitted).

Instead, the Government and Intervenors contend that this litigation does not "enforce" the Fourteenth or Fifteenth Amendment because "Shelby County brought this action to vindicate and enforce the prerogatives of States preserved under the Tenth Amendment and the principle of equal sovereignty of states, not to enforce and protect federal voting rights guaranteed under the Civil War Amendments."  U.S. Opp. at 12; *see also* Int. Opp. at 2-3.  That argument reflects a fundamental misunderstanding of Shelby County's claims and the underlying constitutional doctrine.  From the beginning, Shelby County took the position that Section 4(b) and Section 5 of the VRA violated the Reconstruction Amendments' requirement that enforcement legislation be "appropriate."  *See Shelby County*, 811 F. Supp. 2d at 427 ("Specifically, Shelby County alleges that Section 4(b)'s coverage formula and Section 5's preclearance obligation for covered jurisdictions exceed Congress's enforcement authority under the Fourteenth and Fifteenth

Amendments, *and* violate the principle of 'equal sovereignty' embodied in the Tenth Amendment and Article IV of the U.S. Constitution.") (emphasis added). Every one of the arguments advanced in this litigation supported those claims. *See id.* at 503-507. Ultimately, the Supreme Court agreed that Section 4(b)'s coverage formula was an *inappropriate* means of enforcing the Fourteenth and Fifteenth Amendments. *See Shelby County*, 133 S. Ct. at 2627-31. There can be no dispute that Shelby County has prevailed in enforcing that specific element of the Fourteenth and Fifteenth Amendments.

The Government and Intervenors simply misunderstand the legal significance of Shelby County's Tenth Amendment and Article IV arguments. Shelby County did not contend that either the Tenth Amendment or Article IV could override powers accorded to Congress under the enforcement clauses of the Fourteenth and Fifteenth Amendments. Rather, Shelby County contended that those constitutional provisions were germane only insofar as they aid in determining the proper meaning of "appropriate" under the Reconstruction Amendments; Shelby County further contended that they safeguard against federal overreaching by holding the Government to "discrete, enumerated" powers and preclude an overbroad reading of the Fourteenth and Fifteenth Amendment enforcement authority. *See Printz v. United States*, 521 U.S. 898, 919 (1997); *Northwest Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 217 (2009) (Thomas, J., concurring in the judgment in part and dissenting in part) ("[B]ecause States still retain sovereign authority over their election systems, any measure enacted in furtherance of the Fifteenth Amendment must be closely examined to ensure that its encroachment on state authority in this area is limited to the appropriate enforcement of this ban on discrimination.").

Shelby County took the position—and prevailed in arguing—that the enforcement powers of the Fourteenth and Fifteenth Amendments should not expand without limitation to

eliminate that federalism which "secures to citizens the liberties that derive from the diffusion of sovereign power." *New York v. United States*, 505 U.S. 144, 181 (1992) (citation and quotations omitted)).   The Government therefore draws an artificial distinction between "federal voting rights," protected by the affirmative delegations of the Fourteenth and Fifteenth Amendments, on the one hand, and the exercise of those rights unencumbered by preclearance, protected by the "appropriate" language of those amendments, on the other.   U.S. Opp. 12, 13.   This distinction ignores Shelby County's effort to protect the ability of its citizens to order the local electoral process, consistent with the Fourteenth and Fifteenth Amendments as a whole.   Voting rights are voting rights.

In fact, this action does clearly vindicate federally-protected voting rights.   "No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices."   *Oregon v. Mitchell*, 400 U.S. 112, 125 (1970) (Black, J.).   That constitutional right is precisely the interest Shelby County sought to vindicate through this action.   *See* Complaint ¶ 39(d) (asserting that the "preclearance obligation of Section 5 intrudes upon [Shelby County's] authority and control over local elections").   Moreover, by prevailing in this action and thus eliminating the preclearance obligation for all covered jurisdictions, Shelby County also vindicated the federally-protected right to an electoral system untainted by excessive considerations of race inherent in Section 5.   *See Nw. Austin*, 557 U.S. at 203 (finding substantial probability that "preclearance requirements in one State would be unconstitutional in another").

Regardless, an action seeking to keep federal legislation within the "appropriate" bounds of the Fourteenth and Fifteenth Amendments enforces those enumerated powers no less than an

action seeking to uphold such legislation.  "Enforcing" an enumerated power is not limited to "expanding" it.  One could not claim, for instance, that the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), *Clinton v. City of New York*, 524 U.S. 417 (1998), or *City of Boerne v. Flores*, 521 U.S. 507 (1997), did not "enforce" the Commerce Clause, Article I, § 7, or the Fourteenth Amendment, respectively, simply because they curtailed federal power as opposed to expanding it.

Finally, the Government and Intervenors' contention that only a voter can bring a claim to enforce the Fourteenth or Fifteenth Amendments, *see* U.S. Opp. at 11-12; Int. Opp. at 3, is unsustainable.  Raised in this context, this argument is nothing more than a collateral attack on Shelby County's standing—an attack this Court and the Supreme Court soundly rejected.  *See Shelby County,* 811 F. Supp. 2d at 445-46; *Shelby County*, 133 S. Ct. at 2629-30.  Indeed, accepting this argument would lead to a Catch-22 whereby no plaintiff could complain that Sections 4(b) and 5 violate the fundamental rights of voters, as this Court previously denied standing to voters to challenge Sections 4(b) and 5 on the grounds that those sections violated their fundamental rights, *see Laroque v. Holder*, 755 F. Supp. 2d 156, 180-82 (D.D.C. 2010), and the Government and Intervenors would now have this Court rule that a political subdivision cannot raise that argument either.

More fundamentally, the Government's assertion ignores that this action was brought for the benefit of individuals—here the voters of Shelby County and the other jurisdictions subject to preclearance under Section 5.  The federalism interest advanced by ensuring that Congress only enacts "appropriate" enforcement legislation "secures the freedom of the individual.  It allows States to respond, through the enactment of positive law, to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political

processes that control a remote central power." *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011). "Federalism also protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions. By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake." *Id*. (internal citation omitted). It is therefore impossible to neatly separate, as the Government purports to do, the individual's liberty interest from the States' right to self-governance. This case proves the point. By prevailing here, Shelby County restored to the People the right to structure their elections as they see fit, consistent with the affirmative guarantees of the Fourteenth and Fifteenth Amendments, for the benefit of all voters in the jurisdictions formerly subject to Section 5.

**B.      Sovereign Immunity Presents No Barrier To Recovery of Shelby County's Attorney's Fees.**

The Government claims that even if Shelby County is entitled to fees under Section 1973*l*(e), sovereign immunity shields the Government from paying them.[4] U.S. Opp. 5-11. But sovereign immunity does not bar recovery of attorney's fees here. To be clear, the Government is not asserting immunity from suit. Nor could it, given the explicit waiver of Section 1973*l*(b) and the Supreme Court's decision in *Allen*. *See supra* at 4-5. This case is therefore easily distinguished from cases that have found the United States cannot be liable for attorney's fees under 42 U.S.C. § 1988, because the United States cannot be liable under Section 1983. *See* U.S.

---

[4]        The claim is premature because it goes to which party—the Government or Intervenors—must pay those fees and not to the question of whether Shelby County is entitled to a fee award, which is the subject of this round of briefing. Intervenors have argued that they should not have to pay because Shelby County "may seek (and is seeking) an award against the government[.]" Int. Opp. 5-6. But if Shelby County cannot recover fees from the United States because of sovereign immunity, Intervenors would become the responsible party.

Opp. 10-11 (collecting cases).  Here, by contrast, the Government's substantive liability has already been established under the VRA and is embodied in this Court's judgment.  The elaborate analogy on which the Government relies to defend its immunity position is therefore inapposite.

The Government makes the far more limited claim that its waiver of sovereign immunity under the VRA should not be interpreted to include the recovery of attorney's fees.  But as the Government acknowledges, the Equal Access to Justice Act expressly waives sovereign immunity with regard to attorney's fees:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).

The EAJA thus waives sovereign immunity for attorney's fees to the same extent any other party would be liable if: (1) there is a statute that specifically provides for an award of fees to the prevailing party; and (2) the statute does not expressly prohibit an award of fees to the United States.  Section 1973*l*(e) satisfies both of those criteria on its face.  The Government contends that EAJA also requires that the statute under which fees are sought "expressly permits suit against the United States for its violation of the statute."  U.S. Opp. at 9.  Notwithstanding the fact that the Government cites nothing that supports such a requirement, it is of course met here—Section 1973*l*(b) expressly authorized this suit against the United States.

13

In the end, the Government ties itself in knots looking for ways in which it can avoid paying attorney's fees under the rubric of sovereign immunity. But all of its arguments return to the same proposition: this is not an "action or proceeding" within the meaning of Section 1973*l*(e). *See* U.S. Opp. at 9-11. Because it clearly is such an action, sovereign immunity does not bar fee recovery.[5]

**C.    There Is No Basis For Denying Shelby County Fees Under The Restrictive *Christiansburg Garment* Standard.**

Once the Court has determined "that a party has 'prevailed'" under Section 1973*l*(e), the only question left to determine is "whether a fee award would be 'unjust' under the particular circumstances of the case." *Medina County*, 683 F.2d at 442. The test set forth in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968), provides the general standard for whether an award is appropriate. Under that standard, "[t]he discretionary portion of the attorney's fees inquiry is limited. In order to deny reasonable attorneys' fees to a prevailing party, the court must find that special circumstances exist that would render such an award unjust." *Medina County*, 683 F.2d at 438 n.2, 442 n.12. Neither the Government nor Intervenors contend that there are any "special circumstances" that make an award inappropriate here.

Instead, the Government and Intervenors claim that the more restrictive standard for an award of attorney's fees set forth in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), applies here because Shelby County is an "opponent" of voting rights and "pursued this case to

---

[5]    The Government's contention that Shelby County waived any argument as to sovereign immunity by not raising the issue in its opening brief is meritless. U.S. Opp. at 5-6. Indeed, the Government is unable to cite a single judicial decision to support its contention. That is because sovereign immunity is a defense, and Shelby County is under no obligation to anticipate a defense to recovery and raise it on behalf of the United States. The Government now having raised the claim, Shelby County is timely responding. Because the EAJA is only relevant to this case as rebuttal to the Government's sovereign immunity defense, there likewise was no basis for raising that issue in the opening brief.

impose limits on the capacity of the United States to use federal law to protect civil rights and voting rights in particular." U.S. Opp. at 19; *see also* Int. at Opp. 3-4. That argument should be rejected for several reasons.

Foremost, the Government and Intervenors misconstrue the nature of Shelby County's action and the goals of this litigation. Shelby County is not an "opponent" of voting rights and supports "the vigorous enforcement of the Fifteenth Amendment and the many provisions of the VRA that appropriately enforce its substantive command." Complaint ¶ 35. Indeed, Shelby County sought to protect the voting rights of all of its citizens by liberating covered jurisdictions from the prior restraint of preclearance. Shelby County no more opposes voting rights than those who opposed federal marijuana laws in *Gonzalez v. Raich*, 545 U.S. 1 (2005), sought to promote drug abuse and crime, or those who opposed RFRA in *City of Boerne* opposed religious liberty. Opposition to federal preclearance is not opposition to voting rights. The Government may believe that the voting rights Shelby County vindicated are less worthy of protection than the voting rights the Government sought to advance under the preclearance regime, but the Court cannot proceed on that basis. The Supreme Court rejected that approach in *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989): the choice of the applicable standard for awarding fees to a prevailing party under a civil rights statute cannot be based on "a judge-made ranking of rights[.]" *Id*. at 763 n.4.

The Supreme Court in *Christiansburg* did not deviate from the *Piggie Park* default rule based on a hierarchy of colliding rights, but because "two strong equitable considerations" unique to that case made application of the *Piggie Park* standard to the prevailing defendant inappropriate. First, unlike in *Piggie Park*, in which the plaintiff brought a declaratory judgment action "not for himself alone but also as a 'private attorney general,'" 390 U.S. at 402, the

15

defendant in *Christiansburg* was an unwilling participant in the action and was not seeking to vindicate important interests for the benefit of the public at large, *see* 434 U.S. at 418. Second, unlike the *Piggie Park* plaintiff who "advance[d] the public interest by invoking the injunctive powers of the federal courts," 390 U.S. at 402, the *Christiansburg* defendant did not prevail over a "violator of federal law," 434 U.S. at 418. At base, the Court was concerned that awarding fees under the *Piggie Park* standard any time a defendant prevailed would disincentivize plaintiffs from pursuing meritorious claims for fear of being saddled with their opponents' fees any time they lost, especially when, as in *Christiansburg*, the defendant prevailed on a basis other than the merits of the charge of discrimination. *See id.* at 420-22.

No such "equitable considerations" exist here. Unlike the defendant in *Christiansburg*, Shelby County was not an unwilling litigant attempting to ward off a claim of interference with federal rights. Rather, Shelby County affirmatively pursued this litigation to vindicate the important public interest of freeing covered jurisdictions from federal receivership. As in *Piggie Park*, then, Shelby County acted as a "private attorney general" and sought to vindicate an important public policy not just for the benefit of itself and its citizens, but for the benefit of other covered jurisdictions and their citizens (and thousands of jurisdictions in fact benefited from the ruling). Also, unlike in *Christiansburg*, fees here would run against an adjudged "violator of federal law"—the United States. Shelby County thus vindicated a policy of the highest order by obtaining a ruling on the merits that restored to all formerly covered jurisdictions and their citizens the full panoply of rights reserved to them under the Constitution. Finally, awarding fees to Shelby County would not have the undesirable effect of dissuading persons with an interest in voting rights from vigorously pursuing their claims. Awarding attorney's fees to a prevailing party in an action vindicating independent constitutional rights

16

could only encourage others to safeguard their own rights.[6]  Notably, the Government has cited no decision standing for the proposition that the *Christiansburg Garment* standard should apply in the absence of the equitable factors that were present in that case.

The Government's claim that Shelby County cannot be a "private attorney general" because it is a governmental unit that could just as easily be on the other side of a VRA lawsuit under different circumstances falls flat.  *See* U.S. Opp. 17-18, 23.  Whatever might be the case in another type of dispute, it is not true here.  *Piggie Park* made clear that *any* plaintiff who sought, through a particular case, to vindicate an important public interest on behalf of itself as well as others is a private attorney general entitled to attorney's fees.  The fact that a governmental unit might not fit the bill in a different case because it is not a plaintiff, or because it is simply attempting to defeat liability instead of advancing an important public interest, or both, is immaterial.  The question is whether Shelby County should be awarded attorney's fees under the circumstances of *this* case.  There is nothing in *Christiansburg* to suggest that it should not.

The Government's related assertion that the *Christiansburg Garment* standard should apply because Congress intended to incentivize only "those private litigants engaged in vindicating the rights of individuals injured by racial discrimination in voting," U.S. Opp. 17, is refuted by the Senate Report on which it relies.  Nowhere does the report express a preference for actions brought by individuals to redress racial discrimination; instead, it expresses a desire to see *any* plaintiff bring a claim on behalf of the public generally that "enforce[s] the voting guarantees of the Fourteenth and Fifteenth amendments" and "enforce[s] fundamental rights."  S.

---

[6]    Indeed, Intervenors have conceded that they would not be dissuaded from asserting their own rights in future cases like this, as they claim (on the assumption that the United States would be responsible for Shelby County's fees) that they cannot be liable for fees unless their position in the litigation meets the *Christiansburg Garment* standard.  *See* Int. Opp. 4-6.

Rep. No. 94-295 at 40.[7]  This is precisely what the Third Circuit recognized when it found that "the equities might well favor an easier availability of fees" where a plaintiff—who might under other circumstances be a defendant in an action under the statute—brings a successful declaratory judgment action that "vindicate[s] a constitutional right or benefit[s] a large number of people[.]"  *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 799 F.2d 45, 50 n.6 (3d Cir. 1986).  To say that Shelby County has not done precisely that is to ignore the Supreme Court's (and this Court's) disposition of this case.

Finally, to the extent the Intervenors are correct that *Zipes* applies here and limits the circumstances under which they can be liable for fees, that fact would strongly suggest that the Government must be liable for fees under the *Piggie Park* standard.  One of the key bases supporting the Supreme Court's ultimate finding in favor of the intervenors in *Zipes* was that, "[i]n every lawsuit in which there is a prevailing . . . plaintiff there will also be a losing defendant who has committed a legal wrong.  That defendant will, under *Newman* [*v. Piggie Park*], be liable for all of the fees expended by the plaintiff in litigating the claim against him[.]"  491 U.S. at 761-62.  In other words, for the Court to find that *Zipes* limits Shelby County's ability to obtain fees from the Intervenors, the Court must also find that Shelby County can obtain fees from the Government under the *Piggie Park* standard.

### D.    "Decades of Voting Litigation In This Court" Provides No Justifiable Basis For Denying Fees Here.

The Government's final salvo is to resort to the absence of precedent.  In its view, if fees were available to Shelby County under Section 1973*l*(e), then surely another jurisdiction would

---

[7]    The legislative history of Section 1973*l*(e) does not support the Government and Intervenors' arguments in any other respect either.  The legislative history reflects nothing more than Congress's acceptance of both the *Piggie Park* and *Christiansburg Garment* standards.  *See* S. Rep. No. 94-295 at 40-41.  It does not indicate which standard should apply in this instance. That guidance must come from the case law.

have sought or been awarded fees by now.  U.S. Opp. at 22-23.  The argument fails for at least

two reasons.  First, the Government claims that it "is aware of no case over this entire history

since 1965 in which a jurisdiction in such a voting case even so much as sought attorney's fees

from the United States in this Court, much less a case in which this Court awarded attorney's

fees against the United States in this Court [sic] under Section 1973*l*(e)."  *Id*. at 22.  But the

Government's awareness of a lack of judicial awards to jurisdictions in voting cases "in this

Court" is carefully worded for a reason: *other courts* have awarded fees to jurisdictions in voting

rights cases, and the Department of Justice has *settled* fee claims in some of the more high-

profile VRA cases arising outside the preclearance context in which the prevailing plaintiffs

were in a posture similar to Shelby County.

In particular, the Government acknowledges that at least six different courts have

awarded fees to prevailing jurisdictions in VRA cases brought by individuals against those

jurisdictions; in three of those cases the courts did not appear to apply the *Christiansburg*

*Garment* standard.  U.S. Opp. 18, Att. A.  Moreover, the Government admitted in 2006 that it

has settled several claims for attorney's fees in landmark VRA cases in which "disfavored"

plaintiffs much like Shelby County in this case achieved significant victories.  *See* Exhibit A

(Letter from William E. Moschella, Assistant Attorney General, to Hon. F. James Sensenbrenner

(April 12, 2006)).  For instance, the *Miller v. Johnson* litigation presented a challenge by white

voters to Georgia's congressional redistricting attempts following the 1990 Census.  *Johnson v.*

*Miller*, 864 F. Supp. 1354 (S.D. Ga. 1994).  The Government intervened to defend the enacted

plan.  The Supreme Court found the Government's interpretation of the VRA untenable as a

statutory matter and constitutionally problematic, entering judgment for the plaintiffs.  *Miller v.*

*Johnson*, 515 U.S. 900, 917-18 (1995).  The Government twice settled claims for attorney's fees

19

in that litigation.  Exhibit A at 3.  It also spent millions settling claims for attorney's fees in several other similar litigations.  *See id.* at 3-6.

Second, the dearth of precedent for a judicial award of fees under these circumstances is hardly surprising.  While Shelby County obviously cannot speak to the reasons why other jurisdictions have declined to seek fees after prevailing in obtaining in a judicial preclearance action under Sections 4 or 5 (such as the *Reno v. Bossier Parish* and *Georgia v. Ashcroft* litigation the Government cites), it is likely the product of a belief that they would have to meet the onerous *Christiansburg Garment* standard because those actions were not brought to advance an independent constitutional interest.  More to the point, the result Shelby County obtained in this case—a plaintiff's-side victory establishing the unconstitutionality of a provision of the VRA—is literally without precedent.  Jurisdictions that brought previous similar challenges could not seek fees because they did not "prevail."  Shelby County has amply demonstrated that, while this case is certainly unique, an award of fees is warranted.

III.   **CONCLUSION**

For the foregoing reasons, the Court should find that Shelby County is eligible for an award of fees under Section 1973*l*(e) and order the parties to proceed to a determination of the amount to be awarded.

Dated:  December 20, 2013                  Respectfully submitted,


                                          /s/ Bert W. Rein
                                          _____
                                          Bert W. Rein* (D.C. Bar No. 067215)
                                          William S. Consovoy (D.C. Bar No. 493423)
                                          Thomas R. McCarthy (D.C. Bar No. 489651)
                                          Brendan J. Morrissey (D.C. Bar No. 973809)
                                          WILEY REIN LLP
                                          1776 K Street, NW
                                          Washington, DC  20006
                                          Tel.: (202) 719-7000
                                          Fax: (202) 719-7049

                                          Frank C. Ellis, Jr.
                                          WALLACE, ELLIS, FOWLER & HEAD
                                          113 North Main Street
                                          Columbiana, AL  35051
                                          Tel.: (205) 669-6783
                                          Fax: (205) 669-4932

                                          * Counsel of Record

21